David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC., and DOES 1-100, Inclusive,<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL DEPOSITION, ANSWERS TO DEPOSITION QUESTIONS AND PRODUCTION OF DOCUMENTS<br><br>Date: September 5, 2008<br>Time: 2:00 p.m.<br>Courtroom: 5, Third Floor<br>Magistrate Barbara L. Major |

I.

KEY HUMAN RESOURCES MANAGER NOT IDENTIFIED PURSUANT TO FRCP 26(a)(1)(A), AND PLAINTIFFS ASK LEAVE TO DEPOSE THIS WITNESS.

Cecilia Hoatson was not properly identified as a key decisionamaker and orchestrator of the Darryl Murray's termination. Even in the meet and confer on Friday, August 15, 2008, defense counsel represented to the Court that Ms. Hoatson was not involved in the process. Depositions of several of the witnesses prove otherwise as shown below:

1. Cecilia Hoatson personally organizes investigation. Idalia Castro deposition, 110:6 to 111:2. (All deposition pages of Idalia Castro referred to herein are attached to Plaintiff's Notice of Lodgment as Exhibit A.) "Q. And how long did your investigation take after your

initial day? You know, once the three of you got together and came to San Diego, how long did the investigation take? A. Two days. Q. And who was in charge of the three? A. No one was in charge. Q. What were the instructions to your team for how to conduct this investigation? A. What were the instructions? Q. Yes. A. Just to conduct the investigation and assess the situation. Q. And who gave your team the instructions to assess the situation? A. Cecilia Hoatson in conjunction with myself and Rod and Tom. . . . Q. And Cecilia Hoatson was the senior person of those making that decision; is that correct? A. That's correct."

2. Cecilia Hoatson made the decision to suspend Darryl Murray prior to his termination. Idalia Castro deposition, 172:9-20. "Q. And at what point did the three of you decide that you wanted Darryl Murray suspended? A. At the time when we were getting our notes together. Q. So was that after the first day or during the second day, or when was that? A. After the second day. Q. After the second day. So after the second day, was this a team decision, or who made this recommendation. A. We [Idalia Castro and Tom Stein] made the recommendation, and the decision was made by Cecilia [Hoatson]."

3. Cecilia Hoatson was involved in the termination. Idalia Castro's deposition, 203: 8-24. "Q. And in this case of Darryl Murray in August and September of 2006, about a week after your investigation, Cecilia [Hoatson] – did she call you to tell you the decision? A. I think we set up a call with Cecilia [Hoatson], Joe [Lutz], and myself [Idalia Castro] so that we could discuss when we would go and what my role was going to be. Q. And what did Cecilia tell you your role would be? A. I would be there as a witness and as the regional – as a hub HR manager. . . . Q. And what was Cecilia Hoatson's role? A. She was the VP of HR, but she wasn't going to be there [at the termination meeting with Darryl Murray]."

4. Cecilia Hoatson was involved in the decision to terminate Darryl Murray. Joe Lutz's deposition at 54:3-25. (All deposition pages of Joe Lutz referred to herein are attached to Plaintiff's Notice of Lodgment as Exhibit B.) "Q. Once you made the decision to terminate Darryl Murray, how did you notify the people higher in your chain of command of your decision? A. There was a phone conversation. I believe I said this earlier. There was a

phone conversation which included Chuck Powers, I believe. Cecilia [Hoatson] may have been present at that. I can't recall who else might have been present. We talked about the severity of the issue involving the general manager and the sexual harassment allegation and the evidence around that. And it became clear that that was the appropriate action. That was Chuck's advice. I agreed, and we proceeded with the termination. Q. So Chuck [Powers] advised that you should terminate, correct? A. Yes. Q. Did Cecilia Hoatson give similar advice? A. I don't believe she spoke in that conversation. Chuck, being the head of HR, would normally kind of lead those discussion.

Federal Rule of Civil Procedure 26 requires the early disclosure of relevant information and documents without the necessity of any discovery request. Among other things, the parties must disclose the names, addresses and telephone numbers of individual "likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings." Federal Rule of Civil Procedure 26(a)(1)(A). In the instant case, Cecilia Hoatson was not identified as a name likely to have discoverable information. As the depositions progressed, Plaintiffs learned that she was in fact a key decisionmaker. The remedy for the harm caused by the failure to disclose this critical witness would be for the Court to grant leave to take the deposition of Cecilia Hoatson now.

## II.

## HIGH LEVEL VICE PRESIDENT NOT IDENTIFIED PURSUANT TO FRCP 26(a)(1)(A), AND PLAINTIFFS ASK LEAVE TO DEPOSE THIS WITNESS.

Similarly, at deposition Chuck Powers (Vice President of Human Resources) was identified as a key decisionmaker. Deposition of Joe Lutz at 43: 6-11 and 43:15 to 44:16; see also Deposition of Elie Maalouf, 18:4-9. (All deposition pages of Elie Maalouf referred to herein are attached to Plaintiff's Notice of Lodgment as Exhibit C.) Prior to depositions, Defendant identified Joe Lutz as the senior termination decisionmaker. However, during the depositions, it was learned that Chuck Powers was in fact the senior decisionmaker, notwithstanding other evidence that, the CEO/President, Elie Maalouf may also have been

involved. For this reason, Plaintiffs pray that the Court will allow a deposition of this critical decisionmaker.

III.

DEPOSITION OF JOE LUTZ ENDED ARBITRARILY, AND PLAINTIFFS ASK LEAVE TO COMPLETE THE DEPOSITION.

The deposition of Joe Lutz was timely noticed. Plaintiffs allowed the deposition to be continued for the convenience of the Defendant. This person is a key witness to the termination events because Joe Lutz was the direct reporting manager to Plaintiff Darryl Murray. The deposition was ended arbitrarily after only two hours. Deposition of Joe Lutz, 85: 18-24; 86: 8-15; and 87: 2-6. "Q: What can you tell me about Joe Niknam's qualification? MS. RASKIN: Joe, it is 10:00 o'clock. I will let you answer this question. I will leave it up to you as to when you need to go. THE WITNESS: I need to go after this question. . . .MS RASKIN: Al right. Joe, can I ask you just two follow-up questions real quick? THE WITNESS: You bet. MR. TAPPE: I would object to follow-up questions because I would ask that I could use time available for follow-up questions to finish and complete my questions because I'm the one that called the deposition. . . . MR. TAPPE: I will allow you to ask follow-up questions after I am completed with my questions. MS RASKIN: Then we are ending this deposition right now."

Normally, the length of a deposition is determined by the parties. But the court, by order or local rule, may limit the time permitted for the conduct of a deposition. Federal Rule of Civil Procedure (30(d)(2); 26 (b)(2). Despite a court order or rule limiting the length of a deposition additional time should be granted if needed for a fair examination of the deponent or if the deponent or another party impedes the examination. (Federal Rule of Civil Procedure 30(d)(2). In the instant case, Plaintiffs did provide a time estimate for this deposition. The basis for ending the deposition was arbitrary and was unconnected from the knowledge base of the witness. This witness had more important and relevant information to share, and Plaintiffs should be allowed to continue this deposition. (Also, Plaintiffs should be allowed to question

the witness about relevant documents after all responsive documents are produced to Plaintiffs.)

## IV.

## DEFENDANT DID NOT PRODUCE DOCUMENTS BEFORE DEPOSITIONS AND THEY STILL HAVE NOT PRODUCED IMPORTANT DOCUMENTS.

Plaintiffs made timely document requests with the deposition subpoenas. In response, Defendant first produced a partial file of the sexual harassment investigation, representing that this was the contents of Darryl Murray's personnel file. Soon into the depositions, Plaintiffs learned that this was not the complete file. Defendant then said they would produce the remainder of the personnel file via facsimile before the deposition of the LAX Hub HR Manager, Idalia Castro. The personnel file was not produced until after all depositions were completed. Shortly after the final deposition, Defendant produced a CD, representing that it contained all documents responsive to Plaintiffs document requests.

Upon review of documents in the CD (938 pages), Plaintiffs found that this production was also incomplete. Particularly, Defendant did not produce the policy manuals referenced by their managers at deposition. Elie Maalouf specifically mentioned the importance of a "Code of Ethical Conduct." Deposition of Elie Maalouf 26: 1-25; see also 21:12 to 22:21. Idalia Castro specifically mentioned reliance on a "Suspension Policy." Deposition of Idalia Castro, 179:19 to 181:9; and 182:2-12. Several witnesses mentioned a "Human Resources Manual." None of these basic documents were produced: Code of Conduct; Suspension Policy; and HR Manual. More importantly, the "Notice for Termination" was not produced.

Idalia Castro gave detailed information about viewing and serving the Notice of Termination to Plaintiff Darryl Murray. Deposition of Idalia Castro, 204:7-22; see also 205:3-10; and 205: 11-21. "A. Cecilia Hoatson? Q. Yes. What did she tell you? What did she instruct you to tell Darryl Murray about the reason for termination? A. She did not instruct me to tell him anything. Q. What did she instruct Joe Lutz to tell him? A. She said that she was forwarding the documentation and that she would be issuing that documentation. Q. Did you

eventually see this documentation you are referring to? A. Yes. Q. And what was that documentation? A. It was a notice of termination. . . . Q. Where would I find a copy of the notice of termination? A. A copy was given to Darryl Murray."

Idalia Castro gave extensive detail of delivering the Notice of Termination to Darryl Murray when she and Joe Lutz met Plaintiff Darryl Murray at the Brigantine Restaurant.. Deposition of Idalia Castro, 205: 11-21. "Q. Do you recall having a meeting with Darryl Murray about his termination where you gave him this documentation? A. Yes. Q. Tell me what you recall about that meeting. A. That we [Idalia Castro and Joe Lutz] met at a restaurant outside of the unit, and he [Darryl Murray] was issued the documentation. And Joe Lutz read it, gave him a copy to sign. He said – I think he said he wasnt going to sign it, but he took it."

Plaintiffs argue that they cannot properly prepare their case when Defendant has withheld its their relevant policy manuals and even the Notice of Termination. Plaintiffs are entitled to know what termination decision was made (Notice of Termination) and why the decision was allegedly made (relevant written policy). Plaintiffs deserve the right to question defense witnesses about the late produced documents (e.g. the prior discipline records) and the non-produced documents (Notice of Termination and Written Policies). The only way that can happen now is if the Court orders Defendants to produce the documents and grants leave to redepose the HR and Managerial witnesses (Elie Maalouf; Idalia Castro; and Jennifer Lakin).

V.

DEFENSE PRESIDENT/CEO, ELIE MAALOUF REFUSE TO ANSWER ANY HYPOTHETICAL QUESTIONS; HE SHOULD BE COMPELLED TO ANSWER.

During the deposition of President/CEO, Elie Maalouf, he recalled certain details about the termination of senior manager, Plaintiff Darryl Murray. Later in the deposition he claimed that his memory was failing him. Consequently, Plaintiff's deposing attorney asked questions in the form of hypotheticals. Mr. Maalouf's deposition was the last of the

depositions taken so far, so Plaintiffs were able to ask hypothetical questions about actual events. Instead of providing responses, Mr. Maalouf refused to answer hypotheticals, claiming that he was mentally incapable. Deposition of Elie Maalouf, 43: 1-9; see also 41:10-14; 41: 18-23; and 46: 5-17. "It's a hypothetical that is not the case before us. That's not the circumstances. We can't – I'm not going to take every single possible scenario and hypotheticals, we won't be done by 6:00. And I must tell you, that at 6:00 I have to hang up and be somewhere. I'm unable to determine how I would have reacted to information received years ago on matters I barely recollect today. Maybe I'm limited in that fashion, but that's the way it is."

Mr. Maalouf's failure to respond to hypothetical questions is evasive and directly violates FRCP 37(a)(2). Plaintiffs ask the Court to remedy the matter with an order to provide responses at a subsequent deposition session.

VI.

PLAINTIFF'S FAILURE TO COMPLY WITH DISCOVERY CUTOFF DEADLINE

As set forth in the Declaration of Patricia I. James filed herewith, the depositions of Claudia Gallegos, Sandra Rosales, Idalia Castro, Darin Chadwick and Thomas Stein were initially noticed on June 4, 2008 for depositions to take place on June 18, 19 and 24, 2008.

Correspondence was sent to opposing counsel, Serafina Raskin, along with the deposition notices to make sure all deponents, with the exception of Chadwick, were Host employees. Chadwick was never served or deposed, as Plaintiffs were unable to locate him.

There were then phone calls back and forth between Ms. Raskin and Ms. James regarding availability. Ms. Rosales apparently wouldn't return Ms. Raskin's phone calls. In a later conversation, Ms. Raskin indicated that the subpoenas for Mr. Stein and Ms. Castro were insufficient due to the location of the defendants and they had to be resent. Mr. Stein, Ms. Castro and Mr. Lutz were contacted with Ms. Raskin's permission but the phone calls were never returned.

Once Ms. Raskin gave dates and times, the depositions of Ms. Rosales and Ms.

Gallegos were scheduled on or about July 2, 2008, set for July 16, 2008. The depositions of Mr. Stein, Ms. Castro and Mr. Lutz were subsequently scheduled on July 3, 2008, set for week of July 14, 2008.

Plaintiffs then wanted to depose additional people; Jennifer Lakin, Joe Lutz and Elie Maalouf. Rather than send unilateral notices, Plaintiffs' counsel worked with Ms. Raskin to assist in scheduling the depositions at a time convenient for the deponents. Once that was achieved, the proper subpoenas and necessary deposition notices were sent. Ms. Raskin stipulated to the pre-arranged dates and agreed to produce documents by fax before Ms. Castro's deposition.

The depositions noticed before the discovery cutoff were proper and timely and could have gone forward, depending on witness availability. However, due to the schedules of the deponents, they were either not available or it was more convenient for them to be deposed the week after the cutoff. Therefore, it was agreed that the depositions would go forward the following week.

Thus, Plaintiffs attempted to comply with the Court's discovery deadline, but, due to the unavailability of deponents, were unable to do so.

VII.

CONCLUSION

The depositions were unfair, because Defendant did not produce documents before the depositions occurred.

Plaintiffs learned that document productions were not complete during the course of the depositions. Defendant should be compelled to produce basic documents such as the Notice of Termination and the Written Policies described both in this Points and Authorities as well as the depositions themselves.

Defendant further attempted to foil Plaintiffs' discovery efforts by ending a deposition before it was complete (Lutz) and allowing another important witness to refuse to answer any hypothetical questions (Maalouf).

The Defendant informally identified Joe Lutz as the senior decisionmaker. The problem is that Mr. Lutz identified his boss, Chuck Powers, as the true decisionmaker. He also provided some evidence that Cecilia Hoatson made the decision. Cecilia Hoatson was not even identified in the Rule 26 disclosure! Plaintiffs cannot possibly explore the truth behind the termination when the actual decisionmakers are not produced for deposition.

The Court can fashion a remedy that involves production of documents and leave to redepose witnesses (Lakin, Castro, Lutz, Stein, and Maalouf), and to depose new witnesses (Hoatson and Powers). Since the pretrial conference is not until October 20, 2008, such a remedy would not delay the trial date.

Dated: August 18, 2008 MILLER, KING & JAMES, LLP

s/ Patricia I. James
David D. Miller
Nicholas S. King
Patricia I. James
Attorneys for Plaintiffs