061+David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC., and DOES 1-100, Inclusive,<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>DECLARATION OF TODD TAPPE IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEPOSITION, ANSWERS TO DEPOSITION QUESTIONS AND PRODUCTION OF DOCUMENTS<br><br>Date: September 5, 2008<br>Time: 2:00 p.m.<br>Courtroom: 5, Third Floor<br>Magistrate Barbara L. Major: |

I, Todd Tappe, declare:

1. I am an attorney duly licensed to practice law before all courts of this state and am an independent contractor for Miller, King & James, LLP, attorneys for plaintiffs herein. I make this declaration on my own personal knowledge and, if called as a witness, could competently testify as to the matters stated herein.

2. That the defense did not identify Cecilia Hoatson as a key witness and later denied that Cecilia Hoatson was a decisionmaker in the termination of Plaintiff Darryl Murray. (This representation was repeated even during meet and confer sessions last week.)

3. That I took the depositions of Idalia Castro and Joe Lutz

4. That during the depositions of Idalia Castro and Joe Lutz, I discovered evidence that suggests that Cecilia Hoatson either made the decision to terminate Darryl Murray or was one of the persons most knowledgeable of the reasons for termination.

5. That attached to the Notice of Lodgement are probative pages from the Deposition of Idalia Castro and Joe Lutz.

6. That Defendant identified Joe Lutz as the senior decisionmaker responsible for Plaintiff Darryl Murray's termination.

7. That I later learned at depositions that Chuck Powers told Joe Lutz and Cecilia Hoatson that it was his decision to terminate Plaintiff Darryl Murray.

8. That I later learned at the deposition of Elie Maalouf that Chuck Powers consulted with the President/CEO about the reasons for Plaintiff Darryl Murray's termination.

9. That attached to the Notice of Lodgment are probative pages from the Depositions of Joe Lutz and Elie Maalouf.

10. That I gave Defendant an estimate of two hours for the deposition of Joe Lutz.

11. That my questions to Joe Lutz were expedient and to the point.

12. That the deposition of Joe Lutz took longer than my time estimate because the witness knew more information than I anticipated and the witness was at times evasive and/or slow to respond to questions.

13. That Defense counsel prompted the witness to end his deposition then the witness did in fact end his deposition before I had completed my questions.

14. That attached to the Notice of Lodgment are probative pages from the Deposition of Joe Lutz.

15. That Defendant did not produce documents before the depositions and pursuant to timely document requests that were part of the deposition notices.

16. That Defendant produced some documents that were identified to me as the "personnel file."

17. That later I learned that the documents produced were only part of Darryl Murray's

personnel file. (I learned this when witnesses started talking about pages and documents that were not in the file produced to me.)

18. That Defendant promised Plaintiffs it would produce via facsimile all documents responsive to Plaintiffs' requests before the deposition of Idalia Castro. (The complete personnel file was specified and written policy documents were requested as well.)

19. That Defendant never produced the remainder of Plaintiff Darryl Murray's personnel file until after all depositions were complete.

20. That Idalia Castro specified a "Notice for Termination" in her deposition. (She claimed she saw the document; saw Joe Lutz give it to Darryl Murray; and heard Darryl Murray comment about the document.)

21. That Defendant never produced the Notice for Termination pursuant to Plaintiffs' document requests.

22. That attached to Notice of Lodgment are probative pages form the Deposition of Idalia Castro.

23. That I took the deposition of Elie Maalouf.

24. That at the deposition of Elie Maalouf, the deponent refused to answer hypothetical questions, claiming that he is "limited in that fashion." I took his statement in context to be a self-effacing claim of mental incapacity.

25. That on Thursday, August 24, 2008, I conducted a telephonic meet and confer with Defense attorney Serafina Raskin. During that call, Ms. Raskin advised me that she expected the call to be short, because her client would not produce any more witnesses or documents unless ordered by the Court.

26. That on Friday, August 25, 2008, I conducted a telephonic meet and confer conference with Defense Attorney and the Court's Clerk.

27. That in preparing this initial motion I spent five hours ($150/hour) and Pat James spent two hours ($250/hour).

28. That I anticipate spending three hours in preparing a reply brief and that Ms.

James will spend one hour on the reply brief.

29. That I also anticipate that David Miller will spend two hours preparing for and attending the motion to compel ($350/hour).

30. That the total past and anticipated cost of this motion is calculated to be $2,650.00.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 18th day of August, 2008.

MILLER, KING & JAMES, LLP

Todd Tappe