BAILEY LAW GROUP, P.C.
KATHY BAILEY (*admitted pro hac vice*)
SERAFINA RASKIN (California Bar No. 244960)
8105 Irvine Center Drive
Suite 900
Irvine, CA 92618
Telephone: (949) 453-1755
Facsimile: (949) 453-1757

Attorneys for Defendant
HOST INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>vs.<br><br>HOST INTERNATIONAL, INC.,<br><br>Defendant. | CASE NO.: 3:07-CV-02056-H (BLM)<br><br>DEFENDANT HOST'S STATEMENT OF UNCONTRAVERTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>**Date: September 22, 2008**<br>**Time: 10:30 a.m.**<br>**Place: Room 13**<br>**Pre-Trial Conf: October 20, 2008** |

Pursuant to Local Rule 7.1(f)(1), Defendant HOST INTERNATIONAL, INC. ("HOST"), submits the following Uncontroverted Statement of Material Facts in Support of its Motion for Summary Judgment:

## I.
## UNCONTROVERTED MATERIAL FACTS

1. Darryl Murray began working for HOST in December 1988 and his employment with HOST was terminated on September 21, 2006. (Plaintiff Darryl Murray's Deposition 17:05-18:09, attached hereto as Exhibit 1 (March 25, 2008).)

2. During his 18-year employment with HOST, Mr. Murray has always held a management level position. (Pl's Dep. 17:05-18:09.)

3. Mr. Murray's conduct at HOST was governed by the standards contained in HOST's Non- Harassment Policy. (Pl's Dep. 33:02-36:22.)

4. It was part of Mr. Murray's job responsibilities at HOST to: (1) act in a professional manner; (2) understand and implement HOST policies regarding sexual harassment; and (3) assist human resources personnel in disciplining associates for failing to comply with HOST's Non-Harassment Policy. (Pl's Dep. 21:07-23:02.)

5. Two anonymous complaints of sexual harassment were made against Mr. Murray while he was a working as a General Manager in Portland, Maine. (Pl's Dep. 29:24-30:12, Ex. 4.)

6. Mr. Murray receiving a written warning from Jack Vogel in August 1996 in response to anonymous sexual harassment complaints against him as General Manager in Portland, Maine. (Pl's Dep. 29:24-30:12, Ex. 4.)

7. Leticia Saavedra, a co-worker, filed a charge of sexual harassment against Darryl Murray in 2003, while he was working as a General Manger in San Diego. (Pl's Dep. 73:15-75:15.)

8. As a result of Ms. Saavedra's complaint, HOST issued a memorandum to Mr. Murray reiterating that the company "takes all claims of harassment seriously," and mandating that Mr. Murray adhere to the "re-issued [] sexual harassment policies and procedures." (Pl's Dep. 73:15-75:15, Ex. 11)

9. On September 6, 2006, Sandra Rosales filed a written complaint with HOST human resources personnel against Mr. Murray claiming that he "kissed [her] in the mouth" without her permission, during a party at the home of Claudia Gallegos. (Ex. A to Decl. of Idalia Castro (July 14, 2008).)

10. Idalia Castro, who at the time was HOST's Senior Field Human Resources Manager, and Thomas Stein, HOST's Director of Loss Prevention, conducted interviews with various witnesses regarding Ms. Rosales' allegations. (Castro Decl. ¶¶ 4-6; Declaration of Thomas Stein ¶ 3, attached (August 20, 2008).)

11. On September 6, 2006, Ms. Castro met with Ms. Rosales. During this meeting, Ms. Rosales told Ms. Castro that Mr. Murray had kissed her at the party and that "she had pushed him away hoping her boyfriend didn't see." (Castro Decl. ¶ 5; Ex. B to Castro Decl.)

12. On September 19, 2006, Mr. Stein met with Mr. Murray to discuss Ms. Rosales' allegations. During the meeting, Mr. Murray confirmed that he attended the party and admitted to kissing Ms. Rosales. (Stein Decl. ¶ 3; Ex. A to Stein Decl.; Ex. 10 to Pl's Dep.)

13. Claudia Gallegos confirmed to Ms. Castro in a written statement that at her party she saw that Mr. Murray "gave [Ms. Rosales] a kiss on the lips" and that the kiss was "lingering." (Ex. C to Castro Decl.)

14. During his deposition, on March 25, 2008, Mr. Murray admitted to kissing Sandra Rosales at the party of Claudia Gallegos. (Pl's Dep. 56:22-58:01.)

15. Joe Niknam took over as the general manager at the San Diego International Airport on October 19, 2006. (Declaration of Joe Niknam ¶ 1, attached hereto Exhibit 4 (June 30, 2008).)

16. Mr. Niknam is 48 years old. (Nikam Decl. ¶ 2.)

17. At the time he filed his complaint, Mr. Murray was 52 years old. (Pl's Compl.¶¶ 9-10.)

18. Prior to taking over as the general manager at the San Diego International Airport, Mr. Niknam had worked at HOST for 16 years during which time he served as the general manager at two other airports and a shopping plaza. (Niknam Decl. ¶ 3.)

19. As recently as January 17, 2003, and March 3, 2005, Mr. Murray signed certifications acknowledging having read, understood, and agreed to abide by the non-harassment policy. (Pl's Dep. 33:02-36:22; Exhibit 7.)

20. At his deposition, Mr. Murray testified as follows:

> Q: Paragraph 12 [of the Complaint] says that the fact that Darryl was over 40 years old was a substantial factor in HOST's decision to terminate [Mr. Murray's] employment. Can you tell me the basis of that belief?
>
> A: That the amount of time on job[,] I had reached a certain point in my life where my salary was pretty high, as a matter of fact my direct supervisor even made a comment that we don't give deals like that out any longer. And once I was removed, the person behind me was younger than me.

(Pl's Dep. 41:24-42:10.)

21. At his deposition, Mr. Murray testified as follows:

> A: I was asked several times in the spring of 2006 if I'd be interested in going to Atlanta or Phoenix. Elie Maalouf . . . said that it would be good for my career if I would go to a larger branch.
>
> Q: Had you moved to Atlanta or Phoenix, would that have offered additional compensation opportunities?
>
> A: Yes, it would.

(Pl's Dep. 34:01-35:08.)

22. Mr. Murray's express offer of employment signed in December 1999 expressly provides that: "[t]his letter is *not a contract or guarantee of employment*." (Exhibit 8 to Pl's Dep.) (emphasis added).

23. Mr. Murray's express offer of employment signed in April 2000 expressly provides that: "[t]his letter is *not a contract or guarantee of employment*." (Exhibit 8 to Pl's Dep.) (emphasis added).

24. Mr. Murray admits that: (1) no executive officer ever orally promised that HOST would only terminate him for good cause; and (2) no executive officer at HOST expressly told him that HOST would employ him for a specified period of time. (Pl's Dep. 37:10-39:13.)

25. Mr. Murray could not name an additional witness who should have been interviewed but ware not. (Pl's Dep. 57:21-58:10.) During his deposition, Mr. Murray testified as follows:

> Q: Was there anyone. . . .not on [the] list that you thought that should have been questioned?
>
> A: Not that I recall. I thought they were questioning people who weren't there at all and it wasn't germane to the whole incident so that's why I felt it was a witch hunt.
>
> Q: Did you give [Ms. Castro] any names of people that . . . she should talk to?
>
> A: The person I was standing with the whole night was Ms. Shelby . . . the only one.
>
> Q: And as far as you know, did they talk to Mr. Shelby?
>
> A: Briefly, yeah.

(Pl's Dep. 57:21-58:10.)

26. Debra Murray testified that: "two weeks prior to [Mr. Murray] being fired, [HOST personnel] were doing extensive interviews with the whole staff . . ." (Plaintiff Debra Murray's Deposition 23:03-09; attached hereto as Exhibit 2.)

DATED: August 22, 2008

BAILEY LAW GROUP, P.C.

BY: s/Serafina Raskin

Attorney for Defendant
HOST INTERNATIONAL, INC.
Email: sraskin@baileylawgroup.com