# EXHIBIT 2

Certified Copy

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DARRYL MURRAY and DEBRA MURRAY,

Plaintiffs,

vs.

CASE NO. 3:07-CV-02056-H-BLM

HOST INTERNATIONAL, INC. and DOES 1-100, Inclusive,

Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEPOSITION OF
DEBRA L. MURRAY

April 2, 2008
2:12 p.m.

555 West Beech Street, Suite 111
San Diego, California

Colleen M. Peterman, CSR No. 7882

PAULSON
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

APPEARANCES OF COUNSEL

For Plaintiffs:

MILLER, KING & JAMES
DAVID MILLER, ESQ.
707 Broadway, Suite 1800
San Diego, California 92101
619.685.0077
619.685.0011 Fax
cford@ddmassociates.com

For Defendants:

BAILEY LAW GROUP
SERAFINA RASKIN, ESQ.
8105 Irvine Center Drive, Suite 900
Irvine, California 92618
949.453.1755
949.453.1757 Fax
sraskin@baileylawgroup.com

INDEX TO EXAMINATION

WITNESS: DEBRA L. MURRAY


| EXAMINATION | PAGE |
|---|---|
| By Ms. Raskin | 5 |


QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER


| Page | Line |
|---|---|
| 24 | 5 |
| 39 | 12 |


* * *

INDEX TO EXHIBITS


| EXHIBITS | | MARKED |
|---|---|---|
| A | Deposition notice | 12 |
| B | First amended complaint | 14 |


* * *

SAN DIEGO, CALIFORNIA
WEDNESDAY, APRIL 2, 2008; 2:12 P.M.

DEBRA L. MURRAY,
having been first duly sworn, testifies as follows:

EXAMINATION

BY MS. RASKIN:
Q Good afternoon. Please state your name for the record.
A Debra L. Murray.
Q Do you mind spelling your first and last name.
A D-e-b-r-a, M-u-r-r-a-y.
Q Have you gone by any other name?
A Yes, last name.
Q I'm sorry?
A Last name's been different.
Q Okay. What has it been?
A Prior to Murray it's been Burke, B-u-r-k-e. And prior to that, maiden name is King, K-i-n-g.
Q And how long did you use King?
A King was my maiden name. Up until -- I can't even remember -- I only used Burke for three or four years. So somewhere in there. I don't really remember.
Q Okay. Was it immediately before Murray?

stressful.

Q Anything else that you haven't told me about?

A No.

Q Okay. So besides being anxious, nervous, stressed, did any other part of his physical body hurt?

A I don't understand.

Q Let me try that again. That was a very poorly phrased question.

Did Darryl ever fall on the job? Was any part of his body injured?

A No.

Q Okay. Do you know the reason that Host gave in terminating Darryl?

A The allegations?

Q Yes.

A Yes.

Q What do you understand those reasons to be?

A False.

Q I'm not asking you whether you think they're true or false.

What did they say that the reasons were?

A They said they have zero tolerance for sexual harassment.

Q So they accused your husband of sexual harassment; is that correct?

A I'm not a hundred percent sure. I believe that was the accusation.

Q When did you first find out about the reason behind his termination?

A To the best of my recollection, whatever the word is, recollection, two weeks prior to him being fired, they were doing extensive interviews with the whole staff: Management, under management, claims from the person that alleged the sexual harassment.

Q And did Mr. Murray tell you the reason for his termination? Or how else did you find out about the termination?

MR. MILLER: I'll just object and instruct you not to discuss with her communications between you and your husband within the ambit of your marital contract with him.

THE WITNESS: Okay.

MR. MILLER: If it's conversations you had around people, that weren't private and personal to you two, she's entitled to that, but not your personal conversations with your husband.

THE WITNESS: Okay.

BY MS. RASKIN:

Q And I'm not asking you to tell me what the conversation was about, but did you find out about the

reasons for Mr. Murray's termination from him or from another source?

A At the time of his termination, he told me the allegations.

Q Okay. And any point in time, did you believe in the truth of these allegations?

MR. MILLER: Objection. Relevance. Did she believe in the truth of the allegations.

BY MS. RASKIN:

Q I'm going to ask you to answer that question. We have your counsel's objection on the record.

MR. MILLER: Well, I'm going to instruct her not to answer. There's not one way that her believing in the truthfulness of the allegations is pertinent to this case.

MS. RASKIN: And that's fine, but I still am entitled to her answer.

MR. MILLER: No, you're not.

I'm instructing you not to answer.

You can make a record. I understand. You can bring a motion.

MS. RASKIN: And I will bring a motion. Thank you very much.

BY MS. RASKIN:

Q Did you ever have any arguments with Mr. Murray

relating to these accusations?
A I'm not sure that I understand the question.
Q Were you ever upset at Mr. Murray regarding the alleged sexual harassment?
A No.
Q Okay. Do you know who brought this complaint against Mr. Murray?
A No. I don't know her personally.
Q Do you know her name?
A Don't recall.
Q So you've never met the person who --
A I don't know her.
Q Okay. Do you know of any other complaints that have been logged against Mr. Murray for sexual harassment during the course of his employment with Host? Has he ever been accused of sexual harassment before while he worked at Host?
MR. MILLER: If you know. If you know.
THE WITNESS: I don't have access to his personal files. I'm not going to comment on that.
BY MS. RASKIN:
Q Are you not going to comment, or do you not know?
MR. MILLER: We're up against a marital communication privilege too.

REPORTER'S CERTIFICATION

I, Colleen M. Peterman, Certified Shorthand Reporter, in and for the State of California, do hereby certify:

That the witness named in the foregoing deposition was, before the commencement of the deposition, duly administered an oath in accordance with Code of Civil Procedure Section 2094; that the testimony and proceedings were reported stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have subscribed my name this 8th day of April, 2008.

/s/ Colleen Peterman

Colleen M. Peterman, CSR No. 7882