BAILEY LAW GROUP, PC
KATHY DIANE BAILEY (*admitted pro hac vice*)
SERAFINA RASKIN (California Bar No. 244960)
8105 Irvine Center Drive
Suite 900
Irvine, CA 92618
Telephone: (949) 453-1755
Facsimile: (949) 453-1757

Attorney for Defendant
HOST INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>vs.<br><br>HOST INTERNATIONAL, INC.,<br><br>Defendant. | CASE NO.: 3:07-CV-02056-H (BLM)<br><br>**OPPOSITION TO PLAINTIFFS MOTION TO COMPEL AND REQUEST FOR MONETARY SANCTIONS; MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date: September 5, 2008**<br>**Time: 2:00 p.m.**<br>**Place: Room 5, Third Fl.**<br>**Magistrate Barbara L. Major**<br><br>**ORAL ARGUMENT NOT REQUIRED** |

TO PLAINTIFFS DARRYL AND DEBRA MURRAY AND THEIR ATTORNEYS OF RECORD:

Defendant HOST INTERNATIONAL, INC. ("HOST"), hereby opposes Plaintiffs Motion to Compel certain discovery. Additionally, for the reasons set forth below, on September 5, 2008, HOST will move this Court for an order that Plaintiffs, jointly and severally with their counsel of record, pay to HOST monetary sanctions in the amount of $4,258.00, based on Plaintiffs bringing the present motion without substantial justification and for an improper purpose, in violation of Federal Rule of Civil Procedure 37.

## I. INTRODUCTORY STATEMENT

Plaintiffs have failed to prosecute their meritless case effectively before the discovery cut-off. Now that they have realized as much, they are desperately trying to play catch up after the discovery deadline has passed and after they have already deposed all but two of the individuals whose depositions they wish to compel. They do this even after HOST has, as a professional courtesy, allowed several depositions to be

noticed and taken after the discovery cut-off date of July 18, 2008. The courtesy HOST granted has apparently not been enough. Plaintiffs now bring this meritless motion to compel based on gross and sanctionable misstatements of fact.

The following summarizes what Plaintiffs seek, why it is improper, and why the Court should not grant their requests:

- Plaintiffs argue that Charles Powers, a high level HOST employee should be deposed because HOST hid his name and did not provide it in its initial disclosures. Plaintiffs' Motion at 3:20-25. This is a gross misstatement as Mr. Powers' name clearly appears on page two of HOST's initial disclosures.

- Plaintiffs argue that Cecilia Hoatson, another high level HOST employee should be deposed because HOST also hid her name from Plaintiffs. Plaintiffs' Motion at 3:9-17. This is also a misstatement. Ms. Hoatson's name, position and minimal roll in this case is well known to Plaintiffs — Mr. Murray knew of Ms. Hoatson's role in the company at large and also knew of her minimal involvement in this case as early as March 25, 2008, when she came up in his deposition. Her name was also referenced in documents produced to Plaintiffs with HOST's initial disclosures.

- Plaintiffs claim that HOST has not produced certain documents, such as a suspension policy and human resources manual. However, Plaintiffs have failed to request production of these documents and fail to point to a single specific document request they believe HOST has not responded to.

- Plaintiffs argue that they should be allowed to **redepose** five individuals, including HOST's CEO, based on the above documents being withheld. However, at all the prior depositions Plaintiffs failed to introduce or ask questions about **any** of the other documents HOST produced, including **each and every document about the sexual harassment investigation at issue in this case**.

- Plaintiffs argue that they should be allowed to redepose HOST's CEO Ellie Maalouf, even though Plaintiffs served their notice of deposition seven days after the discovery cut-off date. Mr. Maalouf voluntarily appeared despite the fact that he has no personal knowledge of any of the key facts in this case.

In short, Plaintiffs motion is a compilation of misstated fact and law. Accordingly, it should be denied and costs awarded to HOST pursuant to Rule 37, for having to oppose this meritless motion.

## II. EVERY SINGLE DEPOSITION THAT PLAINTIFFS TIMELY REQUESTED HAS OCCURRED, WHETHER PROPERLY NOTICED OR NOT

At the outset, HOST has fully accommodated Plaintiffs by submitting every person for whom Plaintiffs served a deposition notice and/or subpoena. Plaintiffs' motion is about whether they get a second bite at the apple and are allowed to **re-depose** individuals at HOST. The following summarizes the how each of these depositions came about:

- On June 4, 2008, Plaintiffs sent deposition notices for Claudia Gallegos and Sandra Rosales which did not have any request for production attached to them. *See* Exhibits "1" and "2" to Raskin Decl.

- Ms. Gallegos' deposition occurred on July 16, 2008. No documents were produced because none were requested. Raskin Decl. ¶ 4.

- Ms. Rosales' deposition occurred on July 16, 2008. No documents were produced because none were requested. Raskin Decl. ¶ 5.

- On June 4, 2008, Plaintiffs also sent deficient notices of deposition for Idalia Castro and Thomas Stein with deficient requests for production of documents attached thereto. Ms. Raskin informed opposing counsel of these deficiencies in a letter faxed to them on June 8, 2008. Plaintiffs agreed to fix these deficiencies. Raskin Decl. ¶ 6; *see also* Exhibit "3" thereto.

- On July 15, 2008, Plaintiffs finally fixed their deficient deposition notices by serving proper subpoenas on Ms. Castro and Mr. Stein. *See* Exhibit "4" and "5" to Raskin Decl.

- Ms. Castro's deposition occurred on July 18, 2008. Raskin Decl. ¶ 8.

- Mr. Stein's deposition occurred on July 23, 2008. Raskin Decl. ¶ 9.

- Meanwhile, on July 4, 2008, (on a holiday) Plaintiffs claim they sent deposition and document subpoenas for Jennifer Lakin and Joe Lutz to Ms. Raskin because, as a courtesy, Ms. Lakin and Mr. Lutz stipulated that Ms. Raskin accept service of those subpoenas on their behalf. Raskin Decl. ¶ 10; *see also* Exhibit "6" and "7" thereto. Ms. Raskin did not receive these two subpoenas until July 8, 2008. *Id.*

- Ms. Lakin's deposition occurred on July 15, 2008. Raskin Decl. ¶ 11.

- Mr. Lutz's deposition occurred on July 25, 2008, pursuant to an agreement between counsel that the deposition would not go beyond two hours. Raskin Decl. ¶ 12.

- The document requests attached to the deposition notices for Ms. Castro, Mr. Stein, Ms. Lakin and Mr. Lutz were identical. *See* Exhibits "4, 5, 6 and 7" to Raskin Decl.

- On July 24, 2008, Ms. Castro, Mr. Stein, Ms. Lankin and Mr. Lutz all produced 938 pages documents on a CD-ROM responsive to their identical subpoena for documents — just 16 days after Plaintiffs' first properly requested these documents. Raskin Decl. ¶ 14; *see also* Exhibit "8" thereto.

- On July 14, 2008, just 4 days before the discovery cut-off, Plaintiffs informed Ms. Raskin by e-mail that they wanted to depose Ellie Maalouf, HOST's President and CEO. Exhibit "9" to Raskin Decl.

- Even though Mr. Maalouf had almost no personal knowledge of the circumstances giving rise to the termination of Plaintiff Darryl Murry's employment with HOST and did not participate in the termination decision, HOST **voluntarily produced** Mr. Maalouf on July 25, 2008, for deposition. Raskin Decl. ¶ 16. HOST's only request was that the duration of Mr. Maalouf's deposition be stipulated to beforehand. Ms. Raskin and opposing counsel agreed that his deposition would not exceed two hours. Raskin Decl. ¶¶ 16-18; *see also* Exhibit "9" thereto.

- HOST received Mr. Maalouf's deposition notice at 5:22 p.m. on July 24, 2008, the evening before Mr. Maalouf's deposition. Exhibit "10" to Raskin Decl.

HOST has engaged in a more then adequate effort to provide far more discovery than Plaintiffs are otherwise entitled given the clear discovery cut-off date. The above summary shows that Plaintiffs served last minute discovery requests that were procedurally and substantively defective. Despite the July 18, 2008, discovery deadline, as a courtesy HOST agreed to extend the discovery cut-off date to July 25, 2008, in order to facilitate the depositions of Mr. Lutz and Mr. Maalouf. Despite HOST's good-faith efforts to cooperate with Plaintiffs' eleventh-hour onslaught of discovery, Plaintiffs bring their meritless motion to compel. Plaintiffs motion should be denied in its entirety, and this Court should award monetary sanctions against Plaintiffs in the amount of $3,500 for bringing this motion without substantial justification.

## III. THE TWO NEW DEPOSITIONS THAT PLAINTIFFS NOW REQUEST WERE NEVER SOUGHT BEFORE THE DISCOVERY CUT-OFF

It is undisputed that Plaintiffs' have **never** served a notice of deposition for Charles Powers or Cecelia Hoatson. Raskin Decl. ¶ 19; *see also* Exhibit "11" thereto. HOST learned for the first time on August 1, 2008, that Plaintiffs wished to take these two depositions, 14 days after the discovery cut-off. *Id.* Plaintiffs' untimely request is improper and should not be permitted by the Court. Raskin Decl. ¶ 19; *see also* Exhibit "12" thereto.

### A. Charles Powers Was First Identified in HOST's January 9, 2008, Initial Disclosures

Plaintiffs' claim that Mr. Powers was "not identified pursuant to FRCP 26(a)(1)(A)" and seek leave to depose him for that reason. Plaintiffs' Motion at 3:19-20. This is a gross misstatement of fact since HOST's initial disclosures to Plaintiffs, dated January 9, 2008, clearly identify Mr. Powers and his title. *See* Exhibit "13" to Raskin Decl. Plaintiffs' misleading statements are a sufficient basis for this Court to award monetary sanctions in favor of HOST.

Additionally, Plaintiffs claim that Mr. Lutz's testimony shows that Mr. Powers was a "key decisionmaker (*sic*)" Plaintiffs' Motion at 3:22. Again, this is not correct. Mr. Lutz stated that "I don't

think [Mr. Powers] chose that option. I think he recommended that option. At the end of the day **it was my decision** [to terminate Mr. Murray's employment]." Deposition of Joseph Lutz, 43:19-22 (attached as Exhibit "14" to Raskin Decl.) (emphasis added). Plaintiffs' attempts to argue the opposite are insincere and this Court should not permit Plaintiffs to redepose these individuals after the discovery cut-off date.

**B. Cecelia Hoatson Was Identified in Darryl Murray's Deposition on March 25, 2008.**

Plaintiffs claim that they should be permitted to depose Ms. Hoatson because: (1) she was not identified in HOST's initial disclosures; and (2) she was "a key decisionamaker (*sic*) and orchestrator (*sic*) of Darryl Murray's termination. Plaintiffs' Motion at 3:20-22.

First, it is correct that Ms. Hoatson was not identified in HOST's initial disclosures. However, HOST was under no obligation to supplement its initial disclosures with Ms. Hoatson's name because the additional or corrective information was otherwise "make known to the other parties during the discovery process." *See* Fed. R. Civ. P. 26(e)(1),(2); *see also Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N. D. Ind. 1998) ("There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, *as when a witness not previously disclosed is identified during the taking of a deposition* . . ." (emphasis in original)).

Here, as exactly what was contemplated in *Coleman* occurred, three times. First, several documents produced to Plaintiffs with HOST's initial disclosures identify Cecelia Hoatson. Second, Ms. Hoatson was also identified in Mr. Murray's own deposition. *See* Deposition of Darryl Murray, 31:25 and accompanying Exhibit "10" to deposition (attached to Raskin Decl. as Exhibit "15" and "16," respectively). Finally, Ms. Hoatson was also identified in Jennifer Lakin's deposition. *See* Deposition of Jennifer Lakin 79:18 (attached to Raskin Decl. as Exhibit "17"). HOST had no duty to supplement its initial disclosures and Plaintiffs' were on notice of Ms. Hoatson's identity and position at HOST as early as March 25, 2008. Therefore, it is absurd for Plaintiffs to argue that they did not have ample opportunity to depose Ms. Hoatson before the discovery cut-off date when they knew about her for months.

Second, Ms. Hoatson was not a key decision maker with respect to Mr. Murray's employment termination. The "smoking gun" evidence that Plaintiffs cite is that Ms. Hoatson was the Vice President of Human Resources. Plaintiffs' Motion at 2:20-21. Simply because Ms. Hoatson was the Vice President of Human Resources does not mean she was a "key decision maker." In fact, Mr. Lutz's deposition testimony shows that Mr. Hoatson was not a key decision maker, but rather just one of the people informed of Mr. Lutz's decision because she was his superior. Plaintiffs' mischaracterization of Ms. Hoatson's role as something it is not is yet another misstatement of Mr. Lutz's testimony. In any event, Plaintiffs arguments are without merit because they could have deposed Ms. Hoatson as early as March 25, 2008, when they first learned of her role. Plaintiffs' should not be allowed a second bite at the apple now, weeks after the discovery cut-off date, based on facts they have had for months prior to the deadline.

**IV. MR. LUTZ'S DEPOSITION ENDED PURSUANT TO COUNSELS' MUTUAL AGREEMENT TO KEEP HIS DEPOSITION TO TWO HOURS**

Next, Plaintiffs argue that Mr. Lutz's deposition ended "arbitrarily" and they want a chance to redepose Mr. Maalouf. However, this is yet another gross misstatement. Mr. Lutz deposition notice was received on July 8, 2008, just 10 days before the discovery cut-off date. Raskin Decl. ¶ 10 and Exhibit "7" attached thereto. Demanding that Mr. Lutz have only 10 days to appear for deposition before the cut-off date is an "undue burden" on the parties and prohibited by Fed. R. Civ. P. 45. But still he appeared on July 25, 2008, without protest. As a condition of not opposing the very short notice for Mr. Lutz's deposition and providing Mr. Elie Maalouf, HOST's CEO, for deposition with no notice at all, a specific agreement was reached between Ms. Raskin and opposing counsel: opposing counsel agreed to limit the length of those depositions to two hours. Raskin Decl. ¶ 16 and Exhibit "9" attached thereto.

When Plaintiffs' violated this agreement by demanding that Mr. Lutz's deposition continue beyond two hours, Ms. Raskin reminded opposing counsel Todd Tappe, of their agreement. Once the deposition ended, Ms. Raskin sent a letter to Mr. Tappe again reminding him of their agreement and demanded compliance with the agreement at Mr. Maalouf's deposition, that occurred later that same day. *See* Exhibit

"18" to Raskin Decl. Plaintiffs' attempt to renege on their agreement regarding these late noticed depositions is unprofessional and disheartening. To state that Mr. Lutz' deposition ended "arbitrarily" is simply not true. It ended pursuant to an agreement between counsel, one that was favorable to Plaintiffs. *See id.* Plaintiffs should not be allowed to redepose Mr. Maalouf weeks after the close of discovery.

## V. ALL DOCUMENTS THAT PLAINTIFFS REQUESTED AND THAT CAN BE LOCATED HAVE BEEN PRODUCED

### A. Mr. Murray's Personnel File Was Not Withheld, Everything Was Produced Either as Agreed or When Requested

Plaintiffs claim that HOST engaged in gamesmanship when it produced only the sexual harassment investigation portion of Mr. Murray's personnel file with the initial disclosures and not the other irrelevant portions (which Plaintiffs admit was ultimately produced when they properly served a document request asking for it along with their deposition notices). Based on this alleged failure, Plaintiffs claim they should be allowed to redepose multiple witnesses. Plaintiffs contention that HOST somehow acted in bad faith with regard to its initial production, is yet another misstatement. Ms. Raskin's cover letter to opposing counsel enclosing the sexual harassment portion of Mr. Murray's personnel file could not be clearer:

> "As per our agreement at the ENE conference on December 5, 2007, and our telephone call on December 18, 2007, attached please find hard copies of the human resource records **relating to the sexual harassment complaint against Mr. Murray**." (emphasis added). *See* Exhibit "19" to Raskin Decl.

Therefore, Plaintiffs attempt to feign ignorance and accuse HOST of trickery are utterly without any basis. Plaintiffs knew what had been produced but neglected to request what they wanted until just before the discovery cut-off date. *See* Exhibit "4" and "5" to Raskin Decl. (first request for personnel file occurred on July 15, 2008). Their failure to timely request documents, does not permit them to redepose numerous witnesses and the court should deny this request.

### B. The Four Additional Documents Plaintiffs Never Requested Are Not Grounds to Reopen Discovery

One of the arguments in Plaintiffs motion is that they must re-depose **everyone** because HOST has allegedly not provided four documents: (1) a "code of ethical conduct" — referenced by Mr. Maalouf at his

deposition but never sought in any document request; (2) a "suspension policy"— referenced in Ms. Castro's deposition but never sought in any document request; (3) a "human resources manual"— also never requested; and (4) a "notice of termination" which Ms. Castro referenced in her deposition but cannot be located, does not exist as part of Mr. Murray's personnel file (which has been turned over in its entirety).

First, Plaintiffs never asked for a single policy, employee manual, employee handbook or other document that could be construed to be responsive to the above. It appears, that they simply assume that the documents would be have been provided to them without having to request them. While the "notice of termination" should conceivably be part of Mr. Murray's personnel file, HOST has been unable to locate it and it is not part of his file. Raskin Decl. ¶ 27. HOST is making a good-faith effort to locate this document, and if it does will produce the document to Plaintiffs.

Second, Plaintiffs argue that the depositions they conducted were "unfair" because they did not contain the above documents. However, as stated above, these documents were never requested informally, or through any acceptable discovery method. Pltfs' Motion at 8:19. HOST would have cooperated with Plaintiffs' request, had Plaintiffs asked and provided HOST adequate time to respond prior to filing this motion. Even now, HOST continues to act in good faith by voluntarily agreeing to provide Plaintiffs with any of the aforementioned documents, if Plaintiffs can clarify what documents they seek. Regardless of whether or not Plaintiffs get additional documentation from HOST, these documents do not give Plaintiffs the right to redepose multiple witnesses.

Moreover, if Plaintiffs thought that documents were so critical then Plaintiffs should have requested them earlier, rather than after the close of discovery. Plaintiffs now argue that having these key documents would refreshed the "failed" memories of Idalia Castro, Jennifer Lakin, and Elie Maalouf. However, Plaintiffs were in full possession of ALL documents relating to the sexual harassment investigation into Sandra Rosales' complaint against Mr. Murray and did not use any one of these documents to "refresh" any inviduals' memory at their deposition. Plaintiffs want the Court to believe that these documents form the

core of these individuals' testimony, however, this is implausible considering the fact that Plaintiffs did not use a single document to support or refresh the memories of any witnesses at deposition, even though they had in their possession every single document relating to the sexual harassment investigation leading to Mr. Murray's ultimate discharge. Raskin Decl. ¶ 28. If Plaintiffs' can provide HOST with more details to the documents Plaintiffs seek, HOST will provide the documents. However, Plaintiffs' motion to redepose Mr. Maalouf, Ms. Castro, and Ms. Lakin should be denied.

## VI. HOST'S CEO, MR. MAALOUF, HAS ALREADY APPEARED VOLUNTARILY

Plaintiffs seek to redepose Mr. Maalouf because Mr. Maalouf failed to answer certain hypothetical questions. First, as established above, Mr. Maalouf's deposition was requested for the first time by email on July 24, 2008, and formal notice was not provided until 5:22 p.m. a day before his deposition. Even though HOST had adequate grounds to move for a protective order to prevent Mr. Maalouf's deposition, he appeared on the condition that the deposition be limited to 2 hours. Raskin Decl. ¶ ¶ 16-18 and Exhibit "9" attached thereto. Plaintiffs' have apparently disregarded this agreement in seeking to redepose Mr. Maalouf.

Second, Plaintiffs argue that Mr. Maalouf should be redeposed because he "refused to answer hypothetical questions." Plaintiffs' Motion at 7:1-3. This is a misstatement of his testimony. Mr. Maalouf stated that he could not answer certain questions because "this particular circumstance [] is contradictory and not one we foresee. I'm not informed of non-violations in the company. … I'm just unable to react to something that doesn't occur." [Deposition of E. Maalouf, 47:14-25, attached as Exhibit 20 to Raskin Decl]. This was not a refusal, but an explanation that the questions did not make sense.

Indeed, the hypothetical questions asked by Plaintiffs counsel were improper, incomplete and overbroad. Ms. Raskin stated as much on the record. *See e.g.*, Deposition of Ellie Malouf, 46:18-47:09. HOST provided Mr. Maalouf to be deposed a week after the discovery cut-off date as a courtesy and Mr. Maalouf provided testimony to the best of his ability. Accordingly, Plaintiffs' motion to compel him to be redeposed should be denied.

## VII. CONCLUSION REGARDING PLAINTIFFS' SANCTIONABLE MOTION

There is one common thread to all of the arguments presented in Plaintiffs' motion to compel, their total lack of merit. While HOST and its counsel have done everything possible accommodate Plaintiffs' last minute "fire drill" litigation style, they are not required to do more now that the discovery cut-off has closed. More importantly, the Plaintiffs have not shown any relevant facts which would permit this court to reopen discovery. The bottom line is this, Plaintiffs have failed to conduct timely discovery and HOST should not be penalized for their lack of diligence.

The Court made a simple request in its Order Setting Expedited Briefing Schedule. It stated: "the parties are required to address how Plaintiffs' failure to comply with this Court's order affects Plaintiffs' current requests and argument." *See* Order (Docket Number 17). Plaintiffs have not adequately explained why they have failed to comply with the Court's discovery cut-off date, indeed, they have no adequate explanation. Although HOST agreed to a one week extension of the discovery cut-off time, Plaintiffs failed to authorize the extension with the Court and now make a warrantless motion to compel in a last ditch effort at a fishing expedition, hoping to uncover any fact that would allow them to overcome HOST's meritorious motion for summary judgment. Therefore, pursuant to Rule 37, HOST should be awarded sanctions in the amount of $4,258.00, for having to oppose this frivolous motion.

Dated: August 25, 2008

Respectfully submitted,
BAILEY LAW GROUP, P.C.

By: /s/Serafina Raskin
sraskin@baileylawgroup.com
8105 Irvine Center Drive, Suite 900
Irvine, CA 92618
(949) 453-1755 tel., (949) 453-1757 fax