# EXHIBIT
# 15

Certified Copy

STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DARRYL MURRAY and DEBRA MURRAY,

Plaintiffs,

vs.

Case No.
3:07-CV-02056-H-BLM

HOST INTERNATIONAL, INC. and DOES 1-100, Inclusive,

Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

# DEPOSITION OF DARRYL MURRAY

SAN DIEGO, CALIFORNIA

MARCH 25, 2008

Reported by Cindy Cameron, CSR No. 10315, CCR No. 671

PAULSON
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

prevention workshops at the branch as soon as possible."
Do you see that sentence?
A In the last paragraph -- I'm sorry, no, I do not.
Q I mean the first page. You're right, it's not the last paragraph of the memo. It's the last paragraph of the first page, the very last sentence on the first page?
A Okay. I see it.
Q And did you, in fact, do that?
A To be honest, I don't remember.
Q Do you remember what he meant by "facilitate"? Do you remember if he meant, by "facilitate," to conduct the workshops or to just ensure that they occurred?
MR. MILLER: Calls for speculation as to what was in his mind, but --
THE WITNESS: I remember the conversation rather clearly. And Mr. Vogel apologized to me -- to use his words, not mine, "This is bullshit; and your best bet is to sign it and move on.
BY MS. BAILEY:
Q But in terms of the workshops at the Columbus airport, did you ever conduct such workshops?
A I do not remember.
Q And then this other memo, the one that you said you had not seen before, the one that's to Jack Vogel on August 28th, it says "Darryl was contacted by Cecilia Hoatson," I

guess, "and Sharron Dean to review the allegations and to give him the opportunity to respond."

Do you recall being contacted by those two individuals?

A Yes. We had one phone conversation.

Q And did they give you the opportunity to respond?

A They never told me what the allegations were. So I told them I didn't know how to respond if I don't know what I was being accused of.

Q Do you remember if you ever provided a written response of any sort?

A I do not believe I was ever asked for one.

Q If you could take a look at this document, Mr. Murray, and see if you remember it.

A This wouldn't be accurate, because Elie Maalouf was not the president of the company in 2005.

Q Okay. Though it's dated August 2005?

A Yeah, I see that. That's why it's not accurate. So I would have never seen anything like this.

Q Do you remember seeing a previous version of an associate handbook?

A I remember several versions of an associate handbook.

Q Okay. But not this particular one?

A Once again, in 2005, Mr. Maalouf was not the

REPORTER'S CERTIFICATION

I, Cindy Cameron, Certified Shorthand Reporter, in and for the State of California, do hereby certify:

That the foregoing witness was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were recorded stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have subscribed my name this date:
April 10th, 2008.

/s/ Cindy Cameron
Cindy Cameron, CSR 10315, CCR 671

# EXHIBIT
# 16

HMS HOST

*INTEROFFICE MEMORANDUM*

**DATE:** September 20, 2006

**TO:** Chuck Powers, Joe Lutz, Cecilia Hoatson, and Idalia Castro

**FROM:** Thomas Stein

**SUBJECT:** Notes from Darryl Murray Interview on 9/19/2006 regarding the kissing of Sandy Rosales on 8/26/2006, the removing of Darin Chadwick – AMII from position on 8/28/2006 and the tip jar program to offer free money to union associates

---

- Darryl initially admitted kissing Sandy at the party stating it was a hug and kiss goodbye like he did to a number of other associates who were there.
  - No other associates acknowledged being kissed by Darryl at the party.
- Darryl claims he hugs and kisses a lot of the associates here but never on the lips other than Sandy.
  - When asked how many other times that has occurred, he backed off the statement by saying he's not even sure he kissed her on the lips that night. He claims he's not sure why it happened but he didn't think anything about it until he heard the rumors upon arranging at work on Monday the 28th.
- Darryl acknowledged he should never have gone to the party because it was at an associate's house and stated he's never done that before.
- Darryl stated he only talked to Darin once at the party and that was as he was leaving to say hi and goodbye.
- Darryl denies that he told Darin he was dressing Sandy like a school girl and that he thought that was very sexy.
- Darryl claims Sandy asked he and Jerry Shelby not to leave; nearly begging them to stay and insisted they come back to the party
- Darryl states Sandy told him Darin was abusing her and he was concerned for her safety. He hugged and kissed her as they were leaving because she was looking like she was going to start crying again. Darryl told her he would come back or at least call her to check in on her.
- Darryl stated he's called Sandy repeatedly over the years for business and personal reasons. Anytime Sandy called him, he would call her back like he does for every associate when they call him.
- Darryl denies telling Darin he would "Kick his ass" while in the elevator on Monday the 28th, as he was taking Darin down to the Cooler to have a private conversation with him regarding the rumors Darin was spreading about Darryl kissing his girlfriend at the 8/26 party.
- When in the cooler, Darryl told Darin he never kissed Sandy on the lips and that Darin must have been mistaken. Darin confronted him with the fact that he was three feet away watching it happen and Darryl than stated it was only a peck; nothing sexual was meant by it.
- Darryl states the decision to pull Darin out of his acting SM role was made the previous week and it was already set to happen on Monday the 28th.
- Darryl admits prefacing the discussion with Darin about moving him from the acting position with the statement, "This has nothing to do with what we discussed earlier." That was said to insure Darin didn't think it was in response to Darin spreading rumors about Darryl kissing his girlfriend

Track________ Exhibit 10
Date 3-25-08
Witness Murray
C. Cameron 2 Page(s)
CCR #871 / CSR #10315

10-1

- Darryl claims he had a sit down casual and undocumented conversation with Darin the prior month about his performance. Neither Darin nor Kuldip, the AMII who is acting AGM and Darin's immediate supervisor, have any knowledge of that conversation nor is it documented anywhere. Darryl acknowledges he never documented any of Darin's progress, whether good or bad as he claims he was leaving that up to Kuldip. He had no justification for pulling him out other than the manager who he replaced Darin with was failing miserably in his current role so he wanted to give him a smaller and easier location to run.
- Darryl claims he assured Darin he would receive a development plan after being moved out of the Acting SM role to get him ready to be a SM but that has not been developed or administered to date.
- Darryl claims he promised and gave Darin a 5% raise for becoming an AMII and acting SM but Darin states he only received a 5% increase based on his performance evaluation in April.
- Darryl admitted dancing in a provocative manner at the last Christmas party stating, "I dance like people dance today, there's nothing sexual about it; and I just like to dance."

  When asked if any of his manager or associates have ever counseled him on his behavior because they felt it was inappropriate, he stated that happened this summer while out for dinner with associates and managers. Adrianna told him she didn't appreciate comments he made about Mexican food. Darryl stated he couldn't recall whether or not he was ever confronted by anyone else.

  We know he was [illegible] by his AGM at the Christmas party this year because of the way he was dancing with Sandy in such a provocative and sexual manner.

  Darryl also admitted knowing Darin who was an AMII was dating Sandy who was one of Darin's direct reports. The only thing Daryl said to him was to be careful, keep it away from the branch and don't let it interfere with your work.

  Darryl admitted fronting Sandy $500-$600 to go to Bartending School last year [illegible] her to get a check for the school from [illegible], cash it and give him back the money. Darryl stated that did happen but believes she paid him by check. When asked how many other associates he had done that for the answer was none.

TIP JAR Issue

- Darryl has maintained a tip jar campaign that boasts it will help our HMSHost associates go to school. Darryl claims it was approved by Jack, Jean Mario and Mike Hasenzahl when he was still here.
- Tip Jars are on every register, funds are deposited into a charity account, he and two managers decide each month which Union Associates should receive money, only pays $500 at the max to anyone and limits how many times associates can receive money. Fund is to be used for school and makes associates write an essay as to why they deserve the money but doesn't know whether it's really for school. Darryl thought there was $7,000 in the account but there's actually $17,000 in that account. The associates are given a tax free check.
- Darryl also admits he gives other donations out of that account and buys charity silent auction gifts for his managers from that account every year. He also realizes there is already a budgeted amount on his P&L for charitable contributions and community service type donations. Darryl claims he never thought about the discriminatory method of disbursing funds to the associates nor did he know it was a violation to give money to associates without it being taxed or reported to the govt.
- When reviewing the list of checks paid out of that account over the last few years, in excess of $500, Darryl had no idea what the larger amounts of money were for.

Darryl acknowledged he now has to change his behavior because he realizes sexual harassment and inappropriate behavior is in the eye of the accuser. Even though he didn't mean anything by his forwardness he realizes it has been perceived to be sexually harassing and somewhat discriminatory in nature. Darryl stated he needs to know whether he's going to be terminated because he needs to takes steps on his own to protect himself.

______ = information that changed from his initial interview with Idalia

# EXHIBIT 17

CERTIFIED COPY

# THORSNES LITIGATION SERVICES

Transcript of the Testimony of:

# Jennifer Lakin

**Date:** July 15, 2008

**Volume:** I

**Case:** Murray v. HMS Host

THORSNES LITIGATION SERVICES, LLC
2550 FIFTH AVENUE, NINTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(P): 619.233.2030
(F): 619.330.1956
E-MAIL: INFO@THORSNES.COM
WEB: WWW.THORSNES.COM

Q. Have you had any personal or -- strike that.
Have you had any conversations with Ellie Maalouf?
A. I have never spoken to him about this case.
Q. Have you had occasion to speak to him about anything else?
A. I spoke to him one time at a conference that I was at, and it was about exercise.
Q. There are a couple other names that came up in some of the emails, Cecilia Hoatson, H-o-a-t-s-o-n?
A. She's Idalia's supervisor.
Q. And where does she work?
A. Bethesda, Maryland.
Q. Did Cecilia Hoatson, to your knowledge, participate in the decision to terminate Darryl Murray?
A. I would assume so. But, to my knowledge, I could not affirm that 100 percent.
Q. I think you have mentioned it before, but I think I know the answer, but who is Chuck Powers?
A. He is the vice president of Human Resources.
Q. Can you think of anything else that I missed that might help us to understand what happened with Darryl Murray, you know, his termination or anything related?

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney of party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: July 28, 2008

Monica M. Frank
MONICA M. FRANK
CSR NO. 13320

# EXHIBIT
# 18

# BAILEY LAW GROUP

**Washington, DC • Boulder County, CO • Orange County, CA**

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Patricia James, Todd Tappe | FROM:<br>Serafina Raskin |
| COMPANY:<br>Miller, King & James, LLP | DATE:<br>7/25/2008 |
| FAX NUMBER:<br>619-685-0011 | TOTAL NO. OF PAGES INCLUDING COVER:<br>5 |
| PHONE NUMBER:<br>619-685-0077 | SENDER'S REFERENCE NUMBER: |
| RE:<br>Murray v. Host | YOUR REFERENCE NUMBER: |

☑ URGENT ☑ FOR REVIEW ☑ PLEASE COMMENT ☑ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached correspondence.

ATTENTION - The information contained in this facsimile is protected by attorney-client and/or attorney work product privilege, and intended solely for the use of the individual(s) to whom it is addressed. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that dissemination, distribution or copying of this transmission is prohibited.

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

# BAILEY LAW GROUP

Washington, DC • Orange County, CA • Boulder County, CO

July 25, 2008

**VIA FACSIMILE**

Todd Tappe
Miller, King & James, LLP
Attorneys at Law
707 Broadway, Suite 1800
San Diego, CA 92101-5314

Re: Depositions of Joe Lutz and Elie Maalouf

Dear Mr. Tappe:

I am writing to express my disappointment in the way that Mr. Lutz's deposition concluded. Our agreement to limit Mr. Lutz's and Mr. Maalouf's deposition to two hours could not be clearer (please see the attached emails evidencing this agreement). I specifically discussed with you, Patricia James, Monica Dube and Christina Ford, that as a condition to extending the discovery cut-off and not opposing the very short notice for the depositions of Mr. Lutz and Mr. Maalouf, you, Ms. James and your assistants agreed to limit the length of the depositions to less than two hours.

We continue to cooperate fully with your firm, despite the serious procedural defects in your attempts to notice these depositions. Indeed, as of yesterday your firm had not even noticed Mr. Maalouf's deposition. Mr. Maalouf is therefore appearing voluntarily and as a courtesy to you because we had previously agreed he would appear today (despite your failure to notice his deposition). You can hold me to my word and I will hold you to yours. Therefore, Mr. Maalouf's deposition will begin at 1:00 p.m. pacific time and will conclude at 3:00 p.m. pacific time as we previously agreed. When your two hour allotment has expired, I will ask my few questions of Mr. Maalouf, on the record, and we will conclude the deposition.

A repeat of this morning's events is unacceptable and your professionalism is expected. If any of the foregoing is not clear, contact me immediately.

Sincerely,

Serafina Raskin

enclosures

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

Start Page Mail Calendar Documents Sites

sraskin@baileylawgroup.com | Settings | Older v

Gmail

christina

Search Mail | Search the Web | Show search options Create a filter

Compose Mail

Inbox (362)

Starred

Chats

Sent Mail

Drafts (7)

All Mail

Spam

Trash

Contacts

Serafina Raskin
Search, add, or invite

Labels
Edit labels

Quote of the Day - Maya Angelou - "Nothing will work unless you do."

« Back to Search Results | Report Spam | Delete | More Actions

## RE: Murray v. HMSHost - Elie Maalouf

Inbox x

New window
Print all
Collapse all
Forward all
Turn off high

from Christina Ford <cford@ddmassociates.com>
to Serafina Raskin <sraskin@baileylawgroup.com>
date Mon, Jul 14, 2008 at 12:15 PM
subject RE: Murray v. HMSHost - Elie Maalouf

hide details Jul 14 (11 days ago) | Reply |

Would you like t

Map this
8105 Irvine
Irvine, CA 9

Thank you.

We would also like to depose Elie Maalouf as well. I believe he is also located on the East Coast, so it will have to be telephonic. I would appreciate if you could send me his contact information as well so I can prepare an accurate subpoena.

Thank you for your help,

Christina

---

**From:** Serafina Raskin [mailto:sraskin@baileylawgroup.com]
**Sent:** Friday, July 11, 2008 4:36 PM
**To:** Christina Ford
**Subject:** Re: Murray v. HMSHost - Sandra Rosales

Christina-

I will find out and get back to you.

Best,

Serafina

On Fri, Jul 11, 2008 at 4:14 PM, Christina Ford <cford@ddmassociates.com> wrote:

Ms. Raskin,

Does Sandra Rosales need a translator for her deposition? She was using one to give her statement in the personnel file.

Thank you.

Christina M. Ford
Trial Paralegal
Miller, King & James, LLP
Attorneys at Law
707 Broadway, Suite 1800
San Diego, CA 92101
619.685.0077 ph

619.683.0011 fax

cford@ddmassociates.com

This e-mail message was sent of behalf of an attorney and is intended for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, or disclosure is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

--

Serafina Raskin, Associate

Bailey Law Group
Washington, DC | Orange County, CA | Boulder County, CO
8105 Irvine Center Drive • Suite 900 •Irvine, CA 92618
949.453.1755 / 949.453.1757 (fax)
sraskin@baileylawgroup.com

Litigation | Employment Law | Business and Non-Profit Law | Real Estate | Environmental Law | Government and Regulatory Affairs | Alcoholic Beverage Licensing

ATTENTION - The information contained in this e-mail is protected by attorney-client and/or attorney work product privilege, and intended solely for the use of the individual(s) to whom it is addressed. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that dissemination, distribution or copying of this transmission is prohibited.

IRS CIRCULAR 230: To the extent this communication contains federal tax advice, it is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

Reply Forward

**Serafina Raskin to Christina**

show details Jul 14 (11 days ago) | Reply |

Christina-

Elie Maalouf is located at the corporate HQ. Since he is HOST's President a subpoena is not required to compel his testimony. I will accept the deposition notice at my office. That being said, I cannot speak to Mr. Maalouf's availability prior to the discovery cut-off date. I have put a call into his office to inquire into his availability in the next few weeks- I know that he is extremely busy and travels quite a bit. I may be able to get him to clear his schedule depending on the amount of time that you require. How long do you anticipate his deposition lasting?

I will also contact Mr. Lutz regarding his availability, with the same caveat. How long do you anticipate his deposition lasting?

Best,

Serafina

- Show quoted text -

Reply Forward

**Christina Ford to me**

show details Jul 14 (11 days ago) | Reply |

Serafina,

For Lutz and Maalouf, no longer than an hour or so. I would anticipate the same for Castro and Stein. We understand that Mr. Maalouf is busy and this might be an issue this late in the game. I do appreciate you trying to nail him down for at least an hour for us.

I left messages for Mr. Stein and Mr. Lutz today re their availability rather than just sending more subpoenas on a day they were unavailable. Ms. Castro's phone just rings with no voicemail option, so perhaps you'll have better luck. I need to send subpoenas out for at least those 3 no later than tomorrow morning, so hopefully we will hear back. Otherwise, if there are any dates that your office is unavailable, please let me know that as well.

Any word on the translator for Ms. Rosales? I think our court reporting service said they would just need to know by late tomorrow.

Thank you,

Christina

**From:** Serafina Raskin [mailto:sraskin@baileylawgroup.com]
**Sent:** Monday, July 14, 2008 2:19 PM
**To:** Christina Ford
**Subject:** Re: Murray v. HMSHost - Elie Maalouf

- Show quoted text -

Reply Forward

**Serafina Raskin to Christina** show details Jul 14 (11 days ago) | Reply |

Hi Christina-

I just spoke to Ms. Rosales and she will need a translator. Thank you.

Best,

Serafina

- Show quoted text -

Reply Forward

« Back to Search Results | Report Spam | Delete | More Actions

You are currently using 879 MB (3%) of your 25600 MB.

This account is open in 1 other location (70.187.185.115). Last account activity: 5 minutes ago at IP 166.135.9.216. Details

Bailey Law Group Mail view: standard | turn off chat | basic HTML Learn more

©2008 Google - Terms of Service - Privacy Policy - Program Policies - Google Home

Powered by Google

# Transmission Report

Date/Time : 06/24/08 12:09
Personal Number :
Personal Name :

Transmission Information

| Start Time | Distant Station | TtlTime | Pages | Mode | Result | Comm. Contents |
|---|---|---|---|---|---|---|
| 06/24 12:08 | 916196850011 | 1'08" | 5/5 | ECM | NrmlEnd | |

Document transmission is complete.

## BAILEY LAW GROUP

Washington, DC • Boulder County, CO • Orange County, CA

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Patricia James, Todd Tappe | FROM: Serafina Raskin |
| COMPANY: Miller, King & James, LLP | DATE: 7/25/2008 |
| FAX NUMBER: 619-685-0011 | TOTAL NO. OF PAGES INCLUDING COVER: 5 |
| PHONE NUMBER: 619 685 0077 | SENDER'S REFERENCE NUMBER: |
| RE: Murray v. Host | YOUR REFERENCE NUMBER: |

☑ URGENT ☑ FOR REVIEW ☑ PLEASE COMMENT ☑ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached correspondence.

ATTENTION – The information contained in this facsimile is protected by attorney client and/or attorney work product privilege, and intended solely for the use of the individual(s) to whom it is addressed. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that dissemination, distribution or copying of this transmission is prohibited.

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

# EXHIBIT 19

# BAILEY LAW GROUP

Washington, DC • Boulder County, CO • Orange County, CA

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: David D. Miller | FROM: Serafina Raskin |
| COMPANY: Miller, King & James, LLP | DATE: 1/3/2008 |
| FAX NUMBER: 619-685-0011 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 619-685-0077 | SENDER'S REFERENCE NUMBER: |
| RE: Murray v. Host | YOUR REFERENCE NUMBER: |

☑ URGENT ☑ FOR REVIEW ☑ PLEASE COMMENT ☑ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

See attached correspondence.

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

# BAILEY LAW GROUP

Washington, DC • Boulder County, CO • Orange County, CA

January 3, 2008

**VIA FACSIMILE AND FED EX**

David D. Miller
Nicholas S. King
Miller, King & James, LLP
Attorneys at Law
707 Broadway, Suite 1800
San Diego, CA 92101-5314

Re: Draft of Proposed Joint Discovery Plan

Dear Mr. Miller and Mr. King:

As per our agreement at the ENE conference on December 5, 2007, and our telephone call on December 18, 2007, attached please find hard copies of the human resource records relating to the sexual harassment complaint against Mr. Murray. On December 27, 2007, I emailed these records to you at the email address listed in the court records as cford@ddmassociates.com. The next day I contacted your office to confirm the receipt of these records and to inquire as to the status of the documents Mr. Murray promised to produce to Host demonstrating that he has paid off his debt to Wells Fargo. My understanding is that we agreed to exchange documents by December 27, 2007, to date, however, Host has not received these documents. Please let me know when I should expect to receive these documents.

Also, thank you for agreeing to draft the parties proposed joint discovery plan. Unfortunately, I think you may have inadvertently sent me an early draft of the plan that does not comport with the requirements of FRCP 26(f). Specifically, pursuant to FRCP 26(f)(3), a discovery plan must state the parties' views and proposals on:

(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

# BAILEY LAW GROUP

**Washington, DC • Boulder County, CO • Orange County, CA**

(C) any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

(D) any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order;

(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

Please send me a revised draft of the joint discovery plan by the close of business on January 4, 2008. If I do not hear from you by then, Host will be forced to submit its own proposed discovery plan. Please do not hesitate to contact me if you have any questions. I look forward to hearing from you soon.

Sincerely,

Serafina Raskin
for Bailey Law Group, P.C.

enclosures

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

# Transmission Report

Date/Time : 12/03/07 16:47
Personal Number :
Personal Name :

Transmission Information

| Start Time | Distant Station | TtlTime | Pages | Mode | Result | Comm. Contents |
|---|---|---|---|---|---|---|
| 12/03 16:47 | 916196850011 | 45" | 3/3 | ECM | NrmlEnd | |

Document transmission is complete.

## BAILEY LAW GROUP

Washington, DC • Boulder County, CO • Orange County, CA

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: David D. Miller | FROM: Serafina Raskin |
| COMPANY: Miller, King & James, LLP | DATE: 1/3/2008 |
| FAX NUMBER: 619 685 0011 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 619-685-0077 | SENDER'S REFERENCE NUMBER: |
| RE: Murray v. Host | YOUR REFERENCE NUMBER: |

☑ URGENT ☑ FOR REVIEW ☑ PLEASE COMMENT ☑ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

See attached correspondence.

8105 Irvine Center Drive, Suite 900, Irvine, CA 92618
Tel. (949) 453-1755 • Fax. (949) 453-1757

# EXHIBIT 20

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL MURRAY and DEBRA MURRAY,

Plaintiffs,

vs.

HMSHOST CORPORATION, HMS HOST FAMILY RESTAURANTS, INC., HMS HOST USA, INC., and DOES 1-100, Inclusive.

Defendants.

CERTIFIED COPY

Case No.: 07CV2056-H (BLM)

TELEPHONIC DEPOSITION OF ELIE W. MAALOUF

SAN DIEGO, CALIFORNIA

JULY 25, 2008

Reported by: Mirosalva Olguin, C.S.R. No. 12959

problems he finds in the hypothetical. You don't have to prompt him to discuss certain policy matters.

MS. RASKIN: I just don't think that you're listening to the answer that he's giving you, or there's a miscommunication happening between the two of you.

But I'll object to the hypothetical because it is overbroad and is to the meaning of the word "legitimate" for why a manager would kiss an associate. But I'll let you continue.

BY MR. TAPPE:

Q Okay. Mr. Maalouf, I think what you're telling me is you have an inability to answer any hypotheticals. Is that not correct?

A I didn't tell you that. What I told you is this particular circumstance arising is contradictory and not one we foresee. I'm not informed of non-violations in the company. I'm informed of violations. And if our senior in human resources and operations people inform me of a violation, it's because they think there is a violation.

It's not because they think there is not a violation. We have non-violations occurring all day long. And what you're creating is a contradictory situation. And, therefore, I'm just unable to react to something that doesn't occur.

REPORTER'S CERTIFICATE

I, Mirosalva Olguin, Certified Shorthand Reporter for the State of California, do hereby certify:

That the witness in the foregoing deposition was by me first duly sworn to testify to the truth, the whole truth and nothing but the truth in the foregoing cause; that the deposition was taken by me in machine shorthand and later transcribed into typewriting, under my direction; and that the foregoing contains a true record of the testimony of the witness.

Date: This 6th day of August, 2008, at San Diego, California.

Mirosalva Olguin
MIROSALVA OLGUIN
CSR No. 12959