David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC., and DOES 1-100, Inclusive,<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION TO COMPEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: September 5, 2008<br>Time: 2:00 p.m.<br>Courtroom: 5, Third Floor<br>Magistrate Barbara L. Major |

I
INTRODUCTION

Plaintiffs moving papers elaborate the salient points that form the substance of their efforts to compel further discovery. A complete personnel file was not produced prior to corporate defendant depositions. A deposition was ended abruptly at two hours by defense counsel. Further, a senior-level defendant deponent refused to answer any hypothetical questions.

II
MISSTATEMENTS AND NEW ISSUES RAISED IN THE OPPOSITION PAPERS

A. Charles Powers should be produced for deposition because the defense improperly identified Joe Lutz as the PMK for termination, and the defense mistakenly represents that Charles Powers is not a knowledgeable witness.

Defendants identified Idalia Castro as the HR PMK and Joe Lutz as the reason for

termination PMK. After the depositions, it became apparent that the PMKs for these topics were, respectively, Charles Powers and Cecilia Hoatson. Even in their opposition to this motion, Defendants argue that Mr. Powers and Ms. Hoatson are not key players. Defense Opposition at 4:27 to 5:2 (claiming Charles Powers is was not a key decisionmaker); and 6:1-2 (claiming Cecilia Hoatson was not a key decisionmaker with respect to Darryl Murray s termination). There were three people on a conference call where the decision was made to terminate Darryl Murray: Joe Lutz; Charles Powers; and Cecilia Hoatson. Joe Lutz was the junior member of the group. The inferences are obvious that the junior member did not make the termination decision in this setting.

B. Cecilia Hoatson should be produced for deposition, because she was one of three senior level people who were on a conference call when the decision to terminate Darryl Murray was made.

The defense identified Idalia Castro as the HR PMK. In her deposition, Idalia Castro claimed ignorance regarding Darryl Murray s reasons for termination. Her HR boss is Cecilia Hoatson. At the depositions, Plaintiffs learned that Cecilia Hoatson was involved in a three-way conference call when the decision to terminate Darryl Murray was made by Ms. Hoatson and two other high level managers.

It is undisputed that Cecilia Hoatson was not named in the initial disclosures. Even now, the defense argues that she is not an important witness. Defense Opposition at 6:1-2.

C. Plaintiffs did request production of the policy written materials; the requests were made in the deposition notices lodged by Defendants.

Plaintiffs did request production of the policy written materials. The requests were made in the deposition notices lodged by Defendants. See Exhibit A, paragraphs 14 & 23; see generally Ford Decl.

In their opposition papers, the defense says they will produce the documents even now. They claim that the reason they have not been produced is because the documents were not sufficiently identified. Defense Opposition at 8:17-18. This is not totally true. For instance, Elie Maalouf was reading/quoting from one of the documents (The Ethical Code of Conduct) during the deposition. The defense has not produced this document. There are other instances

where defense deponents elaborated on various policy documents they allegedly relied upon in terminating Darryl Murray. If the documents are identified by defendant employees, they should be considered sufficiently identified for purposes of production.

Given this status of affairs, Plaintiffs are unclear as to why no policy documents have been produced. They are confused by the defense claim that they cannot identify the proper documents.

D. Plaintiffs did ask questions about documents at deposition.

At the risk of chasing a red herring, Plaintiffs address the defense allegation that

Plaintiffs failed to . . . ask questions about **any** of the other documents HOST produced, including **each and every document about the sexual harassment investigation at issue in this case**. Defense Opposition at 2:17-18 (bolding and underscoring in original). See also the following: Plaintiffs . . . did not use any of those documents to refresh any individuals memory at their deposition . . . this is implausible considering the fact that Plaintiffs did not use a single document to support or refresh the memories of any witness at deposition . . . Defense Opposition at 8:25 to 9:2.

In fact, Plaintiffs did inquire about many documents in the various depositions, including those lodged by the defense in their opposition. One example is recorded in Elie Maalouf s deposition transcript as quoted here:

Q. Are you reading from a document right now?

A. From our Code of Ethical Conduct.

Q. And what other options [for discipline] are listed in that document?

A. I m not elaborating on all of them. You asked about termination. If you want more information about about the subject, you should ask our human resources department.

Q. I asked them already and they didn t provide the response. They didn t even guide me to the document that you re looking at right now.

So I would ask if you could just read into the record the other options

[for discipline] that are listed in the document you re looking at.

A. I don t have those available to me. What I have available, I ve provided.

Elie Maalouf deposition, 26:6-21.

This quote not only illustrates identification of a key policy document with specificity, but it also demonstrates an unfair refusal to respond to the questions.

E. Mr. Maalouf does have personal knowledge of key facts in the case.

The defense said that Mr. Maalouf (the CEO) has no personal knowledge of any of the key facts in this case. Defense Opposition at 2:20. This is not a true statement. By his own admission, Mr. Maalouf was briefed on details of the termination by Charles Powers and/or Joe Lutz. An example follows:

Q. . . . Did Joe Lutz give you any reasons for his termination of Darryl Murray?

A. I think he did at the time.

Q. Do you recall what they were? . . .

A. In general at a distance. I recall them including the fact that there was a serious violation . . . [deponent further elaborated, the point being that he did recall facts personally made known to him at deposition]. Elie Maalouf deposition, 29:9-14.

Elie Maalouf s deposition was properly arranged, and all of the normal rules of deposition applied to him. See Ford Decl, paras 12-13.

F. There was no quid pro quo agreement to limit Joe Lutz s deposition to two hours in exchange for the defense foregoing formal opposition to the deposition notice.

The defense alleges that a quid pro quo agreement was made with opposing counsel ( Opposing counsel and I agreed . . . ) to limit the Joe Lutz deposition to two hours. Defense Opposition at 6:20-24. No attorney of Plaintiffs made an agreement with Ms. Raskin or

anyone else to limit Joe Lutz s deposition to two hours. Tappe Decl. in Supp. of Reply, paras 2-3; see also Ford Decl. at 3:26 to 4:6.

G. Defendants did not product Darryl Murray s personnel file until all depositions were complete.

It is uncontroverted that the initial production of Darryl Murray s personnel file was a partial file of excerpted documents. (Plaintiffs learned that the file was incomplete during the course of the depositions.) Tappe Decl. in Supp. of Reply, para. 6. In order for the defense to produce the partial file they provided to Plaintiffs, they had to take the whole file and select documents from it. Someone made a judgment call as to what file documents to produce and which ones to withhold.

Plaintiffs do not know why the defense chose to go through the extra effort of withholding certain documents from the personnel file until after the depositions were completed. However, it is certain that withholding the documents did prejudice Plaintiffs by depriving them of their right to questions deponents about the documents that were withheld.

The defense did make a promise to provide the complete personnel file before the deposition of Idalia Castro (the person they described as their HR PMK). Tappe Decl. in Supp. of Reply, para. 6. Exhibit F is an internal email from attorney to staff, following up on this oral promise made by Serafina Raskin to Todd Tappe at the deposition of Sandra Rosales. Tappe Decl. in Supp. of Reply, para. 7.

H. Defendants are attempting to improperly withhold or destroy the Notice for Termination.

In the depositions, Senior HR Manager Idalia Castro described in detail the Notice of Termination that was allegedly served personally to Darryl Murray by she and Darryl Murray s Regional Manager, Joe Lutz. Although some deponents claimed less specific recollection of the document, no one denied its existence at deposition.

In its opposition papers, for the first time, the defense makes a late and troubling disclosure about the Notice of Termination: a notice of termination which Ms. Castro referenced in her deposition but cannot be located, does not exist as part of Mr. Murray s personnel file . . . Defendant Opposition, 8:3-4 (underscoring added). Given this new

information, Plaintiffs now have reason to believe that the Notice of Termination document was improperly destroyed.

## III
## CONCLUSION

Plaintiffs believe that fairness can be achieved if the defense produces documents and avails the specified deponents for additional deposition testimony.

The defense argument that they will provide policy documents has been hollow: If Plaintiffs can provide HOST with more details to the documents Plaintiffs seek, HOST will provide the documents. Defense Opposition at 9:4-7. Plaintiffs argue that this is a hollow promise, because the defense has already identified documents it has not produced: four documents: (1) a code of ethical conduct - referenced by Mr. Maalouf at his deposition but never sought in any document request; (2) a suspension policy - referenced in Ms. Castro s deposition but never sought in any document request; (3) a human resources manual - also never requested; and (4) a notice of termination which Ms. Castro referenced in her deposition . . . Defense Opposition at 7:28 to 8:4. Plaintiffs hope that the Court can see the problem Plaintiffs have had with the Defense promising to provide documents and then not following through in a timely manner. The documents were properly requested with the deposition notices and still have not been produced.

Plaintiffs ask that the Court order the defense to produce the complete file; the Notice of Termination; all policy information allegedly relied upon or referenced in regard to Darryl Murray s termination. Then Plaintiffs ask the Court grant leave for Plaintiff to reopen depositions so that the deponents can properly be questions about the documents.

Dated: August 29, 2008

MILLER, KING & JAMES, LLP

s/ Patricia I. James
David D. Miller
Nicholas S. King
Patricia I. James
Attorneys for Plaintiffs