David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC., and DOES 1-100, Inclusive,<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>NOTICE OF LODGMENT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT HOST INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT<br><br>Date: September 22, 2008<br>Time: 10:30 a.m.<br>Place.: Room 13<br>Honorable Marilyn Huff |

Plaintiffs DARRYL MURRAY and DEBRA MURRAY hereby submit their Notice of Lodgment in Support of Their Opposition to Defendant's Motion for Summary Judgment:

Exhibit 1: Deposition of Darryl Murray taken March 25, 2008; p. 17:05-18:09

Exhibit 2: Deposition of Darryl Murray taken March 25, 2008; p. 39:9-10

Exhibit 3: Deposition of Jennifer Lakin (herein after referred to as "Lakin Deposition") taken July 15, 2008; p. 19-21 generally

Exhibit 4: Defendants Motion for Summary Judgment Points and Authorities (herein after referred to as "MSJ Ps&As") p. 2:19-27

Exhibit 5: Plaintiff's Separate Statement of Controverted Facts, #2

Exhibit 6: Plaintiff's Expert Designation dated April 11, 2008

Exhibit 7: Plaintiff's Federal Rule 26 Disclosures dated January 9, 2008

Exhibit 8: Rule 26 report prepared by Plaintiff's expert Amy Oppenheimer

Exhibit 9: MSJ Ps&As p. 2:6-7

Exhibit 10: Deposition of Idalia Castro (herein after referred to as "Castro Deposition") taken July 18, 2008 p. 52:9-53:24

Exhibit 11: Declaration of Idalia Castro dated September 5, 2008

Exhibit 12: Correspondence from Plaintiff's counsel to Defense counsel dated September 8, 2008 regarding the production of additional documents and compliance with Magistrate Major's Order to Produce sent via facsimile and U.S. Mail.

Exhibit 13: Deposition excerpts identifying documents not yet produced by Defendants pursuant to the Court's Order of September 5, 2008.

a. Lakin Deposition p. 47:6-10
b. Lakin Deposition p. 61:5-25
c. Lakin Deposition p. 69:2-12
d. Lakin Deposition p. 70:23-71:6
e. Lakin Deposition p. 69:22-70:2
f. Castro Deposition p. 180:13-182:15

Exhibit 14: MSJ Ps&As p. 5:24-6:2

Exhibit 15: Deposition of Joseph Lutz taken July 25, 2008 p. 11:8-19

Exhibit 16: MSJ Ps&As p. 6:1-2

Exhibit 17: Lakin Deposition p. 14-21

Exhibit 18: MSJ Ps&As p. 2:19-27

Exhibit 19: MSJ Ps&As p. 6:1

Exhibit 20: Defendant's Statement of Uncontraverted Material Facts #16

Exhibit 21: Declaration of Joe Niknam, ¶ 2 dated June 30, 2008

Exhibit 22: Defendant's Statement of Uncontraverted Material Facts #17

Exhibit 23: Plaintiff's Complaint filed August 29, 2007 in San Diego Superior Court, ¶ 9-10

Exhibit 24: MSJ Ps&As p. 7: 22-23

Exhibit 25: Lakin Deposition p. 15:14-24

Exhibit 26: Deposition of Sandra Rosales (herein after referred to as "Rosales Deposition") taken July 16, 2008 p. 113:10-23

Exhibit 27: Rosales Deposition p. 90:2-10 and p. 100: 4-12

Exhibit 28: MSJ Ps&As p. 8.

Exhibit 29: Deposition of Elie Maalouf taken July 25, 2008 p. 11:6-13

Exhibit 30: MSJ Ps&As p. 6:25-28 to 7:9

Exhibit 31: MSJ Ps&As p. 8:19-27

Exhibit 32: Castro Deposition p. 208:23-209:2 and 209:20-22

Exhibit 33: MSJ Ps&As p. 9:7-12

Exhibit 34: MSJ Ps&As p. 9:12-13

Exhibit 35: MSJ Ps&As p.10:4-5

Exhibit 36: MSJ Ps&As p. 10:3-15

Exhibit 37: MSJ Ps&As p. 11:8-12:10

Exhibit 38: MSJ Ps&As p. 12:14-15

Exhibit 39: Case excerpt from *Hejmadi v. AMFAC, Inc.*, 202 Cal.App.3d 525, 547, 549.

Exhibit 40: Case excerpt from *Cancellier v. Federated Dept. Stores*, 672 F.2d 1312, 1318. Cert denied 459 U.S. 859 (1982)

Dated: September 8, 2008 MILLER, KING & JAMES, LLP

s/ Patricia I. James
Patricia I. James
Attorney for Plaintiffs

Original Transcript

STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DARRYL MURRAY and DEBRA MURRAY,

Plaintiffs,

vs.

Case No.
3:07-CV-02056-H-BLM

HOST INTERNATIONAL, INC. and DOES 1-100, Inclusive,

Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEPOSITION OF DARRYL MURRAY

SAN DIEGO, CALIFORNIA

MARCH 25, 2008

Reported by Cindy Cameron, CSR No. 10315, CCR No. 671

PAULSON

Exh 1
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

REPORTER'S CERTIFICATION

I, Cindy Cameron, Certified Shorthand Reporter, in and for the State of California, do hereby certify:

That the foregoing witness was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were recorded stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have subscribed my name this date: April 10th, 2008.

/s/ Cindy Cameron

Cindy Cameron, CSR 10315, CCR 671



MURRAY, DARRYL
WORD INDEX
EXHIBIT 2

Q Why did you leave that position?
A I really don't remember. It was 1980.
Q Did you resign or were you terminated?
A No, I -- I resigned that position.
Q So you started to work for Host Marriott in the fall of 1988, right?
A Actually -- well, it was either the fall or the winter. It was December of '88.
Q Okay. Sorry.
During the time that you worked for Host Marriott and all of its successor names, how many times do you think you went to any kind of employee training?
MR. MILLER: You mean formalized?
MS. BAILEY: Any kind of training.
MR. MILLER: It's overbroad as phrased.
BY MS. BAILEY:
Q Do you understand the question?
A Yeah, I understand the question.
Q Okay.
A But it's just -- I've gone to food training. I've got to accounting training. It would be countless times. I -- I couldn't even begin to try to estimate the number of times.
Q More than five a year?
A Some years, yes. Some years, no.

MR. MILLER: I'm going to object to the form of the question, because it doesn't define what training is. But answer to the extent you're comfortable.

THE WITNESS: There was always some sort of either seminar or formalized training going on.

BY MS. BAILEY:

Q When did you first have a management position at Host?

A From the day I was hired.

Q Did you have specialized management training once you were there?

A No. I was given the keys and said this is my area of responsibility.

Q All right. Once you were employed there, did you attend management training?

A At JFK?

Q Well, once you were employed at JFK, did you attend management training anywhere in the company?

A Yes, I'm quite sure I did. I really -- I remember, up front, the amount of training was pretty negligible in the beginning.

Q Do you remember if the training and experience that you did attend included training in sexual-harassment issues?

A Eventually, it did.

Q "Eventually" meaning when, do you think?

Because I had two little children, and I had moved six times for the company.

Q Operations being what part of the company?

A As the general manager, being an operator as opposed to a staff person.

Q And did you go back into operations at that point?

A Yes, I did.

Q And did you have to move as much?

A No. I was -- didn't have to move at all until the last year of my employment.

Q All right. Other than that, were any other promises made to you?

A No.

Q When we met last time, I think you said that you and your wife own a restaurant in Maine; is that correct?

A Correct.

Q When did you acquire that restaurant?

A May of 2007.

Q What's the name of the restaurant?

A The Freedom Cafe.

Q Where is it located?

A In Naples, Maine.

Q Are you the sole owners?

A Of -- of the business, I am.

Q Do you receive any income from that business?

Exh 2

CERTIFIED COPY

# THORSNES LITIGATION SERVICES

## Transcript of the Testimony of:

# Jennifer Lakin

**Date:** July 15, 2008

**Volume:** I

**Case:** Murray v. HMS Host

Exh 3

THORSNES LITIGATION SERVICES, LLC
2550 FIFTH AVENUE, NINTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(P): 619.233.2030
(F): 619.330.1956
E-MAIL: INFO@THORSNES.COM
WEB: WWW.THORSNES.COM

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney of party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: July 21, 2008

Monica M Frank

MONICA M. FRANK
CSR NO. 13320

Q. September 5th?
A. I believe so.
Q. And what did Darin Chadwick tell you when you talked to him on approximately September 5th?
A. He reiterated what was in the email from Jennifer Bagayan. He explained the same situation that he explained to her. She said she felt uncomfortable working there. He told me that Darryl had removed him from his position and basically reconfirmed everything that he told to Jennifer Bagayan.
Q. When you had this conversation with Darin Chadwick, did he say why he felt -- well, you said "uncomfortable working there."
Where is "there"? Where was Darin Chadwick assigned to work?
A. At the San Diego Airport. He felt uncomfortable working with Darryl at the airport.
Q. Did he say why?
A. Because he felt that Darin -- I'm sorry. I get the two confused. That Darryl had made a move, quote/unquote, on his girlfriend. And that he believed that he was demoted from an acting store manager to an assistant manager. And he felt that -- he felt uncomfortable in that situation.

Q. Darin Chadwick made allegations that Darryl Murray made moves on his girlfriend --

A. Sandra Rosales.

Q. Did he give any facts to substantiate this belief?

A. Facts? I am sorry. Could you be more clear.

Q. Facts that led him to believe that Darryl Murray was making moves on his girlfriend, Sandra Rosales.

Why did he believe that?

A. Okay. I understand. He stated that he attended a party in honor of Claudia Gallegos, he meaning Darryl, and that Darin had attended the same party. And Sandra had attended the same party. Sandra and Darin went together as a couple.

And Darin alleged that Darryl kissed Sandra in front of him at this party. He said he felt uncomfortable because, quote/unquote, as a man, he should have been able to protect his girlfriend from Darryl. He stated that since Darryl was his boss, he felt that he couldn't handle that situation as he normally would.

And I asked him, "What is normal?" And he said "in the streets," basically meaning physical

violence towards Darryl. But because they had a working relationship, he didn't want to do that. And he said he just felt uncomfortable working there.

Q. So Darin described to you that he felt like physical violence was appropriate but for the working relationship?

A. He didn't state it in that term, that I wanted to be physically violent. He used the terminology "in the streets," where basically "I would take care of this guy." And I don't know what that means to him. I mean, I am inferring that he meant beat him up.

Q. So basically based on your conversation with Darin Chadwick and you being there and, you know, reading the body language, hearing the whole context, it is your belief that Darin Chadwick was referring to beating up Darryl Murray when he said something about "take it to the streets"?

A. That's correct.

Q. Now, you mentioned, during this conversation you had with Darin Chadwick on approximately September 5, that Darin Chadwick lamented that he could not protect Sandra Rosales properly.

Is that fair to say?

A. That's fair.

# I.
# INTRODUCTION

In this case, Darryl Murray claims that he was terminated from his position as a general manager by HOST in violation of a contract that he believes existed, in violation of public policy, and in violation of the Fair Employment and Housing Act ("FEHA"), a statutory provision that prohibits age discrimination. In fact, Mr. Murray was fired for violation of HOST's Non-Harassment Policy and Policy Against Sexual Harassment (collectively referred to as the "Policy"). The person who replaced Mr. Murray was amply qualified and only four years younger than Mr. Murray. Mr. Murray also admits that the only written document he has with HOST expressly provides that his employment is at-will.

Debra Murray claims that she lost the services of Mr. Murray as a husband and provider as a result of his termination. Ms. Murray's cause of action, however, fails as a matter of law because her claim is based only on an injury to Mr. Murray, and Mr. Murray cannot sustain any of his claims. HOST is entitled to summary judgment on each of Plaintiffs' causes of action because the undisputed facts show that the Plaintiffs' claims are unsupported.

# II.
# STATEMENT OF FACTS

HOST is a company that prides itself on fair treatment of all employees and has a zero tolerance policy regarding clams of sexual harassment. Any allegations made against an employee, whether he or she is a manager or an hourly employee, are investigated by human resources professionals. In this case, that process was followed, and based on the results of the investigation, a determination was made that Mr. Murray had violated HOST's Policy. Consequently, on September 21, 2006, Mr. Murray's employment with HOST was terminated. (Statement of Uncontroverted Material Facts ("UF") 1.)

Exh 4

| DEFENDANTS' MATERIAL FACTS AND ALLEGED SUPPORTING EVIDENCE | PLAINTIFFS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 1. Darryl Murray began working for HOST in December 1988 and his employment with HOST was terminated on September 21, 2006. (Plaintiff Darryl Murray's Deposition 17:05-18:09, attached hereto as Exhibit 1 (March 25, 2008).) | 1. Undisputed. |
| 2. During his 18-year employment with HOST, Mr. Murray has always held a management level position. (Pl's Dep. 17:05-18:09.) | 2. Undisputed. |
| 3. Mr. Murray's conduct at HOST was governed by the standards contained in HOST's Non-Harassment Policy. (Pl's Dep. 33:02-36:22.) | 3. Undisputed only insofar as the defense is referring to the correct version of the HOST Non-Harassment Policy. A correct version would be one specifically applicable to managers as well as employees. |
| 4. It was part of Mr. Murray's job responsibilities at HOST to: (1) act in a professional manner; (2) understand and implement HOST policies regarding sexual | 4. Disputed. "Acting" and "understanding" are not "job responsibilities." Rather they are more akin to "behaviors." See Webster's Dictionary. Further, Defendant does not offer an official list of Darryl Murray's managerial duties. Based on the personnel file produced by the Def |

Exh 5

David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC. and DOES 1-100, Inclusive.<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' FIRST EXPERT EXCHANGE<br><br>Federal Rule of Civil Procedure 26 |

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

1. I, the undersigned, am one of the attorneys of record in this action for Plaintiffs herein.

2. Accompanying this declaration is a list of the persons whose expert and percipient expert opinion testimony the parties whom we represent intend to offer at trial of this action, either orally or by deposition testimony.

3. In the event that the Defendant contends that additional information should have been provided herein, it is requested that the issue be raised immediately so that appropriate action may be taken expeditiously.

4. The following is a brief narrative statement of the qualifications of the expert as well as a brief narrative statement of the general substance of the testimony that the expert is expected to give at trial.

Exh 6

Amy Oppenheimer, JD
878 Spruce Street
Berkeley, California 94707
510.528.8787

Ms. Oppenheimer has testified as an expert witness on various employment matters. She is believed to be qualified in making observations, opinions and/or conclusions concerning all issues regarding employment and human resources practices, workplace harassment and discrimination policies, investigation, prevention, response, standard of care and causation and will be called to testify regarding the same. Ms. Oppenheimer will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial.

Her fee for testimony is $400 per hour, with a half-day minimum for deposition and a full-day minimum for trial testimony. Ms. Oppenheimer's curriculum vitae is attached as Exhibit A.

Plaintiffs reserve the right to call one or more, including, but not limited to the following, treating health care providers/non-retained experts and treating professionals/non-retained experts to testify regarding the issues of standard of care, treatment, diagnosis, prognosis, causation, why and how Darryl Murray and Debra Murray were injured or damaged as claimed:

1. David Heller, M.D.
2. Robert Littman, M.D.
3. Dr. Eve Dreyfus
4. Any and all health care professionals who rendered care for Debra Murray at Grossmont Hospital, Psychiatric Department
5. Any and all health care professionals who rendered care for Debra Murray at Scripps Mercy Hospital.

///

# DECLARATION OF PATRICIA I. JAMES

I, Patricia I. James, declare as follows:

I am an attorney licensed to practice under the laws of the State of California, am admitted and qualified as an attorney before this District Court and am a partner with MILLER, KING & JAMES, LLP, counsel of record for Plaintiffs. Each of the above expert and/or percipient witnesses will be sufficiently familiar with the pending action to submit meaningful oral deposition concerning the specific testimony, including opinions and their basis, that the expert is expected to give at trial.

Plaintiffs shall or may call as an expert at trial of this matter an expert whose identity is not presently known. Plaintiffs will designate such witnesses by name when such are ascertained.

Plaintiffs reserve the right to call all experts listed by or on behalf of any other party to this lawsuit as well as any expert yet to be supplied or identified by said other parties. Therefore, Plaintiffs incorporate, as though fully set forth herein, all information supplied by the other parties to the litigation as to said experts in said lists of expert witnesses which have been supplied and will be supplied by other parties.

Plaintiffs reserve the right to name and call such additional experts as they deem appropriate.

In the event that any additional analyses are obtained by Defendant or any other party prior to trial, Plaintiffs reserve the right to call as an expert witness the professional performing the analysis, whose name and address will by that time be provided to Defendant or counsel for the other parties and whose testimony will be concerning the nature and extent of the alleged damages.

Plaintiffs reserve the right to add additional experts as such need arises during the course of discovery and investigation in preparation for trial.

Plaintiffs reserve the right to call as witnesses to testify on either lay or expert matters, or both, those individuals who are employees or former employees of any other parties to this lawsuit and who may be called to testify at trial under Evidence Code Section 776, either live

or through competent former testimony.

Plaintiffs reserve the right to call impeachment or rebuttal witnesses omitted herefrom.

Plaintiffs reserve the right to call at the time of trial, if necessary, (a) the custodian of records of the parties to this lawsuit; (b) principals, agents and representatives, among others, of Defendant and, c) witnesses named by any other party to this lawsuit on their respective witness list.

If any of the witnesses discussed or listed hereinabove are not available at the time of trial, Plaintiffs will advise all parties that they will seek the introduction of competent former testimony, including depositions, of such witnesses in lieu of their live testimony.

Finally, discovery in this case has not yet been completed. Not all depositions have been taken or completed of certain parties, lay witnesses, or experts. Plaintiffs, therefore, reserve the right to file a supplemental list of witnesses as discovery is completed and witnesses are identified.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Diego, California, on this 11th day of April, 2008.

MILLER, KING & JAMES, LLP

By: [signature]
Patricia I. James
Attorneys for Plaintiffs

**Amy Oppenheimer**
**878 Spruce Street**
**Berkeley, California 94707**
**(510) 528-8787**
**amy@amyopp.com**

**PROFESSIONAL EXPERIENCE**

***Sexual Harassment/Employment Discrimination Consultant*** - investigates and mediates internal employment disputes and provides expert advice, training and testimony on workplace harassment and employment discrimination cases - 1996 to present.

***Arbitrator:*** Alameda County Superior Court - 1989 to 1992; American Arbitration Association - 1989 to present; The International Commission on Holocaust Era Insurance Claims Appeals Tribunal – Appointed December 2003.

***Mediator:*** Berkeley Dispute Resolution Services - 1989 to present; American Arbitration Association - 1996 - present; Alameda County Bar Association - 1996 to 1999; Equal Employment Opportunity Commission – 2001 – present; United States Postal Service REDRESS program – 1998 – present.

***Senior Consultant:*** Anderson-davis, Inc., Aurora, Colorado - provided training to businesses on how to recognize, prevent and investigate sexual harassment. Partial list of companies trained: Prudential Insurance, Chevron USA, Northern Telecom, Whirlpool, Lockheed-Martin, Pacific Telesis - 1992 to 1996.

***Partner, Levy & Oppenheimer,*** Oakland, California - law practice that specialized in litigating sexual harassment and employment discrimination cases - 1984 to 1992.

***Judge Pro Tem:*** Alameda County Municipal Courts - 1989 to 1992.

***Investigator:*** Delany, Siegel, Zorn & Associates, Investigated complaints of employment discrimination within the federal government - 1986 to 1990.

***Staff Attorney:*** Legal Services of Northern Virginia Inc., Prince William Legal Aid Branch, Manassas, Virginia - represented indigent individuals in areas of landlord/tenant, consumer, public benefits and family law - 1982 to 1984

***Reginald Heber Smith Fellow (REGGIE):*** Legal Aid Society of The New River Valley, Inc., Christiansburg, Virginia - 1980 to 1981

**EDUCATION**

Juris Doctor, 1980, University of California, Davis
B.A., 1975, University of California, Berkeley, with Great Distinction; member, Phi Beta Kappa

**MEMBER:** California bar (active)
Virginia and District of Columbia Bar (inactive)

EXHIBIT A

**PUBLICATIONS** (partial list)

*Investigating Workplace Harassment and Discrimination,* Employee Relations Law Journal, Vol. 29, No. 4, Spring 2004.

*The Do's and Don'ts of Investigating Workplace Harassment,* PIHRAScope, Professionals in Human Resources Association, February 2004.

*Experts May Testify on Harassment Policies and Procedures of Employer,* San Francisco Daily Journal, December 11, 2003.

*Using Liability Experts in Sexual harassment Cases,* Sexual Harassment Litigation Reporter, Volume 9, Issue 10, October 2003.

*Making the Best Use of Liability Experts in Discrimination and Harassment Litigation,* Employment Litigation Reporter, Volume 18, Issue 5, October 14, 2003.

*Investigating Workplace Harassment: Ten Steps to Success*, You and the Law Newsletter, October 2002.

*Investigating Workplace Harassment: How to Be Fair, Thorough, and Legal,* by Amy Oppenheimer and Craig Pratt, Society of Human Resource Management, 2002.

*"The Aftermath of Faragher and Ellerth - The Impact on Pre-trial Discovery and the Use of Liability Experts In Sexual Harassment Cases"*, Conference materials NELA Convention, June 2000.

*"Employment Discrimination and Harassment"*, Chapter 40B of California Torts, Levy, Golden & Sacks, Editors, Matthew Bender & Co., September 1999.

*"Liability Lesson: The Use of an Employment expert In Sexual Harassment Cases can help Jurors Understand the Reasonableness of Investigatory Processes"*, Los Angeles Daily Journal and San Francisco Daily Journal, May 21, 1999.

Contributed to *"Investigating Sexual Harassment: A Practical Guide to Resolving Complaints"*, published by Thompson Publishing Group, Washington D.C., 1998

*"She Said, They Said – To protect themselves from liability for sexual harassment, employers should examine the numerous legal guidelines"*, California Law Business, Supplement to the Los Angeles Daily Journal and San Francisco Daily Journal, March 9, 1998

*"Ounce of Prevention – An employer's sexual harassment policies and practices are more important than ever.* Good policies, particularly those involving internal investigations, can avert problems and lawsuits, San Francisco Daily Journal, Employment Law Update, April 16, 1998.

*"Working it Out: Using Mediation to Resolve Harassment Complaints*", San Francisco Daily Journal, August 9, 1995.

Contributing author to *Intent vs. Impact: How to Effectively Manage Sexual Harassment Investigations,* Published by Bureau of National Affairs Communications, 1992.

Contributed to *Sexual Harassment in the Workplace*; an interactive training and testing CD-ROM, Media Code, 1994, as an expert.

**PUBLIC SPEAKING AND TRAINING** (partial list)

*Investigating Workplace Harassment*, Novellas, 2004

Trainer, Northern California Human Resource Association, *"Conducting Workplace Investigations: Practical Skills for Internal Investigators"*, San Francisco and Fremont, July 2003, San Francisco and San Ramon, January 2004.

*He Said/She Said: Making Credibility Determinations in Harassment Investigations*, NCHRA Annual Conference, September 2003.

*The How To's of Investigating Workplace Harassment*, 46th Annual PIHRA Conference & Exhibition, September 2003.

*Understanding and Preventing Workplace Harassment*, AGY Theraputics, 2003

Panelist, Society of Human Resource Management Annual Conference, Philadelphia, June 2002, *"Did He Say What She Said He Said, Or Not? How Does an Investigator Decide?"*

Panelist, National Employment Lawyers Association Eleventh Annual Convention, *"The Aftermath of Faragher and Ellerth: Litigating Hostile Work Environment Cases"*, Washington D.C., June 2000.

*Employment Litigation: Investigations and Human Resource Experts*, Presentation to the Barristers Club of San Francisco Labor & Employment Section, February 2000.

*Investigating Harassment: An Interactive Training*, Sonoma Developmental Center, September 1999

*Mediating EEO Complaints*, 40 hour training for City of San Francisco, August, 1999

Panelist and Moderator, Society For Professionals in Dispute Resolution, *"Sexual Harassment: The Role of the Investigator and the Role of the Mediator"*, 1998: *"Resolving Sexual Harassment Complaints"*, 1997

Panelist, Association on Employment Practices and Principles, *"Same-Sex Harassment in the Workplace After Oncale"*, 1998

Panelist, Alameda County Bar Association, *"Investigating Complaints of Sexual Harassment and Discrimination"*, 1998

Panelist, American Bar Association Annual Conference, *"Sexual Orientation Discrimination in the Legal Community"*, 1997.

Panelist, Administrative Law Judges Assoc. Annual Forum, 1993, 1994, 1995, 1997, 2001 and 2003.

Speaker, Administrative Law Judges Annual Training, Sexual Harassment, 1992; Family and Medical Leave Act, 1996; Gender Bias, 1997; Preventing sexual harassment, 1999.

Speaker, St. Mary's College Paralegal Alumni Assn., 1996, *"Sexual Harassment in the Workplace: Prevention and Response"*

Panelist, 1995 Statewide Minority Attorneys' Conference: *"Alternative Dispute Resolution: Not Just an Alternative Anymore"*

Murray v. HMSHost, et al.
3:07-cv-02056-H-BLM
**PROOF OF SERVICE**

I am employed in the County of San Diego, State of California. I am over eighteen years of age and not a party to this action. My business address 707 Broadway, Suite 1800, San Diego, California, 92101.

On **April 11, 2008** I served a true copy of the following document(s):

**1. Plaintiffs' First Expert Exchange**

on all interested parties in this action as follows:

Bailey Law Group, PC — Attorney for Defendants/Counter-Claimant
Serafina Raskin, Esq.
8105 Irvine Center Dr. Suite 900
Irvine, CA 92618
Fax: 949.453.1757
sraskin@baileylawgroup.com

X **U.S. MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Accordingly, the above-referenced document(s) were enclosed in a sealed envelope which, in the ordinary course of business, will be deposited with the United States Postal Service the same day; and said envelope was addressed as shown on the attached service list.

**BY FAX:** I transmitted a copy of the foregoing document(s) on this date by facsimile transmittal to the number shown on the service list.

**BY ELECTRONIC MAIL DELIVERY:** I caused the foregoing document(s) to be electronically served on the interested parties who have agreed to accept electronic mailing as effective service for these documents.

**BY PERSONAL SERVICE:** I personally delivered such document(s) by hand to the offices of the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **April 11, 2008** in San Diego, California.

Christina M. Ford

David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HMSHOST CORPORATION, HMS HOST FAMILY RESTAURANTS, INC., HMS HOST USA, INC., and DOES 1-100, Inclusive.<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' RULE 26(A)(1)(i-iv) INITIAL DISCLOSURES |

Plaintiffs DARRYL MURRAY and DEBRA MURRAY hereby submit their initial disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1)(A-D) in accordance with the order of the Honorable Ruben B. Brooks.

Plaintiffs have made a good faith effort to comply with its Rule 26 initial disclosure requirements. However, Plaintiffs anticipate that the relevance of certain witnesses and documents may not be appreciated or understood until after this disclosure. Accordingly, Plaintiffs reserve the right to supplement this disclosure should they become aware of additional relevant witnesses or documents. This disclosure is made without prejudice to Plaintiffs' right to name new witnesses and produce additional documents for inspection.

////

////

Exh 7

David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HMSHOST CORPORATION, HMS HOST FAMILY RESTAURANTS, INC., HMS HOST USA, INC., and DOES 1-100, Inclusive.<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' RULE 26(A)(1)(i-iv) INITIAL DISCLOSURES |

Plaintiffs DARRYL MURRAY and DEBRA MURRAY hereby submit their initial disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1)(A-D) in accordance with the order of the Honorable Ruben B. Brooks.

Plaintiffs have made a good faith effort to comply with its Rule 26 initial disclosure requirements. However, Plaintiffs anticipate that the relevance of certain witnesses and documents may not be appreciated or understood until after this disclosure. Accordingly, Plaintiffs reserve the right to supplement this disclosure should they become aware of additional relevant witnesses or documents. This disclosure is made without prejudice to Plaintiffs' right to name new witnesses and produce additional documents for inspection.

////

////

////

**WITNESSES - 26(A)(1)(i):**

Darryl Murray

Debra Murray

Sandy Rosales (Employed by Defendant)

Darin Chadwick. (Employed by Defendant)

Joe Lutz (Employed by Defendant)

Idalia Castro (Employed by Defendant)

Tom Stein (Employed by Defendant)

Jennifer Lakin (Employed by Defendant)

Shanin Kouhkan, Premier Banker Specialist, Wells Fargo

**DOCUMENTS 26(A)(1)(ii):**

Darryl Murray's personnel file in possession of the Defendant

All Documents pertaining to the payoff of the $150,000 line of credit in possession of the Plaintiffs and Wells Fargo

(Any other documents which are subsequently deemed to be of relevance and to prove the claims and counter-claims of the parties)

**DAMAGES - 26(a)(1)(iii):**

1. General Damages including Pain and Suffering;
2. Past, Present and Future Medical Expenses, Unknown to Date;
3. Past, Present and Future Loss of Income;
4. Reasonable Attorneys Fees;
5. Costs of Suit;
6. Interest; and
7. Punitive Damages

Plaintiffs will attempt to assess this and provide additional information as soon as possible.

////

////

////

**WITNESSES - 26(A)(1)(i):**

Darryl Murray

Debra Murray

Sandy Rosales (Employed by Defendant)

Darin Chadwick. (Employed by Defendant)

Joe Lutz (Employed by Defendant)

Idalia Castro (Employed by Defendant)

Tom Stein (Employed by Defendant)

Jennifer Lakin (Employed by Defendant)

Shanin Kouhkan, Premier Banker Specialist, Wells Fargo

**DOCUMENTS 26(A)(1)(ii):**

Darryl Murray's personnel file in possession of the Defendant

All Documents pertaining to the payoff of the $150,000 line of credit in possession of the Plaintiffs and Wells Fargo

(Any other documents which are subsequently deemed to be of relevance and to prove the claims and counter-claims of the parties)

**DAMAGES - 26(a)(1)(iii):**

1. General Damages including Pain and Suffering;
2. Past, Present and Future Medical Expenses, Unknown to Date;
3. Past, Present and Future Loss of Income;
4. Reasonable Attorneys Fees;
5. Costs of Suit;
6. Interest; and
7. Punitive Damages

Plaintiffs will attempt to assess this and provide additional information as soon as possible.

////

////

INSURANCE - 26(a)(1)(iv):

Not Applicable.

Dated: January 9, 2008

MILLER, KING & JAMES, LLP

By: S/ Patricia I. James
David D. Miller
Nicholas S. King
Patricia I. James
Attorneys for Plaintiffs

INSURANCE - 26(a)(1)(iv):

Not Applicable.

Dated: January 9, 2008

MILLER, KING & JAMES, LLP

By: S/ Patricia I. James
David D. Miller
Nicholas S. King
Patricia I. James
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CLAIFORNIA

DARRYL MURRAY and
DEBRA MURRAY,

Plaintiffs

vs. CASE No. 07CV2056-H (BLM)

HOST INTERNATIONAL, INC.,
et al.,

Defendants.

_______________________________________/

**PRELIMINARY EXPERT WITNESS REPORT OF AMY OPPENHEIMER**

**I Background**

I have been retained on behalf of the plaintiffs, Darryl and Debra Murray, to render an opinion of the defendants' investigation and response to a complaint of workplace harassment and retaliation, and to testify as to what is considered typical and acceptable human resource practice in regard to investigation of complaints of harassment and retaliation in the workplace.

I have been an attorney for over twenty-seven years. For more than sixteen years I have trained human resource professionals, employers and employees in preventing and responding to harassment and discrimination, including how to investigate a complaint of harassment or retaliation. I have consulted on harassment and discrimination policies, acted as a neutral investigator of charges of discrimination in employment, and testified as an expert witness in retaliation, discrimination and harassment cases. From 1986 to 1990 I investigated EEO complaints for federal government agencies. I co-authored a

Exh 8

book about investigating workplace harassment, entitled: *Investigating Workplace Harassment: How to be Fair, Thorough and Legal,* published in 2002 by Society for Human Resource Management. My CV, rate sheet and list of cases I have testified in are attached.

My understanding is that there has not been significant discovery to date and that discovery is continuing in this case. The investigator(s) and decision maker(s) have not yet been deposed. Without reviewing the testimony of the investigator(s) and decision maker(s) I cannot provide a complete opinion. Therefore my report is preliminary, based on discovery to date, and will be amended after discovery is complete.

**II Material reviewed**

I have reviewed the following materials in forming my opinion:

A. Deposition of Darryl Murray with exhibits attached.

B. Personnel file of Darryl Murray (contains documentation of the investigation at issue)

**III Opinions**

1. **Defendants Failed to do a Thorough, Fair and Neutral Investigation**

In evaluating an investigation of a complaint of harassment/retaliation, I look to three different components and determine if each of those components was consistent with typical human resource practice and was essentially fair to both the complainant and the respondent. I do not expect an investigation to be "perfect" nor do I hold investigators to a higher than "adequate" standard. I overlook minor deficiencies,

realizing that any investigation might be better; the issue is if it was reasonably fair and thorough.

The three areas that I evaluate are: 1) was the investigator neutral and did he/she have the proper type and amount of experience and authority to conduct this particular investigation; 2) was the investigation reasonably thorough (were the proper people interviewed, were the interviews complete, were they authenticated, were documents gathered); and 3) were the findings made consistent with the information gathered.

**Appropriateness of Investigator**

The investigator of a complaint of workplace harassment/retaliation should be neutral and should have the requisite level of experience and authority, given the parties involved. Since I have not yet had an opportunity to review the depositions of the investigator(s), I cannot yet give an opinion as to their suitability to investigate this complaint. However it does seem that rather than have one investigator interview all the parties and witnesses, this task was divided. This is not usual practice and presents problems in that when there is a conflict in the evidence the investigator must make credibility determinations. This is difficult, if not impossible, to do when the same individual(s) is not questioning everyone involved.

Another potential problem is that the investigator who interviewed the plaintiff came from loss prevention. Often the training and experience of investigators from loss prevention backgrounds is not conducive to doing fair investigations of workplace harassment. The style tends to be more confrontational than individuals with human resource backgrounds. The modus operandi of loss prevention is frequently to "hide the ball" and not provide complete information to the respondent as to the details of the

complaint. This is inconsistent with usual and customary practice in investigating complaints of workplace harassment and retaliation. Lastly, often those with a loss prevention background have been trained to first develop a case and then speak to the respondent. This too is problematic and inconsistent with proper human resource practice.

**Thoroughness of Investigation**

A proper investigation of a workplace complaint starts with a thorough interview of the complainant. The next step is a thorough interview with the respondent. There are rare exceptions to this. For example, if a witness will no longer be available, or can corroborate a crucial fact, that witness might be questioned out of order. However in most cases the respondent is spoken to immediately following the complainant, and if another witness is spoken to first, it is never appropriate to speak to all of the witnesses before getting the respondent's side of the story. In this case in appears that the investigator spoke to witnesses before interviewing the respondent. This is totally contrary to well accepted investigatory practice and goes against all notions of fairness.

The point of an investigation is to be fair to both parties. If an investigator interviews the complainant and questions all the complainant's witnesses before interviewing the respondent, there is a tendency to build a case against the respondent rather than be fair to both sides. An investigator should approach the interview with the respondent with an open mind. She/he should not amass a case against someone or try to trick them. Rather, the investigator should give the respondent an opportunity to fully respond to all of the allegations and should then follow up with witnesses on all of the significant contested facts. It is usual and customary practice to ask both the complainant

and the respondent if they have suggestions on who should be interviewed and to find out what the complainant/respondent thinks this individual can add. If there is an indication that the individual might be able to shed light on contested facts that are relevant to the issues being decided, they should be interviewed.

In this case, the plaintiff was not told what all the allegations were and was not given an opportunity to respond to all of the allegations. An investigator should provide a full opportunity for the respondent to respond to each allegation and should assure that the respondent knows what the allegations are.

Another significant problem was the investigators' failure to get signed statements or to, in any way, authenticate the information they gathered. The plaintiff testified that there were a number of misstatements in the notes that purported to be what he told the investigator. If the investigator is not accurate in his/her notes, there is no way to determine this unless witnesses are asked to review and confirm the notes or to review and sign a statement that is prepared based on those notes. It is usual and customary practice, in workplace investigations of harassment, to do just this. This did not occur here.

**Conclusions reached**

The last component of an appropriate investigation is that the conclusions reached are consistent with the information gathered. Here it does not appear that there were conclusions at all, which is problematic. The investigator(s) should have weighed the evidence and come to a determination as to what occurred, whether what occurred violated any rules and, if so, how serious of a violation of rules. Instead, the

investigator(s) appeared to simply gather facts without testing the facts, determining credibility and making determinations.

### 2. Disciplinary Action Taken

Disciplinary action should be taken against someone who has violated rules against harassment or retaliation only after a complete and neutral investigation takes place, and specific findings are made. Since this did not happen here, any disciplinary action was premature.

It is noteworthy that the past discipline in the plaintiff's personnel file was for actions that were not specified. It appeared that defendant, in that case, also failed to make any findings as to what behavior the plaintiff engaged in that would violate its rules. They certainly failed to give notice to the plaintiff as to what that behavior was.

## IV. Conclusion

Defendant failed to conduct a fair and thorough investigation prior to terminating Murray and therefore did not follow basic standards of human resource practice.

Respectfully submitted,

Amy Oppenheimer

Dated: May 29, 2008

## I.
## INTRODUCTION

In this case, Darryl Murray claims that he was terminated from his position as a general manager by HOST in violation of a contract that he believes existed, in violation of public policy, and in violation of the Fair Employment and Housing Act ("FEHA"), a statutory provision that prohibits age discrimination. In fact, Mr. Murray was fired for violation of HOST's Non-Harassment Policy and Policy Against Sexual Harassment (collectively referred to as the "Policy"). The person who replaced Mr. Murray was amply qualified and only four years younger than Mr. Murray. Mr. Murray also admits that the only written document he has with HOST expressly provides that his employment is at-will.

Debra Murray claims that she lost the services of Mr. Murray as a husband and provider as a result of his termination. Ms. Murray's cause of action, however, fails as a matter of law because her claim is based only on an injury to Mr. Murray, and Mr. Murray cannot sustain any of his claims. HOST is entitled to summary judgment on each of Plaintiffs' causes of action because the undisputed facts show that the Plaintiffs' claims are unsupported.

## II.
## STATEMENT OF FACTS

HOST is a company that prides itself on fair treatment of all employees and has a zero tolerance policy regarding clams of sexual harassment. Any allegations made against an employee, whether he or she is a manager or an hourly employee, are investigated by human resources professionals. In this case, that process was followed, and based on the results of the investigation, a determination was made that Mr. Murray had violated HOST's Policy. Consequently, on September 21, 2006, Mr. Murray's employment with HOST was terminated. (Statement of Uncontroverted Material Facts ("UF") 1.)

Exh 9

CERTIFIED COPY

# THORSNES LITIGATION SERVICES

Transcript of the Testimony of:

## Idalia Castro

**Date:** July 18, 2008

**Volume:** I

**Case:** Murray v. HMS Host

Exh 10

THORSNES LITIGATION SERVICES, LLC
2550 FIFTH AVENUE, NINTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(P): 619.233.2030
(F): 619.330.1956
E-MAIL: INFO@THORSNES.COM
WEB: WWW.THORSNES.COM

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney of party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: July 29, 2008

Monica M. Frank

MONICA M. FRANK
CSR NO. 13320

someone or did something inappropriate. I just went on to ask questions.

Q. And what did you learn when you asked those questions about, you know, prior incidents; was this the first time?

What did Jennifer Lakin tell you?

A. She just talked about a couple of parties where he danced inappropriately with associates.

Q. And what was her basis for these comments?

A. Well, I asked her, "Has he ever been inappropriate with anybody else that you know of?"

Q. I mean, did Jennifer Lakin tell you she saw this occur or what?

A. She stated that someone had complained about the prior year.

Q. Did she say who complained?

A. She did. I don't remember the name right now.

Q. Were you able to substantiate these prior complaints?

A. What do you mean "substantiate"?

Q. Verify or substantiate or confirm.

A. Just that there was -- that there had been a notation of it.

Q. A notation of what?

A. Well, of this prior complaint.

Q. Which prior complaint?

A. The one I just said about someone who had complained that he had danced inappropriately with her.

Q. Where did you notice this notation of a prior complaint of inappropriate dancing? And the reason I ask that question is, I thought you said you did not look in his personnel file.

A. I didn't. I said I asked Jennifer, and she said that there was a notation of it.

Q. And then my question to you was, did you verify this or take a look at it or anything?

A. I didn't look at anything in Darryl Murray's file.

Q. So what did you do to --

A. I only went on the recollection of Jennifer Lakin.

Q. Did Jennifer Lakin say that she looked in Darryl Murray's file?

A. No.

Q. So what did she tell you was her source for this information?

A. She spoke to the associate.

Q. The associate who was in a dancing incident?

## DECLARATION OF IDALIA CASTRO

**I, Idalia Castro, declare as follows:**

I am over twenty-one years of age, of sound mind, and capable of making this declaration. I have personal knowledge of the facts contained in this declaration, and if called as a witness, I could and would testify as to their accuracy:

1. From March 2002 to January 2007, I was the Senior Field Human Resource Manager for HOST INTERNATIONAL, INC. ("HOST"). Since January 2007, I have worked as the Senior Director of Human Resources for the Western Region of the United States. I work out of HOST's regional office located in Seattle, Washington.

2. At my deposition, conducted on July 18, 2008, I testified that a copy of a notice of termination was given to Darryl Murray at his termination on September 21, 2006. (Deposition of I. Castro, 52:3-24.) Since then, I have attempted to locate the termination notice and have attempted to recall the exact form of the notice. However, I realized that I was mistaken and only provided Mr. Murray with his final paycheck and not his notice of termination.

3. I have not seen, prepared, or asked anyone else to prepare the document referred to as Darryl Murray's termination notice.

4. At the request of counsel for HOST, Serafina Raskin, I conducted a thorough search of all available sources at my Seattle office for Darryl Murray's termination notice, including a search of my outlook folder, my hard drive and all personal notes, archived documents and files. I was not able to locate the termination notice.

5. I have never destroyed, tampered with, or withheld any documents related to this litigation.

Exh 11

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of September, 2008, at Seattle, Washington.

Idalia Castro