David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC., and DOES 1-100, Inclusive,<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT HOST INTERNATIONAL, INC.'S MOTION IN LIMINE TO EXCLUDE AMY OPPENHEIMER'S EXPERT REPORT AND TRIAL TESTIMONY<br><br>Date: September 22, 2008<br>Time: 10:30 a.m.<br>Department: Room 13<br>Judge: Barbara L. Majors |

**I.**

**INTRODUCTION**

Plaintiffs DARRYL MURRAY and DEBRA MURRAY oppose this motion in limine to exclude the report and testimony of Plaintiffs human resources expert, Amy Oppenheimer.

Plaintiffs designated Amy Oppenheimer as a Human Resources Expert in a designation dated April 11, 2008. Exhibit A(expert designation). The nature and substance of her expected testimony were set forth both in the designation and in her initial report, dated May 29, 2008. Exhibit B(expert report). The timeliness of the designation is not contested in the defense motion to exclude the witness testimony and reporting. Defendant claims it did not receive Plaintiffs' initial expert report until June 3, 2008, but in any event the report was received no later than that date. Def. MIL, 1:25-26. The Rule 26 disclosure is also attached

for the Court's convenience. Exhibit C(Rule 26 expert disclosure).

The designation and reporting dates are significant, because they allowed the Defendant a large interval of time to notice and complete the expert witness deposition prior to the discovery cut-off date of (July 18, 2008). The initial disclosures and reporting gave Defendants sufficient notice of the substance of the expert's expected testimony for purposes of deposition. Defendants prejudiced themselves in regard to Plaintiffs' expert witness by opting not to take her deposition.

Plaintiffs do expect to supplement their expert's report soon. The new report is expected to reflect review of new evidence from discovery produced near the end of the Court's discovery period. Based on the deposition testimony produced by Defendant witnesses, none of Ms. Oppenheimer's opinions are expected to change substantially. The Defendant points to no authority requiring Plaintiffs to submit a supplemental expert witness report before the discovery cut-off date.

Lastly, it is important to note that the Defendant did not meet and confer about its concerns with Plaintiffs' expert witness, affording Plaintiffs no ability to continue their cooperation with discovery. Had they been approached in a timely manner, Plaintiffs would have been inclined to accommodate Ms. Oppenheimer's deposition, even a short period of time after the discovery cut-off.

## II.

## OPPOSITION ARGUMENT

Amy Oppenheimer's existing human resources expert report meets the criteria set forth in Federal Rule of Civil Procedure 26(a)(2)(B)(i-vi). Exhibit B (expert report). Alternatively, if the Court finds that the preliminary report does not meet any of the 26(a)(2)(B) criteria, Plaintiffs expect that any shortfalls will be corrected with supplemental reporting.

Further, the Defendant never deposed Plaintiffs' expert witness. Defendants cannot reasonably expect that an expert's report will serve as an adequate substitution for a deposition. Federal Rule of Civil Procedure 26(a)(2)(B) does not require an expert report or supplemental to contain the same level of detail one would expect to find in the transcript of

an expert witness taken by a competent attorney. Since the Defendant chose not to depose Ms. Oppenheimer, they must be satisfied with the minimal level of reporting mandated by the Federal Rule.

The Defendant has not properly tailored its request for relief to the Court. They seek to exclude Plaintiffs' expert witness evidence entirely. This is clearly improper given the adequacy of the initial designation and disclosures. See Exhibits A-C. Plaintiffs' expert should be allowed to present on direct her original opinions based on review of Mr. Murray's deposition and personnel file. See Exhibit B, page 2. Plaintiffs also expect that their expert's supplemental reporting, if any, will be compliant with Federal Rule of Civil Procedure 26(a)(2)(B). If Defendants think the Plaintiff's deposition and the Employer's personnel file are inadequate bases for human resources expert opinions, the proper remedy is cross-examination, not exclusion of the witnesses evidence. Lastly, an expert witness is permitted to provide impeachment testimony at trial, and the Defendant has provided no authority that would preclude expert impeachment evidence from Ms. Oppenheimer.

**A. Plaintiffs' preliminary expert report is complete and the Defense motion to exclude is premature.**

First, the Defendant did not meet and confer with Plaintiffs to seek supplementation of the expert report. Defendants now argue that the report is incomplete, but they never specified to Plaintiffs additional information they seek. The Defendant should have sought supplemental reporting before seeking the harshest remedy of exclusion.

Exclusion is not appropriate except in extreme circumstances. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857. An order compelling discovery is normally a prerequisite to an evidence, issue or terminating sanction. FRCP 37(b)(2). In the instant case the Defendant has not moved for more disclosures. The Defendant did not even meet and confer on the matter. Further, the Defendant has not even deposed Plaintiff's expert

As a practical matter, Plaintiffs are in the process of supplementing their expert report right now. Current supplementation is timely, because the expert is entitled to consider evidence gathered at the end of the Court's discovery period as well as that gathered at the

beginning of a case. This is why supplemental reporting can be produced as late as the final pretrial conference. FRCP 26(a)(3) (pretrial disclosures) and 26(e)(1) (duty to supplement or correct discovery).

The expert's initial report was based on a review of Plaintiff Darryl Murray's deposition and his personnel file. Accordingly, the Defendant's argument that "prior to Ms. Oppenheimer tendering her Report, Plaintiffs had not conducted any discovery in the matter." is a false argument. Def. MIL, 4:7-8 ["my report is . . . based on discovery to date . . . A. Deposition of Darryl Murray with exhibits attached. B. Personnel file of Darryl Murray (contains documentation of the investigation at issue)"]. <u>Plaintiffs did conduct discovery prior to the expert report, specifically the discovery of Plaintiff's deposition and obtaining the Plaintiff's personnel file</u>!

Further the Defendant similarly tends to mislead when arguing, "With no discovery completed prior to the Report being served, Ms. Oppenheimer's opinions can only be based on speculative assumptions." Def. MIL, 5:6-7. <u>Ms. Oppenheimer clearly indicates in her initial report that she bases her opinions on the Deposition of Darryl Murray and on his personnel file</u>. Exhibit 2, page 2 (expert report). In an employment discrimination case, basing an opinion on a comprehensive plaintiff's deposition and a personnel file is a far cry from speculation! That information provides a clear framework of the employment scenario. Plaintiffs are naive if they rely upon a discriminating defendant to confess and tell the truth about their improprieties.

The Defendant cites *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) for the proposition that an early report cannot be used as a "place-holder." *Sierra Club* does not apply to the instant case, because the facts of that case concerned a report that was presented as a mere list of topics. *Id.* The Defendant cannot credibly suggest that Plaintiffs' preliminary expert report resembles the report described in *Sierra Club*. Further, the *Sierra Club* court did not strike expert witnesses until after the party was first allowed to supplement the reports. In the instant case, the Murrays have not been ordered to supplement their preliminary report, nor is it too late by any court rule to supplement the report now. For all of

these reasons, *Sierra Club* does not apply to the instant case.

Amy Oppenheimer's initial report was complete with respect to the standards set forth in Federal Rule of Civil Procedure 26(a)(2)(B). Ms. Oppenheimer gave opinions, explained the rationale of her decisions, and cited the basis for her opinions (Plaintiff's deposition and personnel file). Exhibit B (expert report). The only part of the Rule not addressed in the initial report was expert trial exhibits. FRCP 26(a)(2)(B)(iii). However, exhibit sharing is not due at the initial disclosure phase. Trial exhibits are more appropriately shared at the final pretrial conference or some other time when a simultaneous exchange of exhibits may occur.

The Defendant is inaccurate when it argues the Oppenheimer report is incomplete *because of a statement by the expert*. Def. MIL, 4:1-2. It is irrelevant and vague when an expert states her report as "preliminary." The expert's use of the term "preliminary" does not prove the report is "incomplete" under the standards of Rule 26(a)(2)(B). The Defendant cannot now know the exact meaning or limitations Ms. Oppenheimer attributed to the word "preliminary" in her report, because she was not asked the simple question at a deposition. *Looking to the content of the expert report*, Ms. Oppenheimer's report was more complete than many initial or preliminary reports. It was more complete because it was based on the Plaintiff's deposition and his personnel file. This evidence provided stable foundation for the expert opinions rendered.

Defendants have provided no persuasive argument as to why Plaintiffs' expert cannot produce a timely supplemental report at a time prior to the final pretrial conference.

**B. Ms. Oppenheimer's testimony is relevant to the important issue of whether the employer's stated reason for termination is pretext.**

From the Plaintiffs' perspective, the instant case is one of age discrimination in which the employer set forth a pretext of termination for sexual harassment. The primary method of proving age discrimination (or any other kind) is using the *McDonnell Douglass/Burdine* circumstantial evidence model. See *McDonnell Douglass Corp. v. Green*, 411 U.S. 792

(1973); *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). More specifically, if a fact finder believes that management is lying about the "legitimate, nondiscriminatory reason" for its adverse employment action, it is free to infer that the real reason was age discrimination. See *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147-48 (2000).

The Defendants demonstrated they are cognizant of the relevancy of Ms. Oppenheimer's expected testimony when they wrote the following: "Ms. Oppenheimer provided her opinion on the adequacy of HOST's investigation and response to a complaint of workplace harassment compared to common human resources practices." Def. MIL, 7:13-15; and "She concluded that the investigation did not adhere to usual practices in part because . . ." Def. MIL, 7:15-16 (emphasis added).

Defendant's stated reason for termination is sexual harassment findings resulting from a sexual harassment investigation. For example HOST's San Diego Airport HR Manager, Jennifer Lakin, described the reason for termination as follows: "Based on the information that I had available to me ruing the investigation, I assumed that it [the termination of Darryl Murray] was for sexual harassment." Lakin Dep., 47:19-21. <u>Given the termination reason provided by Jennifer Lakin, Ms. Oppenheimer's opinions about abnormalities in the investigation tend to show that the investigation and stated reason for termination are pretext</u>. Opinions about abnormalities and anomalies in the employer's sexual harassment investigation are examples of the relevancy of Ms. Oppenheimer's expected testimony.

Amy Oppenheimer is also particularly qualified to inform a factfinder about workplace sexual harassment complaints given her experience authoring a book about investigating workplace harassment, entitled: *Investigating Workplace Harassment: How to be Fair, Thorough and Legal*, published in 2002 by the Society for Human Resource Management.

Ms. Oppenheimer also opined about the inappropriateness of the discipline. Exhibit C at page 6 (expert report).

Given the sometimes conflicting human resources testimony provided in seven Defendant depositions, it is reasonable to expect Ms. Oppenheimer to consider and comment on the human resources significance of certain witness testimony discrepancies.

**C. The Defense argument about report reliability is premature, because Plaintiffs are in the process of supplementing the initial expert report.**

As a preliminary consideration, the initial expert report is in fact complete. The opinions stated are expected to remain essentially unchanged by discovery produced after the initial report was made. The initial report was made on the reliable basis of Plaintiff's deposition testimony as well as the personnel file produced by Defendants. <u>The Defendant has argued or proposed no reason why Plaintiff's deposition and the file alone would not be adequate bases for an expert report</u>.

The Defendant correctly stated that Ms. Oppenheimer specified that she could make a more complete report after review of Defendant witnesses. Def. MIL, 9:2-4. However, the Defendant draws uninformed conclusions from that written statement. The Defendant has no idea how Ms. Oppenheimer intends to supplement her opinion. The Defendant has no idea if the new evidence would alter her current opinions in any way whatsoever. The Defendant does not know the answers to these questions, because they did not depose the witness. It is now unfair for the Defendant to ask the Court to exclude expert witness testimony based on the Defendant's's speculation about the completeness of the current reporting.

It is unfair for the Defendant to criticize Ms. Oppenheimer's analysis methods when it has not even deposed her. The Defendant wants the Court to join them in "doubting" that Ms.

Oppenheimer used a reliable method to reach her preliminary conclusions in the instant case. Def. MIL, 9:13-14. However, the Defendant lacks sufficient evidence to base doubt in Ms. Oppenheimer's methodology, because the witness was never deposed.

In fact, Ms. Oppenheimer's use of reliable expert methodology should not be questioned due to her experience. Based on her experience, Amy Oppenheimer's expert testimony is expected to be particularly helpful to the fact finder at trial regarding facts material to sexual harassment investigations, pretext, and wrongful termination for age discrimination. Amy Oppenheimer submitted a list of cases, indicating that she has testified at deposition, arbitration or trial at least 52 times. Exhibit D (expert's list of cases). Of those 52 times, she was qualified as a Human Resources Expert and provided testimony on at least 7 occasions. Ms. Oppenheimer provided sexual harassment expert testimony at trial on at least two occasions. On another occasion in 1999 Ms. Oppenheimer's human resources deposition was admitted into evidence at trial. Ms. Oppenheimer has testified at trial for both the defense and for plaintiffs. The point is that Ms. Oppenheimer's methodology has withstood serious testing by both defense and plaintiff attorneys at deposition, yet she was permitted to provide her expert testimony at trial. In the instant case, the Defendant moves the Court to find Ms. Oppenheimer's methodology to be unreliable without conducting any serious testing of her methodology. They didn't even read her book or take her deposition.

The Defendant makes one criticism of Ms. Oppenheimer's methodology that is allegedly based on fact. The Defendant criticizes Ms. Oppenheimer for relying on Mr. Murray's deposition testimony. They say it is unreliable as a basis for expert opinion because it is allegedly "self-serving" testimony. Def. MIL, 9:14-15. The argument misleads insofar as it suggests that Ms. Oppenheimer relied on uncorroborated witness testimony. In fact Ms.

Oppenheimer was able to reconcile and cross-reference Mr. Murray's statements with documents in the personnel file provided by Defendants. Missing from the file was a "Notice of Termination." The absence of this document tends to corroborate a statement that Mr. Murray was not properly informed of the reasons for termination. Exhibit E (Declaration of Idalia Castro dated September 5, 2008).

Defendants have set forth no law showing that Plaintiffs' anticipated supplemental expert reporting would be untimely or prejudicial. The timing of supplemental expert reporting is controlled by Federal Rules of Civil Procedure 26(a)(3) (regarding pretrial evidence disclosures made shortly before trial) and 26(e)(1) (regarding duty to supplement discovery). The Rule 26(e)(1) duty to supplement arises only if a party learns that *in some material respect* the information disclosed is incomplete or incorrect. Ms. Oppenheimer acknowledged in her report that she anticipated additional discovery. However, she did not state whether the anticipated discovery would be material enough to affect her opinions in relation to Rule 26(e)(1). More importantly, Defendants do not know if evidence produced at the end of the discovery period will effect Ms. Oppenheimer's expert opinions, because they never deposed her to ask.

On September 5, 2008, this Court ordered Defendants to produce additional documents at the hearing for Plaintiffs' motion to compel additional written discovery. The documents the Court ordered Defendants to produce are specifically human resources documents. The Court and all parties were aware at the two-hour September 5 motion hearing that these were specifically human resources documents that must be forwarded to Plaintiffs' human resources expert. Notwithstanding a long discussion about the production of these documents at the motion to compel hearing, the Defendant made no objection to the Court's order to produce

additional human resources documents regarding the effect the Court's order likely will have on the timing of the expert's supplemental reporting. Also, Defendant did not produce the HOST Human Resource Manual until September 5, 2008, just before the motion to compel discovery hearing. The Defendant must know that Plaintiffs' human resources expert must produce the human resources manual before reasonably supplementing her report.

## III.

## CONCLUSION

Plaintiffs look to the Court for direction and further guidance. Plaintiffs have completed discovery without asking the Court to continue its discovery deadline. Now they are working with Amy Oppenheimer to see if she will supplement her expert report.

Plaintiffs argued that the preliminary report is complete pursuant to Rule 26(a)(2)(B) standards. They argued that Defendants should have met and conferred before seeking to exclude Plaintiffs' expert witness evidence. Plaintiffs also argued that their expert witness should be allowed to testify and that the report should not be excluded.

If the Court is not persuaded by Plaintiffs' opposition arguments, then Plaintiffs ask for relief less harsh than evidence or witness exclusion. Plaintiffs ask that any relief granted be carefully and circumspectly tailored. There are any number of options short of exclusion that would allow the Defendant to compensate for its failure to depose Plaintiffs' expert witness.

Dated: September 8, 2008

MILLER, KING & JAMES, LLP

s/ Patricia I. James
Patricia I. James
Attorneys for Plaintiffs

David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC. and DOES 1-100, Inclusive.<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' FIRST EXPERT EXCHANGE<br><br>Federal Rule of Civil Procedure 26 |

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

1. I, the undersigned, am one of the attorneys of record in this action for Plaintiffs herein.

2. Accompanying this declaration is a list of the persons whose expert and percipient expert opinion testimony the parties whom we represent intend to offer at trial of this action, either orally or by deposition testimony.

3. In the event that the Defendant contends that additional information should have been provided herein, it is requested that the issue be raised immediately so that appropriate action may be taken expeditiously.

4. The following is a brief narrative statement of the qualifications of the expert as well as a brief narrative statement of the general substance of the testimony that the expert is expected to give at trial.

EXHIBIT A

Amy Oppenheimer, JD
878 Spruce Street
Berkeley, California 94707
510.528.8787

Ms. Oppenheimer has testified as an expert witness on various employment matters. She is believed to be qualified in making observations, opinions and/or conclusions concerning all issues regarding employment and human resources practices, workplace harassment and discrimination policies, investigation, prevention, response, standard of care and causation and will be called to testify regarding the same. Ms. Oppenheimer will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial.

Her fee for testimony is $400 per hour, with a half-day minimum for deposition and a full-day minimum for trial testimony. Ms. Oppenheimer's curriculum vitae is attached as Exhibit A.

Plaintiffs reserve the right to call one or more, including, but not limited to the following, treating health care providers/non-retained experts and treating professionals/non-retained experts to testify regarding the issues of standard of care, treatment, diagnosis, prognosis, causation, why and how Darryl Murray and Debra Murray were injured or damaged as claimed:

1. David Heller, M.D.
2. Robert Littman, M.D.
3. Dr. Eve Dreyfus
4. Any and all health care professionals who rendered care for Debra Murray at Grossmont Hospital, Psychiatric Department
5. Any and all health care professionals who rendered care for Debra Murray at Scripps Mercy Hospital.

///

DECLARATION OF PATRICIA I. JAMES

I, Patricia I. James, declare as follows:

I am an attorney licensed to practice under the laws of the State of California, am admitted and qualified as an attorney before this District Court and am a partner with MILLER, KING & JAMES, LLP, counsel of record for Plaintiffs. Each of the above expert and/or percipient witnesses will be sufficiently familiar with the pending action to submit meaningful oral deposition concerning the specific testimony, including opinions and their basis, that the expert is expected to give at trial.

Plaintiffs shall or may call as an expert at trial of this matter an expert whose identity is not presently known. Plaintiffs will designate such witnesses by name when such are ascertained.

Plaintiffs reserve the right to call all experts listed by or on behalf of any other party to this lawsuit as well as any expert yet to be supplied or identified by said other parties. Therefore, Plaintiffs incorporate, as though fully set forth herein, all information supplied by the other parties to the litigation as to said experts in said lists of expert witnesses which have been supplied and will be supplied by other parties.

Plaintiffs reserve the right to name and call such additional experts as they deem appropriate.

In the event that any additional analyses are obtained by Defendant or any other party prior to trial, Plaintiffs reserve the right to call as an expert witness the professional performing the analysis, whose name and address will by that time be provided to Defendant or counsel for the other parties and whose testimony will be concerning the nature and extent of the alleged damages.

Plaintiffs reserve the right to add additional experts as such need arises during the course of discovery and investigation in preparation for trial.

Plaintiffs reserve the right to call as witnesses to testify on either lay or expert matters, or both, those individuals who are employees or former employees of any other parties to this lawsuit and who may be called to testify at trial under Evidence Code Section 776, either live

or through competent former testimony.

Plaintiffs reserve the right to call impeachment or rebuttal witnesses omitted herefrom.

Plaintiffs reserve the right to call at the time of trial, if necessary, (a) the custodian of records of the parties to this lawsuit; (b) principals, agents and representatives, among others, of Defendant and, c) witnesses named by any other party to this lawsuit on their respective witness list.

If any of the witnesses discussed or listed hereinabove are not available at the time of trial, Plaintiffs will advise all parties that they will seek the introduction of competent former testimony, including depositions, of such witnesses in lieu of their live testimony.

Finally, discovery in this case has not yet been completed. Not all depositions have been taken or completed of certain parties, lay witnesses, or experts. Plaintiffs, therefore, reserve the right to file a supplemental list of witnesses as discovery is completed and witnesses are identified.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Diego, California, on this 11th day of April, 2008.

MILLER, KING & JAMES, LLP

By: *[signature]*
Patricia I. James
Attorneys for Plaintiffs

Murray v. HMSHost, et al.
3:07-cv-02056-H-BLM
**PROOF OF SERVICE**

I am employed in the County of San Diego, State of California. I am over eighteen years of age and not a party to this action. My business address 707 Broadway, Suite 1800, San Diego, California, 92101.

On **April 11, 2008** I served a true copy of the following document(s):

**1. Plaintiffs' First Expert Exchange**

on all interested parties in this action as follows:

Bailey Law Group, PC — Attorney for Defendants/Counter-Claimant
Serafina Raskin, Esq.
8105 Irvine Center Dr. Suite 900
Irvine, CA 92618
Fax: 949.453.1757
sraskin@baileylawgroup.com

X **U.S. MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Accordingly, the above-referenced document(s) were enclosed in a sealed envelope which, in the ordinary course of business, will be deposited with the United States Postal Service the same day; and said envelope was addressed as shown on the attached service list.

**BY FAX:** I transmitted a copy of the foregoing document(s) on this date by facsimile transmittal to the number shown on the service list.

**BY ELECTRONIC MAIL DELIVERY:** I caused the foregoing document(s) to be electronically served on the interested parties who have agreed to accept electronic mailing as effective service for these documents.

**BY PERSONAL SERVICE:** I personally delivered such document(s) by hand to the offices of the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **April 11, 2008** in San Diego, California.

Christina M. Ford

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CLAIFORNIA

DARRYL MURRAY and
DEBRA MURRAY,

Plaintiffs

vs. CASE No. 07CV2056-H (BLM)

HOST INTERNATIONAL, INC.,
et al.,

Defendants.
_______________________________________/

**PRELIMINARY EXPERT WITNESS REPORT OF AMY OPPENHEIMER**

**I Background**

I have been retained on behalf of the plaintiffs, Darryl and Debra Murray, to render an opinion of the defendants' investigation and response to a complaint of workplace harassment and retaliation, and to testify as to what is considered typical and acceptable human resource practice in regard to investigation of complaints of harassment and retaliation in the workplace.

I have been an attorney for over twenty-seven years. For more than sixteen years I have trained human resource professionals, employers and employees in preventing and responding to harassment and discrimination, including how to investigate a complaint of harassment or retaliation. I have consulted on harassment and discrimination policies, acted as a neutral investigator of charges of discrimination in employment, and testified as an expert witness in retaliation, discrimination and harassment cases. From 1986 to 1990 I investigated EEO complaints for federal government agencies. I co-authored a

EXHIBIT B

book about investigating workplace harassment, entitled: *Investigating Workplace Harassment: How to be Fair, Thorough and Legal*, published in 2002 by Society for Human Resource Management. My CV, rate sheet and list of cases I have testified in are attached.

My understanding is that there has not been significant discovery to date and that discovery is continuing in this case. The investigator(s) and decision maker(s) have not yet been deposed. Without reviewing the testimony of the investigator(s) and decision maker(s) I cannot provide a complete opinion. Therefore my report is preliminary, based on discovery to date, and will be amended after discovery is complete.

**II Material reviewed**

I have reviewed the following materials in forming my opinion:

A. Deposition of Darryl Murray with exhibits attached.

B. Personnel file of Darryl Murray (contains documentation of the investigation at issue)

**III Opinions**

1. **Defendants Failed to do a Thorough, Fair and Neutral Investigation**

In evaluating an investigation of a complaint of harassment/retaliation, I look to three different components and determine if each of those components was consistent with typical human resource practice and was essentially fair to both the complainant and the respondent. I do not expect an investigation to be "perfect" nor do I hold investigators to a higher than "adequate" standard. I overlook minor deficiencies,

realizing that any investigation might be better; the issue is if it was reasonably fair and thorough.

The three areas that I evaluate are: 1) was the investigator neutral and did he/she have the proper type and amount of experience and authority to conduct this particular investigation; 2) was the investigation reasonably thorough (were the proper people interviewed, were the interviews complete, were they authenticated, were documents gathered); and 3) were the findings made consistent with the information gathered.

**Appropriateness of Investigator**

The investigator of a complaint of workplace harassment/retaliation should be neutral and should have the requisite level of experience and authority, given the parties involved. Since I have not yet had an opportunity to review the depositions of the investigator(s), I cannot yet give an opinion as to their suitability to investigate this complaint. However it does seem that rather than have one investigator interview all the parties and witnesses, this task was divided. This is not usual practice and presents problems in that when there is a conflict in the evidence the investigator must make credibility determinations. This is difficult, if not impossible, to do when the same individual(s) is not questioning everyone involved.

Another potential problem is that the investigator who interviewed the plaintiff came from loss prevention. Often the training and experience of investigators from loss prevention backgrounds is not conducive to doing fair investigations of workplace harassment. The style tends to be more confrontational than individuals with human resource backgrounds. The modus operandi of loss prevention is frequently to "hide the ball" and not provide complete information to the respondent as to the details of the

complaint. This is inconsistent with usual and customary practice in investigating complaints of workplace harassment and retaliation. Lastly, often those with a loss prevention background have been trained to first develop a case and then speak to the respondent. This too is problematic and inconsistent with proper human resource practice.

**Thoroughness of Investigation**

A proper investigation of a workplace complaint starts with a thorough interview of the complainant. The next step is a thorough interview with the respondent. There are rare exceptions to this. For example, if a witness will no longer be available, or can corroborate a crucial fact, that witness might be questioned out of order. However in most cases the respondent is spoken to immediately following the complainant, and if another witness is spoken to first, it is never appropriate to speak to all of the witnesses before getting the respondent's side of the story. In this case in appears that the investigator spoke to witnesses before interviewing the respondent. This is totally contrary to well accepted investigatory practice and goes against all notions of fairness.

The point of an investigation is to be fair to both parties. If an investigator interviews the complainant and questions all the complainant's witnesses before interviewing the respondent, there is a tendency to build a case against the respondent rather than be fair to both sides. An investigator should approach the interview with the respondent with an open mind. She/he should not amass a case against someone or try to trick them. Rather, the investigator should give the respondent an opportunity to fully respond to all of the allegations and should then follow up with witnesses on all of the significant contested facts. It is usual and customary practice to ask both the complainant

and the respondent if they have suggestions on who should be interviewed and to find out what the complainant/respondent thinks this individual can add. If there is an indication that the individual might be able to shed light on contested facts that are relevant to the issues being decided, they should be interviewed.

In this case, the plaintiff was not told what all the allegations were and was not given an opportunity to respond to all of the allegations. An investigator should provide a full opportunity for the respondent to respond to each allegation and should assure that the respondent knows what the allegations are.

Another significant problem was the investigators' failure to get signed statements or to, in any way, authenticate the information they gathered. The plaintiff testified that there were a number of misstatements in the notes that purported to be what he told the investigator. If the investigator is not accurate in his/her notes, there is no way to determine this unless witnesses are asked to review and confirm the notes or to review and sign a statement that is prepared based on those notes. It is usual and customary practice, in workplace investigations of harassment, to do just this. This did not occur here.

**Conclusions reached**

The last component of an appropriate investigation is that the conclusions reached are consistent with the information gathered. Here it does not appear that there were conclusions at all, which is problematic. The investigator(s) should have weighed the evidence and come to a determination as to what occurred, whether what occurred violated any rules and, if so, how serious of a violation of rules. Instead, the

investigator(s) appeared to simply gather facts without testing the facts, determining credibility and making determinations.

### 2. Disciplinary Action Taken

Disciplinary action should be taken against someone who has violated rules against harassment or retaliation only after a complete and neutral investigation takes place, and specific findings are made. Since this did not happen here, any disciplinary action was premature.

It is noteworthy that the past discipline in the plaintiff's personnel file was for actions that were not specified. It appeared that defendant, in that case, also failed to make any findings as to what behavior the plaintiff engaged in that would violate its rules. They certainly failed to give notice to the plaintiff as to what that behavior was.

## IV. Conclusion

Defendant failed to conduct a fair and thorough investigation prior to terminating Murray and therefore did not follow basic standards of human resource practice.

Respectfully submitted,

Amy Oppenheimer

Dated: May 29, 2008

David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HMSHOST CORPORATION, HMS HOST FAMILY RESTAURANTS, INC., HMS HOST USA, INC., and DOES 1-100, Inclusive.<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' RULE 26(A)(1)(i-iv) INITIAL DISCLOSURES |

Plaintiffs DARRYL MURRAY and DEBRA MURRAY hereby submit their initial disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1)(A-D) in accordance with the order of the Honorable Ruben B. Brooks.

Plaintiffs have made a good faith effort to comply with its Rule 26 initial disclosure requirements. However, Plaintiffs anticipate that the relevance of certain witnesses and documents may not be appreciated or understood until after this disclosure. Accordingly, Plaintiffs reserve the right to supplement this disclosure should they become aware of additional relevant witnesses or documents. This disclosure is made without prejudice to Plaintiffs' right to name new witnesses and produce additional documents for inspection.

////

////

EXHIBIT C

David D. Miller (State Bar No. 66863)
Nicholas S. King (State Bar No. 179605)
Patricia I. James (State Bar No. 90633)
MILLER, KING & JAMES, LLP
ATTORNEYS AT LAW
707 Broadway, Suite 1800
San Diego, CA 92101-5314
Telephone: 619.685.0077
Facsimile: 619.685.0011

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>v.<br><br>HMSHOST CORPORATION, HMS HOST FAMILY RESTAURANTS, INC., HMS HOST USA, INC., and DOES 1-100, Inclusive.<br><br>Defendants. | CASE NO.:07CV2056-H (BLM)<br><br>PLAINTIFFS' RULE 26(A)(1)(i-iv) INITIAL DISCLOSURES |

Plaintiffs DARRYL MURRAY and DEBRA MURRAY hereby submit their initial disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1)(A-D) in accordance with the order of the Honorable Ruben B. Brooks.

Plaintiffs have made a good faith effort to comply with its Rule 26 initial disclosure requirements. However, Plaintiffs anticipate that the relevance of certain witnesses and documents may not be appreciated or understood until after this disclosure. Accordingly, Plaintiffs reserve the right to supplement this disclosure should they become aware of additional relevant witnesses or documents. This disclosure is made without prejudice to Plaintiffs' right to name new witnesses and produce additional documents for inspection.

////

////

////

**WITNESSES - 26(A)(1)(i):**

Darryl Murray

Debra Murray

Sandy Rosales (Employed by Defendant)

Darin Chadwick. (Employed by Defendant)

Joe Lutz (Employed by Defendant)

Idalia Castro (Employed by Defendant)

Tom Stein (Employed by Defendant)

Jennifer Lakin (Employed by Defendant)

Shanin Kouhkan, Premier Banker Specialist, Wells Fargo

**DOCUMENTS 26(A)(1)(ii):**

Darryl Murray's personnel file in possession of the Defendant

All Documents pertaining to the payoff of the $150,000 line of credit in possession of the Plaintiffs and Wells Fargo

(Any other documents which are subsequently deemed to be of relevance and to prove the claims and counter-claims of the parties)

**DAMAGES - 26(a)(1)(iii):**

1. General Damages including Pain and Suffering;
2. Past, Present and Future Medical Expenses, Unknown to Date;
3. Past, Present and Future Loss of Income;
4. Reasonable Attorneys Fees;
5. Costs of Suit;
6. Interest; and
7. Punitive Damages

Plaintiffs will attempt to assess this and provide additional information as soon as possible.

////

////

////

**WITNESSES - 26(A)(1)(i):**

Darryl Murray

Debra Murray

Sandy Rosales (Employed by Defendant)

Darin Chadwick. (Employed by Defendant)

Joe Lutz (Employed by Defendant)

Idalia Castro (Employed by Defendant)

Tom Stein (Employed by Defendant)

Jennifer Lakin (Employed by Defendant)

Shanin Kouhkan, Premier Banker Specialist, Wells Fargo

**DOCUMENTS 26(A)(1)(ii):**

Darryl Murray's personnel file in possession of the Defendant

All Documents pertaining to the payoff of the $150,000 line of credit in possession of the Plaintiffs and Wells Fargo

(Any other documents which are subsequently deemed to be of relevance and to prove the claims and counter-claims of the parties)

**DAMAGES - 26(a)(1)(iii):**

1. General Damages including Pain and Suffering;
2. Past, Present and Future Medical Expenses, Unknown to Date;
3. Past, Present and Future Loss of Income;
4. Reasonable Attorneys Fees;
5. Costs of Suit;
6. Interest; and
7. Punitive Damages

Plaintiffs will attempt to assess this and provide additional information as soon as possible.

////

////

INSURANCE - 26(a)(1)(iv):

Not Applicable.

Dated: January 9, 2008

MILLER, KING & JAMES, LLP

By: S/ Patricia I. James
David D. Miller
Nicholas S. King
Patricia I. James
Attorneys for Plaintiffs

INSURANCE - 26(a)(1)(iv):

Not Applicable.

Dated: January 9, 2008

MILLER, KING & JAMES, LLP

By: S/ Patricia I. James
David D. Miller
Nicholas S. King
Patricia I. James
Attorneys for Plaintiffs

**Amy Oppenheimer**
**510-393-4212**
**amy@amyopp.com**

## PROFESSIONAL EXPERIENCE

***Workplace Harassment/Employment Discrimination Consultant*** - Investigates complaints of discrimination, harassment and/or retaliation in the workplace. Trains human resource professionals in how to prevent workplace harassment and how to investigate complaints of harassment, retaliation and discrimination. Provides expert advice and testimony regarding best HR practices in the area of preventing and investigating workplace harassment, retaliation and discrimination. Mediates workplace disputes both pre and post litigation. - 1996 to present.

***Arbitrator:*** Alameda County Superior Court - 1989 to 1992; American Arbitration Association - 1989 to 2004; The International Commission on Holocaust Era Insurance Claims Appeals Tribunal – 2003 - 2006.

***Mediator:*** Berkeley Dispute Resolution Services - 1989 to 2003; American Arbitration Association - 1996 - 2004; Alameda County Bar Association - 1996 to 1999; Equal Employment Opportunity Commission – 2001 – 2006; United States Postal Service REDRESS program – 1998 – 2003.

***Senior Consultant:*** Anderson-davis, Inc., Aurora, Colorado - provided training to businesses on how to recognize, prevent and investigate sexual harassment. Partial list of companies trained: Prudential Insurance, Chevron USA, Northern Telecom, Whirlpool, Lockheed-Martin, Pacific Telesis - 1992 to 1996.

***Partner, Levy & Oppenheimer,*** Oakland, California - law practice that specialized in litigating sexual harassment and employment discrimination cases. Also practiced family law, juvenile law, wills and trusts. - 1984 to 1992.

***Judge Pro Tem:*** Alameda County Municipal Courts - 1989 to 1992.

***Investigator:*** Delany, Siegel, Zorn & Associates, Investigated complaints of employment discrimination within the federal government - 1986 to 1990.

***Staff Attorney:*** Legal Services of Northern Virginia Inc., Prince William Legal Aid Branch, Manassas, Virginia - represented indigent individuals in areas of landlord/tenant, consumer, unemployment and public benefits and family law - 1982 to 1984

***Reginald Heber Smith Fellow (REGGIE):*** Legal Aid Society of The New River Valley, Inc., Christiansburg, Virginia represented indigent individuals in areas of domestic abuse, family law, landlord/tenant and consumer law - 1980 to 1981

## EDUCATION

Juris Doctor, 1980, University of California, Davis
B.A., 1975, University of California, Berkeley, with Great Distinction; member, *Phi Beta Kappa*

**MEMBER:** California bar (active)
Virginia and District of Columbia Bar (inactive)

EXHIBIT D

**PUBLICATIONS** (partial list)

*Investigating Workplace Harassment and Discrimination,* Employee Relations Law Journal, Vol. 29, No. 4, Spring 2004.

*The Do's and Don'ts of Investigating Workplace Harassment,* PIHRAScope, Professionals in Human Resources Association, February 2004.

*Experts May Testify on Harassment Policies and Procedures of Employer,* San Francisco Daily Journal, December 11, 2003.

*Using Liability Experts in Sexual harassment Cases,* Sexual Harassment Litigation Reporter, Volume 9, Issue 10, October 2003.

*Making the Best Use of Liability Experts in Discrimination and Harassment Litigation,* Employment Litigation Reporter, Volume 18, Issue 5, October 14, 2003.

*Investigating Workplace Harassment: Ten Steps to Success*, You and the Law Newsletter, October 2002.

*Investigating Workplace Harassment: How to Be Fair, Thorough, and Legal*, by Amy Oppenheimer and Craig Pratt, Society of Human Resource Management, 2002.

*"The Aftermath of Faragher and Ellerth - The Impact on Pre-trial Discovery and the Use of Liability Experts In Sexual Harassment Cases"*, Conference materials NELA Convention, June 2000.

*"Employment Discrimination and Harassment"*, Chapter 40B of California Torts, Levy, Golden & Sacks, Editors, Matthew Bender & Co., September 1999.

*"Liability Lesson: The Use of an Employment expert In Sexual Harassment Cases can help Jurors Understand the Reasonableness of Investigatory Processes"*, Los Angeles Daily Journal and San Francisco Daily Journal, May 21, 1999.

Contributed to *"Investigating Sexual Harassment: A Practical Guide to Resolving Complaints"*, published by Thompson Publishing Group, Washington D.C., 1998

*"She Said, They Said – To protect themselves from liability for sexual harassment, employers should examine the numerous legal guidelines"*, California Law Business, Supplement to the Los Angeles Daily Journal and San Francisco Daily Journal, March 9, 1998

*"Ounce of Prevention – An employer's sexual harassment policies and practices are more important than ever.* Good policies, particularly those involving internal investigations, can avert problems and lawsuits, San Francisco Daily Journal, Employment Law Update, April 16, 1998.

*"Working it Out: Using Mediation to Resolve Harassment Complaints*", San Francisco Daily Journal, August 9, 1995.

Contributing author to *Intent vs. Impact: How to Effectively Manage Sexual Harassment Investigations,* Published by Bureau of National Affairs Communications, 1992.

Contributed to *Sexual Harassment in the Workplace*; an interactive training and testing CD-ROM, Media Code, 1994, as an expert.

**PUBLIC SPEAKING AND TRAINING** (partial list)

*Harassment Investigation Critique,* EEOC Annual Technical Assistance Seminar, San Francisco 2007, Santa Clara, 2006.

*"Conducting Workplace Investigations: Practical Skills for Internal Investigators",* Northern California Human Resource Association (NCHRA), 2003, 2004, 2005, 2006 and 2007.

*Investigating Workplace Harassment*, Novellas, 2004

*He Said/She Said: Making Credibility Determinations in Harassment Investigations,* NCHRA Annual Conference, September 2003.

*The How To's of Investigating Workplace Harassment*, 46th Annual PIHRA Conference & Exhibition, September 2003.

*Understanding and Preventing Workplace Harassment*, AGY Theraputics, 2003

Panelist, Society of Human Resource Management Annual Conference, Philadelphia, June 2002, *"Did He Say What She Said He Said, Or Not? How Does an Investigator Decide*?"

Panelist, National Employment Lawyers Association Eleventh Annual Convention, *"The Aftermath of Faragher and Ellerth: Litigating Hostile Work Environment Cases*", Washington D.C., June 2000.

*Employment Litigation: Investigations and Human Resource Experts*, Presentation to the Barristers Club of San Francisco Labor & Employment Section, February 2000.

*Investigating Harassment: An Interactive Training*, Sonoma Developmental Center, September 1999

*Mediating EEO Complaints*, 40 hour training for City of San Francisco, August, 1999

Panelist and Moderator, Society For Professionals in Dispute Resolution, *"Sexual Harassment: The Role of the Investigator and the Role of the Mediator"*, 1998: *"Resolving Sexual Harassment Complaints",* 1997

Panelist, Association on Employment Practices and Principles, "*Same-Sex Harassment in the Workplace After Oncale",* 1998

Panelist, Alameda County Bar Association, *"Investigating Complaints of Sexual Harassment and Discrimination",* 1998

Panelist, American Bar Association Annual Conference, "*Sexual Orientation Discrimination in the Legal Community",* 1997

Panelist, Administrative Law Judges Assoc. Annual Forum, 1993, 1994, 1995, 1997, 2001 and 2003.

**Amy Oppenheimer**

**Cases Testified as Expert Witness at Deposition, Arbitration or Trial**

***Jane Doe v. Roe Law Firm,*** Superior Court of California, San Francisco County. Sexual harassment case. Retained by defendant, represented by Keith Chrestionson and Maureen McClain, Kauff, McClain & McGuire, San Francisco, California. Testified at deposition on March 27, 1996.

***Bertheaud v. California Department of Corrections***, Superior Court of California, San Francisco County. Sexual harassment case. Retained by plaintiff represented by Tom Duckworth and Kay Lucas, The Lucas Law Firm, San Francisco, California. Deposition taken September 16, 1996.

***Coates and Duran v. Wal-Mart Stores and Toby Alire***, First Judicial District Court, County of Santa Fe, State of New Mexico. Sexual harassment case. Retained by plaintiff represented by Michele Masiowski and Stephen Tinkler, Tinkler & Bennett, Santa Fe, New Mexico. Deposition taken September 23, 1996. Qualified as expert on sexual harassment policies and procedures and testified at trial, December 1996.

***Caldwell v. Novell, Inc, et al.,*** Superior Court of California, Santa Clara County. Wrongful termination case. Retained by defendant represented by Millicent S. Meroney, Mark Parnes and Jill Daniels, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, California. Deposition taken November 26, 1996.

***Fitzgerald v. Roche Laboratories, et al.,*** Superior Court of California, Santa Clara County. Sexual harassment case. Retained by plaintiff represented by Tom Duckworth and Kay Lucas, The Lucas Law Firm, San Francisco, California. Deposition taken January 20, 1997.

***Martinez v. KFC***, Arbitration, State of New Mexico. Sexual harassment case. Retained by plaintiff represented by Stephen Tinkler, Tinkler & Bennett, Santa Fe, New Mexico. Discovery and arbitration deposition taken October 4, 1997.

***Tom & Villarreal v. Jonas, et al.***, United States District Court, Eastern District of California. Sexual harassment case. Retained by plaintiff represented by E. Bradley Nelson, Hagler & Nelson, Vacaville, California, and Paul Gordon, Gordon & Goddard, Oakland, California. Deposition taken October 14, 1997.

***Rankin & Williams v. Darrell Julian Construction***, United States District Court, District of New Mexico. Sexual harassment case. Retained by plaintiff represented by Mark M. Rhodes, Rhodes & Salmon, Albuquerque, New Mexico, and Kathryn Hammel, Cates & Hammel, Los Lunas, New Mexico. Deposition taken December 10, 1997.

***Ramirez v. Wal-Mart Stores***, United States District Court, District of New Mexico. Sexual harassment case. Retained by plaintiff represented by Michele Masiowski and Stephen Tinkler, Tinkler & Bennett, Santa Fe, New Mexico. Deposition taken March 27, 1998.

***Raney v. The California Department of Developmental Service, et al***, Superior Court of the State of California, County of Sonoma. Sexual harassment case. Retained by plaintiff represented by Larry King and Barbara Giuffre, San Francisco, California. Trial testimony given November 19, 1998.

***Molieri v. South San Francisco Police Department, et al,*** Superior and Municipal Courts of California, County of San Mateo. Discrimination case. Retained by plaintiff represented by Todd M. Schneider, Austen, Schneider & McCormac, San Francisco, California. Deposition taken December 8, 1998. Qualified as expert on Investigations of harassment and discrimination and testified on June 23, 1999.

**Amy Oppenheimer: Case testimony, page two**

***Jackson v. Alameda County, et al***, Superior Court of California, County of Alameda. Sexual harassment case. Retained by plaintiff represented by Char Meaney, Law Offices of Richard J. Werthimer, San Francisco, California. Deposition taken December 23, 1998.

***Cross, et al v. Kaiser Foundation Hospitals, et al***, Superior Court of California, County of Sonoma. Sexual harassment case. Retained by defendant represented by Sarah Robertson, Fitzgerald, Abbott & Beardsley, Oakland, California. Deposition taken March 9, 1999.

***Foster v. Interlake Handling, Inc et al.***, United States District Court, Western District of Kentucky. Sexual harassment case. Retained by plaintiff represented by Douglas H. Morris and Lea Player, Oldfather & Morris, Louisville, Kentucky. Deposition taken June 10, 1999.

***Disponett v. Frankfort Hospital, Inc et al***, Commonwealth of Kentucky, Franklin Circuit Court. Sexual harassment case. Retained by plaintiff represented by Roy D. Snell, Croley, Moore & Snell, LaGrange, Kentucky. Discovery deposition taken September 22, 1999. Trial deposition taken April 6, 2000 and admitted into evidence at trial

***Stites v. Wright Engineered Plastics, et al***, Superior Court of California, County of Sonoma. Sex discrimination and harassment case. Retained by plaintiff represented by Michael G. Miller, Perry, Johnson, Murray, Anderson & Miller, Santa Rosa, California. Deposition taken December 1, 1999.

***Gallo v. Interstate Brands Corp., et al***, Superior Court of California, County of Alameda. Sex discrimination and harassment case. Retained by plaintiff represented by James Farinaro, San Leandro, California. Deposition taken February 17, 2000.

***Oshiro v. Atlantis***, Circuit Court of Hawaii. Sexual harassment case. Circuit Court of Hawaii. Retained by defendant represented by Richard Lesser, Redondo Beach, California. Deposition taken April 25, 2000.

***Englehardt, et al v. County of Modoc, et al.*** Sexual harassment and retaliation case. Federal District Court of California. Retained by plaintiff represented by Howard Moore and Felicia Curran, Oakland, California. Deposition taken April 26, 2000.

***Roe et al v. Fillmore Apartments, LLC, et al.*** Sexual harassment case. Superior Court of California, County of San Francisco. Retained by plaintiff represented by Dan Feder, San Francisco, California. Deposition taken May 18, 2000.

***Sanders v. PG&E, et al.*** Racial harassment/retaliation case. Superior Court of California, County of San Francisco. Retained by plaintiff represented by Dan Feder, San Francisco, California. Deposition taken June 27, 2000.

***Butler v. Hartnell Community College District, et al.*** Sexual harassment case. Superior Court of California, County of Monterey. Retained by plaintiff represented by Martin Horowitz and Stephanie Rubinoff, Oakland, California. Deposition taken July 5, 2000.

***Byerly and Lucero v. Compass Groups USA et al.*** Sexual harassment case. United States District Court, District of New Mexico. Retained by plaintiff represented by Merit Bennett, Tinkler & Bennett, Santa Fe, New Mexico. Deposition taken September 19, 2000.

***Leca v. Lucky Stores, Inc., et al.*** Sex discrimination/harassment case. Superior Court of California, County of Alameda. Retained by plaintiff represented by Melvin Dayley, Oakland, California. Deposition taken October 5, 2000.

***Briscoe-King v. California Dept. of Corrections, et al.*** Discrimination/retaliation case. United States District Court, Eastern District of California. Retained by defendant represented by State of California, Department of Justice, Sacramento, California. Deposition taken December 14, 2000.

***Boisvert v. Martinez Unified School District.*** Age discrimination case. Superior Court of California, Contra Costa County. Retained by defendant represented by Michael Clark, Edrington, Schirmer & Murphy, Walnut Creek, CA. Deposition taken March 29, 2001

***Brenner, et al. v. Ran Ken, Inc., et al.*** Sexual harassment case. United States District Court, District of New Mexico. Retained by plaintiffs represented by Whitney Warner, Noeding & Moody, Albuquerque, New Mexico. Deposition taken April 2, 2001.

***Clark v. Frankfurt Hospital.*** Sexual harassment case. Kentucky state court. Retained by plaintiff represented by Edward L. Lasley, Conliffe, Sandmann & Sullivan, Louisville, KY. Deposition taken May 8, 2001

***Pineda v. Able Building Maintenance Company.*** Sex Discrimination case. Superior Court of California, City and County of San Francisco. Retained by defendant represented by Kenneth Simoncini, San Jose, California. Testified at trial September 12, 2001.

***Silva v. Stockton Further Processing, Inc., et al.*** Sexual harassment case. Superior Court of California, San Joaquin County. Retained by plaintiff represented by Robert Lazo, San Francisco, California. Deposition taken October 12, 2001. Testified at trial November 1, 2001.

***Shafiq v. J.R. Simplot Company, et al.*** National origin harassment/discrimination case. Superior Court of California, San Joaquin County. Retained by plaintiff represented by Susiejane Eastwood, Stockton, California. Deposition taken October 18, 2001.

***White v. Chevron Corporation, Inc.*** Race discrimination case. United States District Court, Northern District of California. Retained by plaintiff represented by Sheila Thomas, San Francisco, California. Deposition taken October 30, 2001.

***Perry v. Marriott International, Inc., et al.*** Sexual harassment case. Superior court California, City and County of San Francisco. Retained by plaintiff represented by Laura Stevens, Berkeley, California. Deposition taken November 15, 2001.

***Veale v. Foodmaker, Inc.*** Sexual harassment case. Federal District Court for the District of Nevada. Retained by plaintiff represented by Jennifer Sims, Las Vegas, Nevada. Deposition taken December 13, 2001.

***Cave v. California Department of Developmental Services, et al.*** Sexual harassment case. Superior Court California, Tulare County. Retained by plaintiff represented by Walter Whelan, Fresno, California. Deposition taken April 11, 2002. Testified at trial April 30, 2002.

***Wong v. City and County of San Francisco, et al***, gender and national origin discrimination case. Superior Court of California, City and County of San Francisco. Retained by plaintiff represented by William Kwong, San Francisco, California. Deposition taken May 20, 2002.

***Debro v. San Leandro Unified School District, et al***, retaliation case. Superior Court of California, Alameda County. Retained by plaintiff represented by Julia Sherwin, Oakland, California. Deposition taken June 4, 2002. Testified at trial July 31, 2002.

***Passeri v. Pacific Life Insurance Company, et al.*** Sexual harassment case. Superior Court of California, City and County of San Francisco. Retained by plaintiff represented by Bruce Nye and Geoffrey Faust. Deposition taken August 6, 2002.

***Henderson v. Lafayette Parish School Board.*** Parish of Lafayette, State of Louisiana. Retained by plaintiff represented by Anthony Fazzio. Trial deposition taken February 21, 2003.

***Kahon v. Harvest House.*** Superior Court of Contra Costa County. Retained by plaintiff represented by Hunter Pyle, Oakland, California. Deposition taken July 8, 2003.

***Beamon v. City of Oakland***, Superior Court of Alameda County. Retained by plaintiff represented by Charles A. Bonner, Sausalito, California. Deposition taken November 11, 2003.

***Velez v. Roche***, United States District Court, Northern District of California. Retained by plaintiff represented by Jack W. Lee. Testified at deposition December 9, 2003. Testified at trial February 2, 2004.

***Williams v. County of Marin***, United States District Court, Northern District of California. Retained by plaintiff represented by Charles A. Bonner, Sausalito, California. Deposition taken August 12, 2004.

***EEOC v. Harris Farms***, United States District Court, Eastern District of California. Retained by plaintiff represented by Linda Ordonio-Dixon. Deposition taken September 22, 2004.

***St. Martin v. Antioch Unified School District***, Contra Costa County Superior Court. Retained by defendant represented by Ian Fellerman, Oakland, California. Deposition taken November 11, 2004.

***Kotla v. Regents of the University of California, et al.***, Alameda County Superior Court. Retained by plaintiff represented by J. Gary Gwilliam, Oakland, California. Deposition taken February 2, 2005. Testified at trial on March 8 and 9, 2005.

***Eden v. Los Alamos Public Schools***, United States District Court, District of New Mexico. Retained by plaintiff represented by George Geran, Santa Fe, New Mexico. Deposition taken April 24, 2005

***Bice v. Signius Communications***, Superior Court of California, County of Sonoma. Retained by defendant represented by Dawn Ross, Santa Rosa, California. Deposition taken June 1, 2005.

***Matta and Quevedo v. Dolex,*** Superior Court of California, County of Alameda. Retained by plaintiff represented by Phil Horowitz, San Francisco, California. Deposition taken August 19, 2005.

***Horani v. County of Alameda,*** Superior Court of California, County of Alameda. Retained by plaintiff represented by Yosef Peretz, San Francisco, California. Deposition taken November 7, 2005. Testified at trial March 22, 2006.

***Abboud v. IBM***, United States District Court, Northern District of California. Retained by plaintiff represented by Robert David Baker. Deposition taken March 14, 2006.

***Cambra v. Chevron***, United States District Court, Northern District of California. Retained by plaintiff represented by Charles Bonner. Deposition taken July 27 and September 27, 2006.

**DECLARATION OF IDALIA CASTRO**

**I, Idalia Castro, declare as follows:**

I am over twenty-one years of age, of sound mind, and capable of making this declaration. I have personal knowledge of the facts contained in this declaration, and if called as a witness, I could and would testify as to their accuracy:

1. From March 2002 to January 2007, I was the Senior Field Human Resource Manager for HOST INTERNATIONAL, INC. ("HOST"). Since January 2007, I have worked as the Senior Director of Human Resources for the Western Region of the United States. I work out of HOST's regional office located in Seattle, Washington.

2. At my deposition, conducted on July 18, 2008, I testified that a copy of a notice of termination was given to Darryl Murray at his termination on September 21, 2006. (Deposition of I. Castro, 52:3-24.) Since then, I have attempted to locate the termination notice and have attempted to recall the exact form of the notice. However, I realized that I was mistaken and only provided Mr. Murray with his final paycheck and not his notice of termination.

3. I have not seen, prepared, or asked anyone else to prepare the document referred to as Darryl Murray's termination notice.

4. At the request of counsel for HOST, Serafina Raskin, I conducted a thorough search of all available sources at my Seattle office for Darryl Murray's termination notice, including a search of my outlook folder, my hard drive and all personal notes, archived documents and files. I was not able to locate the termination notice.

5. I have never destroyed, tampered with, or withheld any documents related to this litigation.

EXHIBIT E

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of September, 2008, at Seattle, Washington.

[signature]
Idalia Castro