BAILEY LAW GROUP, P.C.
KATHY BAILEY (*admitted pro hac vice*)
SERAFINA RASKIN (California Bar No. 244960)
8105 Irvine Center Drive
Suite 900
Irvine, CA 92618
Telephone: (949) 453-1755
Facsimile: (949) 453-1757

Attorneys for Defendant
HOST INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL MURRAY and DEBRA MURRAY,<br><br>Plaintiffs,<br><br>vs.<br><br>HOST INTERNATIONAL, INC.,<br><br>Defendant. | CASE NO.: 3:07-CV-02056-H (BLM)<br><br>HOST'S INTERNATIONAL, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO HOST'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br>**Date: September 22, 2008**<br>**Time: 10:30 a.m.**<br>**Place: Room 13**<br>**Pre-Trial Conf: October 20, 2008** |

Defendant HOST INTERNATIONAL, INC. ("HOST"), hereby submits its reply to Plaintiffs' Opposition to HOST's Statement of Uncontroverted Facts in support of its Motion for Summary Judgment. Plaintiffs do not object to the real substance of any of the material facts submitted by HOST. Instead, Plaintiffs make irrelevant objections to issues which are not critical to establishing the few material, undisputed facts upon which HOST's motion relies.

Although each of Plaintiffs' objections are unfounded, even if a portion of the evidence objected to is stricken, the remaining facts would support this Court granting HOST's Motion for Summary Judgment. In sum, Plaintiffs' objections to these facts are an attempt to divert this Court's attention from the simple issue currently before it — that Plaintiffs have no evidence to support its claims that HOST discriminated against Mr. Murray on the basis of age. Therefore, HOST

respectfully requests that the Court overrule each of HOST's objections and appropriately consider the evidence supporting HOST's motion.

| HOST'S MATERIAL FACTS | PLAINTIFF'S OBJECTIONS | HOST'S REPLY |
|---|---|---|
| 1. Darryl Murray began working for HOST in December 1988 and his employment with HOST was terminated on September 21, 2006. (Plaintiff Darryl Murray's Deposition 17:05-18:09, attached hereto as Exhibit 1 (March 25, 2008).) | 1. Undisputed. | 1. Plaintiffs accept fact as undisputed. |
| 2. During his 18- year employment with HOST, Mr. Murray has always held a management level position. (Pl's Dep. 17:05-18:09.) | 2. Undisputed. | 2. Plaintiffs accept fact as undisputed. |
| 3. Mr. Murray's conduct at HOST was governed by the standards contained in HOST's Non- Harassment Policy. (Pl's Dep. 33:02-36:22.) | 3. Undisputed only insofar as the defense is referring to the correct version of the HOST Non-Harassment Policy. A correct version would be one specifically applicable to managers as well as employees. | 3. Plaintiffs' objection has no merit and is immaterial. At his deposition Mr. Murray specifically acknowledged that his conduct was governed by this policy:<br>Q: Is there any part of this policy that you believe did not apply to you? [*referring to the Non-Harassment Policy*]<br>A: I believe that all policies apply to—or supposedly apply to everybody who works there. (Pl's Dep. 33:13-16.) |
| 4. It was part of Mr. Murray's job responsibilities at HOST to: (1) act in a professional manner; (2) understand and implement HOST policies regarding sexual harassment; and (3) assist human resources personnel in disciplining associates for failing to comply with HOST's Non-Harassment Policy. (Pl's Dep. 21:07-23:02.) | 4. Disputed. Acting and understanding are not job responsibilities. Rather they are more akin to behaviors. See Webster s [*sic*] Dictionary. Further, Defendant does not offer an official list of Darryl Murray s [*sic*] managerial duties. Based on the personnel file produced by the Defendant, it is not clear that he was ever officially advised of his duties. | 4. Plaintiffs' objection has no merit and is immaterial. Mr. Murray makes these admissions based on his personal knowledge and, as such, Plaintiffs' objection that it is "not clear that he was ever officially advised of his duties," is nonsensical and not supported by the record. |

| | | |
|---|---|---|
| 5. Two anonymous complaints of sexual harassment were made against Mr. Murray while he was a working as a General Manager in Portland, Maine. (Pl's Dep. 29:24-30:12, Ex. 4.) | 5. Disputed. There is no proof that two anonymous phone calls were actually made. Exhibit 4, attached to the deposition, is not properly authenticated. The deponent, Darryl Murray, says that he does not recall seeing the documents. The defense proof of this alleged fact is hearsay contained in an unauthenticated document. | 5. Plaintiffs' objections are meritless. Although Mr. Murray could not recall seeing exhibit 4-1, Mr. Murray properly authenticated exhibit 4-2 at his deposition: "I remember going to Mr. Vogel's office and receiving that." (Pl's Dep. 30: 11-12.) Moreover, this statement is not objectionable hearsay because HOST does not offer the statement, to show that Mr. Murray committed the sexual misconduct of which he was accused. It is offered simply to show that pursuant to HOST's policy, HOST educated Mr. Murray on its sexual harassment policy upon investigating the complaints of sexual harassment. It also is offered to show the effect on the hearer. F.R.E. 801(c); *Haddadv. Lockheed Calif. Corp.*, 720 F.2d 1454, 1456 (9th Cir. 1983)(to show lack of discriminatory intent - in an employment discrimination action, coworkers' complaints about working with plaintiff were admissible nonhearsay to prove employer's nondiscriminatory intent in firing Plaintiff). This statement also falls under an exception to the hearsay rule because it shows HOST's "motive" in educating Mr. Murray on its sexual harassment policy was made in good faith. F.R.E. 803(3). |
| 6. Mr. Murray receiving a written warning from Jack Vogel in August 1996 in response to anonymous sexual harassment complaints against | 6. Disputed. Exhibit 4 of Darryl Murray's deposition does not specify that Darryl Murray was the alleged perpetrator of sexual misconduct (conduct allegedly | 6. Plaintiffs' objections are meritless. Although Mr. Murray could not recall seeing exhibit 4-1, Mr. Murray properly authenticated exhibit 4-2 at his |

| | | |
|---|---|---|
| him as General Manager in Portland, Maine. (Pl's Dep. 29:24-30:12, Ex. 4.) | reported by two anonymous callers). To the contrary, the unauthenticated document contains such statements as the following:<br>The conclusion of our findings indicated that there were behaviors . . . by many associates. Nowhere in the document is it specified that allegations were made personally against Darryl Murray. As such, the alleged complaints were not complaints *against him.* Rather, they appear to be complaints against other people. | deposition: "I remember going to Mr. Vogel's office and receiving that." (Pl's Dep. 30: 11-12.) Moreover, this statement is not objectionable hearsay because HOST does not offer the statement, to show that Mr. Murray committed the sexual misconduct of which he was accused. It is offered simply to show that pursuant to HOST's policy, HOST educated Mr. Murray on its sexual harassment policy upon investigating the complaints of sexual harassment. It also is offered to show the effect on the hearer. F.R.E. 801(c); *Haddad*, 720 F.2d at 1456 (to show lack of discriminatory intent - in an employment discrimination action, coworkers' complaints about working with plaintiff were admissible nonhearsay to prove employer's nondiscriminatory intent in firing Plaintiff), This statement also falls under an exception to the hearsay rule because it shows HOST's "motive" in educating Mr. Murray on its sexual harassment policy were made in good faith. F.R.E. 803(3). |
| 7. Leticia Saavedra, a co-worker, filed a charge of sexual harassment against Darryl Murray in 2003, while he was working as a General Manger in San Diego. (Pl's Dep. 73:15-75:15.) | 7. Disputed. Leticia Sevedra was a subordinate as opposed to a co-worker. This is an important distinction. Sevedra's complaint followed closely in time to employment-related discipline from Darryl Murray. Defense Exhibit 11, referenced at Pl s [*sic*] Dep. 74:15-16. This reasonably leads one to believe that the harassment complaint | 7. Plaintiffs' make no valid objection but rather argue over semantics. Moreover, Plaintiffs' objection as to whether Ms. Saavedra was a subordinate or an employee is not genuine and contradicted by Mr. Murray's own deposition testimony. Leticia Saavedra was an hourly associate at San Diego International Airport |

| | | |
|---|---|---|
| | was made in retaliation for discipline, especially given that the complaint was found to be unsubstantiated. *Id*. | working at a restaurant within the airport. |
| 8. As a result of Ms. Saavedra's complaint, HOST issued a memorandum to Mr. Murray reiterating that the company "takes all claims of harassment seriously," and mandating that Mr. Murray adhere to the "re-issued [] sexual harassment policies and procedures." (Pl's Dep. 73:15-75:15, Ex. 11) | 8. Disputed. There is no evidence that the statement of takes all claims of harassment seriously is a reiteration as opposed to a first-time iteration. Further, the referenced exhibit says that HOST *will reissue* the sexual harassment policies and procedures. There is no evidence that these policies and procedures were in fact issued to Darryl Murray or anyone else. The defense did not produce an acknowledgment that normally accompanies issuing and reissuing of the sexual harassment policy, indicating that it probably was not reissued to Darryl Murray at the time alleged in Defendant s [*sic*] Alleged Fact #8. (*Cf*. Pltf s [*sic*] Dep. Ex. 7, which is an example of the type of acknowledgment that HOST required managers to sign when they received policies.) | 8. Plaintiffs' make no valid objection but rather argue over semantics: "iteration" versus "reinteration" does not change the fact that HOST issued this document to Mr. Murray. The documents are properly authenticated by Mr. Murray's deposition testimony:<br>Q. Are you familiar with these [] documents? [referring to Exhibit 11]<br>A: Yes, ma'am.<br>(Pl's Dep. 74:18-20, Ex. 11) |
| 9. On September 6, 2006, Sandra Rosales filed a written complaint with HOST human resources personnel against Mr. Murray claiming that he "kissed [her] in the mouth" without her permission, during a party at the home of Claudia Gallegos. (Ex. A to Decl. of Idalia Castro (July 14, 2008).) | 9. Disputed. First, the referenced document is not on its face a complaint. It is a Spanish document entitled Incident Report. This appears to be a form provided to her by some unspecified person who may or may not have coached her about what to write. Second, Sandra Rosales does not specify in the document that the kiss was without her permission. Third, kissed [her] in the mouth is a mistranslation of en la boca. En la boca, when referencing a | 9. Again, Plaintiffs' make no valid objection but rather argue over semantics. Plaintiffs' have no basis for an argument that an "incident" report is not a "complaint." Plaintiffs' also have no evidence as to "coaching." Plaintiffs' reference to "www.freetranslation.com" lacks foundation and is hearsay. |

| | | |
|---|---|---|
| | kiss, is more accurately translated as a kiss on the mouth and can mean a peck on the lips as is customary in some Hispanic cultures. See www.freetranslation.com. | |
| 10. Idalia Castro, who at the time was HOST's Senior Field Human Resources Manager, and Thomas Stein, HOST's Director of Loss Prevention, conducted interviews with various witnesses regarding Ms. Rosales' allegations. (Castro Decl. ¶¶ 4-6; Declaration of Thomas Stein ¶ 3, attached (August 20, 2008).) | 10. Undisputed insofar as Idalia Castro and Thomas Stein did conduct interviews. However, they were not the only persons to conduct interviews. For instance Thomas Stein brought an assistant to help with the interviews (Rodney Taylor). Lakin Dep., 36:25 to 37:7. Idalia Castro s [*sic*] subordinate, Jennifer Lakin, also conducted witness interviews. Lakin Dep., 17:21-25. Jennifer Bagayan may have conducted the first interview. Lakin Dep., 15:16-24. | 10. Plaintiffs' response does not dispute HOST's statement. |
| 11. On September 6, 2006, Ms. Castro met with Ms. Rosales. During this meeting, Ms. Rosales told Ms. Castro that Mr. Murray had kissed her at the party and that "she had pushed him away hoping her boyfriend didn't see." (Castro Decl. ¶ 5; Ex. B to Castro Decl.) | 11. At deposition Idalia Castro provided only a very limited amount of detail regarding her interviews with Sandra Rosales. See generally Castro Dep., 74:8 to 76:14. At deposition Ms. Castro never recalled Sandra Rosales giving detail about pushing Darryl Murray. To the contrary, on several occasions, she failed to recall additional details. For example,<br>Q. Can you remember anything else about what Sandra Rosales told you the first day?<br>A. No. . . .<br>Castro Dep., 74:8-10.<br>Q. Anything else that you can tell us about your first meeting with Sandra Rosales?<br>A. I don t [*sic*] think so.<br>Castro Dep., 76: 12-14. | 11. Plaintiffs' response does not dispute HOST's statement. |

| | | |
|---|---|---|
| | Given her testimony at deposition, it seems unlikely that Idalia Castro can now recall details of her conversations with Sandra Rosales that she could not recall at deposition. | |
| 12. On September 19, 2006, Mr. Stein met with Mr. Murray to discuss Ms. Rosales' allegations. During the meeting, Mr. Murray confirmed that he attended the party and admitted to kissing Ms. Rosales. (Stein Decl. ¶ 3; Ex. A to Stein Decl.; Ex. 10 to Pl's Dep.) | 12. Undisputed. | 12. Plaintiffs accept fact as undisputed. |
| 13. Claudia Gallegos confirmed to Ms. Castro in a written statement that at her party she saw that Mr. Murray "gave [Ms. Rosales] a kiss on the lips" and that the kiss was "lingering." (Ex. C to Castro Decl.) | 13. Disputed as to the term lingering. This term has no specific meaning for Claudia Gallegos as was demonstrated at her deposition. Ms. Gallegos was prompted numerous times to describe details of the kiss. Her responses were often contradictory and vague. For instance, on one occasion Ms. Gallegos said the following when asked exactly what she meant by lingered too long : So when I explain myself it happened fast, it is like I lifted my head and I looked. But to me seeing this, it is like it a slow motion when you . . . Gallegos Dep., 43:10-13. | 13. Plaintiffs' response does not dispute HOST's statement which deals with statements made to Ms. Castro during HOST's investigation, and have nothing to do with statements made during Ms. Gallegos' deposition. Moreover, Plaintiffs' present no "contradictions" in Ms. Gallegos' testimony in their opposition. |
| 14. During his deposition, on March 25, 2008, Mr. Murray admitted to kissing Sandra Rosales at the party of Claudia Gallegos. (Pl's Dep. 56:22-58:01.) | 14. Undisputed, although the reference to Plaintiff s [*sic*] Deposition does not specify an admission. | 14. Plaintiffs accept fact as undisputed. |

| | | |
|---|---|---|
| 15. Joe Niknam took over as the general manager at the San Diego International Airport on October 19, 2006. (Declaration of Joe Niknam ¶ 1, attached hereto Exhibit 4 (June 30, 2008).) | 15. Disputed. HOST s [*sic*] own employees provided different time frames at deposition. For example Jennifer Lakin, the local HR manager at the San Diego Airport, told Plaintiffs that Joe Niknam did not start working at San Diego until late November 2006. Lakin Dep., 75:6-7. | 15. Plaintiffs' misquote Ms. Lakin's testimony in order to create a dispute of fact. Ms. Lakin provided an estimate as to Mr. Niknam's start date, based on her recollection:<br><br>Q: How long did it take between the time that Darryl Murray was terminated until Joe Niknam started working at the San Diego Airport?<br><br>A: Well, Darryl was gone in the end of September. Joe didn't start until almost Thanksgiving, I think. |
| 16. Mr. Niknam is 48 years old. (Niknam Decl. ¶ 2.) | 16. Disputed. In his statement signed June 30, 2008, Joe Niknam claims he is 49 years old. | 16. This error is a typo. Mr. Niknam is 49 years old. |
| 17. At the time he filed his complaint, Mr. Murray was 52 years old. (Pl's Compl.¶¶ 9-10.) | 17. Undisputed. | 17. Plaintiffs accept fact as undisputed. |
| 18. Prior to taking over as the general manager at the San Diego International Airport, Mr. Niknam had worked at HOST for 16 years during which time he served as the general manager at two other airports and a shopping plaza. (Niknam Decl. ¶ 3.) | 18. Disputed. The defense did not provide any documentation to corroborate Joe Niknam s [*sic*] recent declaration about his experience and qualifications. When Plaintiffs [*sic*] queried a senior defense HR person at deposition Idalia Castro failed to be specific, stating only that He [Joe Niknam] was experienced. [*sic*] Castro Dep. 210:15. Ms. Castro actually interviewed Joe Niknam, so Plaintiffs hoped she would be able to provide more detail his background. | 18. Plaintiffs provide no evidence to dispute this material fact. Mr. Niknam has personal knowledge as to his experience and his declaration is a proper way to introduce this evidence in support of the underlying motion for summary judgment. |

| | | |
|---|---|---|
| 19. As recently as January 17, 2003, and March 3, 2005, Mr. Murray signed certifications acknowledging having read, understood, and agreed to abide by the non harassment policy. (Pl's Dep. 33:02-36:22; Exhibit 7.) | 19. Disputed. There is no evidence to prove that Darryl Murray signed certifications acknowledging the nonharassment policy in 2003. The defense references a document purportedly signed in 2007, but there is no similar document dated 2003. The lack of a signed certification dated 2003 tends to prove the opposite of what the defense alleges in their Fact #19. | 19. The documents, properly authenticated by Mr. Murray in his deposition speak for themselves:<br><br>Q. Do you remember these two documents, Mr. Murray? [*referring to Exhibit 7*]<br>A. Yes, I do.<br>Q. And the most recent one was signed in March of '05; is that correct?<br>A. Yes, it is.<br><br>Mr. Murray goes on to answer numerous questions pertaining to Exhibit 7. |
| 20. At his deposition, Mr. Murray testified as follows:<br>Q: Paragraph 12 [of the Complaint] says that the fact that Darryl was over 40 years old was a substantial factor in HOST's decision to terminate [Mr. Murray's] employment. Can you tell me the basis of that belief?<br>A: That the amount of time on job[,] I had reached a certain point in my life where my salary was pretty high, as a matter of fact my direct supervisor even made a comment that we don't give deals like that out any longer. And once I was removed, the person behind me was younger than me. (Pl's Dep. 41:24-42:10.) | 20. Disputed. Defense Fact #20 is a misquote of Plaintiff s [*sic*] Deposition. Further, it is misleading in that it cuts off the last line of Plaintiff s [*sic*] response which was a point of emphasis by Plaintiff, reading [*sic*] But more so than that, he [Joe Niknam] was replaced by somebody quite a bit younger than him Carlos Barrantes. Pltf s [*sic*] Dep. 42:10-11. | 20. Plaintiffs make a blatant misstatement when they say that Mr. Niknam's replacement at HOST was Carlos Barrantes, a person in his 30's. (Pltf's Opposition, p. 9). Mr. Murray's replacement as General Manager was Mr. Niknam and, to date, Mr. Niknam holds the position of general manager at San Diego International Airport. Declaration of Joe Niknam, ¶ 1.<br><br>HOST does, in fact, cite to the correct portion of the deposition. |
| 21. At his deposition, Mr. Murray testified as follows:<br>A: I was asked several times in the spring of 2006 if I'd be interested in going to Atlanta or Phoenix. Elie Maalouf . . . said | 21. Disputed because the citation does not correlate with the allegedly quoted language. For instance, Plaintiff s [*sic*] Deposition at page 34, line 1 begins with an attempt to | 21. This statement is not offered to prove the truth of the matter asserted, F.R.E. 801(c). It is offered to rebut Plaintiffs' allegation that HOST harbored a discriminatory motive. |

| | | |
|---|---|---|
| that it would be good for my career if I would go to a larger branch.<br>Q: Had you moved to Atlanta or Phoenix, would that have offered additional compensation opportunities?<br>A: Yes, it would.<br>(Pl’s Dep. 34:01-35:08.) | authenticate a document and has nothing to do with a discussion between Darryl Murray and Elie Maalouf. Pltf s [*sic*] Dep. 34:1-3.<br><br>Insofar as Darryl Murray stated whether he thought HOST would offer him a certain amount of money in a hypothetical situation, he would be speculating. The Court should note that there is no evidence of an official job offer relating to a potential transfer to either Atlanta or Phoenix. Compare Exhibit 8 to Plaintiff s [*sic*] Deposition (this is a job offer letter that HOST actually did present to Darryl Murray on a separate occasion). | |
| 22. Mr. Murray’s express offer of employment signed in December 1999 expressly provides that: “[t]his letter is <u>*not a contract or guarantee of employment*</u>.” (Exhibit 8 to Pl’s Dep.) (emphasis added). | 22. Disputed. The referenced statement is misquoted. It is in fact a complete sentence in the referenced document. Further, the statement is misleading when read out of context. The whole purpose of the letter is to offer a job to Darryl Murray and to induce him to enter into an employment agreement or contract. The misquoted and out of context quotation offered by the defense in their Fact #22 tends to mislead persons as to the meaning and intent of the referenced Exhibit 8 to Plaintiff s [*sic*] Deposition. The emphasis added by the defense is particularly misleading, because the emphasis tends to incorrectly suggest that Darryl Murray was not in an employment relationship with HOST at the time he was terminated. | 22. Plaintiffs’ objection lacks any merit. The statement is not misquoted and HOST asks this Court to review Exhibit 8 in its entirety in order to rule on Plaintiffs’ objection. |

| | | |
|---|---|---|
| 23. Mr. Murray's express offer of employment signed in April 2000 expressly provides that: "[t]his letter is *not a contract or guarantee of employment*." (Exhibit 8 to Pl's Dep.) (emphasis added). | 23. Disputed. The document referenced purports to have been signed in May as opposed to April. Pltf s [*sic*] Dep., Ex. 8. Since this writing purports to be a standard and detailed job offer, Plaintiff s [*sic*] repeat the same dispute made to Defense Fact #22. Further, the statement is misleading when read out of context. The whole purpose of the letter is to offer a job to Darryl Murray and to induce him to enter into an employment agreement or contract. The misquoted and out of context quotation offered by the defense in their Fact #22 tends to mislead persons as to the meaning and intent of the referenced Exhibit 8 to Plaintiff s [*sic*] Deposition. The emphasis added by the defense is particularly misleading, because the emphasis tends to incorrectly suggest that Darryl Murray was not in an employment relationship with HOST at the time he was terminated. | 23. Plaintiffs' objection lacks any merit. The statement is not misquoted and HOST asks this Court to review Exhibit 8 in its entirety in order to rule on Plaintiffs' objection. |
| 24. Mr. Murray admits that: (1) no executive officer ever orally promised that HOST would only terminate him for good cause; and (2) no executive officer at HOST expressly told him that HOST would employ him for a specified period of time. (Pl's Dep. 37:10-39:13.) | 24. Disputed. To the contrary, Darryl Murray describes being promised that he could stay at a particular position until the last year of his employment (further referencing the mutual expectation that Darryl Murray would work until retirement).<br>A. Conversation was held that if I went back into operations, that I wouldn t have [*sic*] to move around so much. Pltf s [*sic*] Dep. 38:24-25.<br>A. No. I was [told that] - - didn [*sic*] t have to move at all until the last year of my employment. | 24. Plaintiffs' objection lacks any merit. The statement is not misquoted and HOST asks this Court to review the applicable portions of Mr. Murray's deposition testimony in order to rule on Plaintiffs' objection. |

| | | |
|---|---|---|
| | Pltf s [*sic*] Dep. 39:9-10. | |
| 25. Mr. Murray could not name an additional witness who should have been interviewed but were not. (Pl's Dep. 57:21-58:10.) During his deposition, Mr. Murray testified as follows:<br>Q: Was there anyone. . . .not on [the] list that you thought that should have been questioned?<br>A: Not that I recall. I thought they were questioning people who weren't there at all and it wasn't germane to the whole incident so that's why I felt it was a witch hunt.<br>Q: Did you give [Ms. Castro] any names of people that . . . she should talk to?<br>A: The person I was standing with the whole night was Ms. Shelby . . . the only one.<br>Q: And as far as you know, did they talk to Mr. Shelby?<br>A: Briefly, yeah.<br>(Pl's Dep. 57:21-58:10.) | 25. Disputed. The quotation is mis-cited. For instance the beginning of the defense citation actually reads<br><br>A. I remember kissing several associates goodbye on the way out the door. Pltf s [*sic*] Dep. 57:21-22. In Defense Fact #25, the defense incorrectly claims the citation begins with some discussion about an unspecified witness list. Further, Defense Fact #25 includes questions that could not possibly lead to admissible fact. For instance, Q. And as far as you know, did they talk to Mr. Shelby? The question is vague and it calls for speculation. | 25. Plaintiffs' objection lacks any merit. The statement is not misquoted and HOST asks this Court to review the applicable portions of Mr. Murray's deposition testimony in order to rule on Plaintiffs' objection.<br><br>The proper citation is Pltf's Dep. 68:7-22. |
| 26. Debra Murray testified that: "two weeks prior to [Mr. Murray] being fired, [HOST personnel] were doing extensive interviews with the whole staff . . ." (Plaintiff Debra Murray's Deposition 23:03-09; attached hereto as Exhibit 2.) | 26. Disputed to the extent that the defense quotation presented in Defense Fact #26 is out of context to the extent that its meaning is lost. Further, if one reads the full context it is apparent that Debra Murray appears to be speculating, and, at the very least, her responses appear to be uninformed guesses and speculation. Accordingly, Plaintiffs will dispute defense attempts to represent the subject quote as a probative and undisputed fact. | 26. Plaintiffs' objection lacks any merit. The statement is not misquoted and HOST asks this Court to review the applicable portion of Ms. Murray's deposition testimony in order to rule on Plaintiffs' objection. |

| **PLAINTIFF'S [*sic*] ADDITIONAL MATERIAL FACTS ("AMF")** | **PLAINTIFFS [*sic*] MATERIAL FACTS AND SUPPORTING EVIDENCE** | **HOST'S RESPONSES** |
|---|---|---|
| 1. Darryl Murray was 52 years old at the time of termination. | 1. See numerous documents in Plaintiff s [*sic*] personnel file which indicate Darryl Murray s [*sic*] birth date of October 28, 1953. | 1. Undisputed, although Plaintiffs present no evidence in support of this statement. |
| 2. Darryl Murray had worked for HOST as a manager for about 18 years at the time of his termination. | 2. Def s [*sic*] Ps&As in Supp of MSJ, 3:1-2. | 2. Undisputed, although Plaintiffs present no evidence in support of this statement. |
| 3. The replacement of Darryl Murray s immediate replacement, Carlos Barrantes, was even younger than Darryl Murray s immediate replacement, Joe Niknam. | 3. Mr. Barrantes was described at a Human Resources deposition as being in his late 30s to early 40s. Castro Dep., 209:20-22. | 3. Disputed. Plaintiffs make a blatant misstatement when they say that Mr. Niknam's replacement at HOST was Carlos Barrantes, a person in his 30's. (Pltf's Opposition, p. 9). Although Carlos Barrantes temporarily acted as an interim manager after Mr. Murray's sudden discharge for sexual harassment, Mr. Murray's replacement as General Manager was Mr. Niknam and, to date, Mr. Niknam holds the position of general manager at San Diego International Airport. Declaration of Joe Niknam, ¶ 1. Plaintiffs' have no admissible evidence to the contrary. |
| 4. Darryl Murray was a high level performer at the time of his termination. | 4. Darryl Murray s [*sic*] direct supervisor, Joe Lutz said these words about Mr. Murray during deposition: We had a very good relationship. Darryl is a very likable guy, well-respected. He represented our region in a number of different areas. . . . we have a very select group of tenured, seasoned, respected general managers that | 4. Disputed. Plaintiffs' statement is immaterial and does not create a triable issue of fact. HOST, does not dispute that Mr. Murray was performing his job satisfactorily <u>prior to the incident where he decided to inappropriately kiss a subordinate employee</u> and Mr. Lutz's deposition testimony only speaks to this fact. After the undisputed |

| | | |
|---|---|---|
| | I call the operational leadership team. And just a few select people are on that team to help guide and advise me, and he was a member of that. So I would classify my relationship with Darryl as very good.<br>Lutz Dep., 11:8-19. | kiss occurred, Mr. Murray was no longer performing his job duties satisfactorily because his behavior violated HOST's Policy Against Sexual Harassment. *See* UF nos. 9-11. |
| 5. Sandra Rosales, admits and explains that the subject kiss received by Darryl Murray was not sexual in nature. | 5. At deposition, Sandra Rosales was questioned at length regarding whether she or Darin Chadwick actually thought Darryl Murray had any type of sexual purpose (perceived or actual) with his kiss. The answers were always in the negative as demonstrated by the following deposition excerpts:<br>Q. Did Darryl Murray ever try to establish a romantic relationship with you?<br>A. No.<br>Q. He never did?<br>A. No.<br>Q. Did Darin Chadwick think that Darryl Murray was trying to establish a romantic relationship with you?<br>A. I don t [*sic*] think so.<br>Rosales Dep., 90:2-10<br>Q. Well, before this kiss on August 26th, 2006, did Darryl Murray ever do anything to you that made you think he was trying to establish a romantic relationship with you?<br>A. No.<br>Q. Did he ever ask you on a date?<br>A. No.<br>Q. A date of any kind? I won t [*sic*] get graphic.<br>A. No.<br>Rosales Dep., 100:4-12. | 5. Disputed. Plaintiffs' statement is immaterial and does not create a triable issue of fact. Plaintiffs' statement lacks foundation and is not supported by the evidence on the record. Plaintiffs offer no basis for their argument that the kiss was "not sexual in nature." The only evidence Plaintiffs offer is Ms. Rosales' unrelated testimony where Ms. Rosales says that Mr. Murray had never asked her on a date. (*See* Exhibit 27 to Pltfs' Opposition). Whether or not Mr. Murray had asked Ms. Rosales on a date prior to the kiss does not determine whether or not the kiss was sexual in nature. |

| **PLAINTIFF S [*sic*] SEPARATE STATEMENT OF CONTROVERTED FACTS ( PCF )** | **PLAINTIFFS [*sic*] MATERIAL FACTS AND SUPPORTING EVIDENCE** | **HOST'S RESPONSES** |
|---|---|---|
| 1. Darryl Murray was not counseled and educated on two occasions regarding sexual harassment policy and as stated in Defendants' (sic) Points and Authorities in Support of Summary Judgment (3:6-8). | 1. First, the alleged prior personnel complaints were not substantiated, negating the occasion for punitive counseling. Second, the documentary evidence tends to show that at most Darryl Murray may have been prompted to review sexual harassment written policy one time. The defense claims that the counseling occurred twice. However, Defendant fails to provide written proof of each counseling, and they fail to provide the name of any person who allegedly conducted the counseling. | 1. HOST does not claim that Mr. Murray received punitive counseling. In fact, HOST did not find sufficient evidence that Mr. Murray had committed sexual harassment in the prior two complaints. The education Mr. Murray received was standard practice when an sexual harassment complaint has been filed against a particular employee. |
| 2. The sexual harassment claim was filed by Darin Chadwick, not by Sandra Rosales. Ms. Rosales merely filed a witness statement in response to Mr. Chadwick s (sic) complaint. | 2. In their points and authorities the defense mischaracterizes the sexual harassment complaint as one coming from Sandra Rosales and relating to a kiss. The truth of the matter is that the complain came from a man, Darin Chadwick, who allegedly abused Sandra Rosales emotionally on the subject evening. See Rosales Dep., 30:12-15 ( Q. So Darryl Murray and Jerry Shelby asked you what was wrong, and you were the one that said you had a fight with your boyfriend, correct? A. Yes. ) Idalia Castro also corroborated the fact that it was Darin Chadwick, not Sandra Rosales, who made a complaint against Darryl Murray. | 2. HOST does not dispute that Darin Chadwick filed a complaint. Plaintiffs have no basis for an argument that an "incident" report is not a "complaint." |

| | | |
|---|---|---|
| | . . .did Sandra Rosales say anything to you about why she wasn t [*sic*] the one making the complaint, why it was Darin Chadwick making the complaint. . . . A. I never asked her that question. Q. Why not? A. I didn t [*sic*] think I had to. Castro Dep., 76:24 to 77:8. Thomas Stein further corroborated that Darin Chadwick made the complaint against Darryl Murray as opposed to Sandra Rosales making the complaint. Q. . . . were you aware that it was actually Darren Chadwick who made the allegations against Darryl Murray? A. I know that there was allegations made by a male, Darren, who was Sandy s [*sic*] boyfriend. And then there was later allegation made by Sandy as well. But what I m [*sic*] saying that was surprising to me was the fact that he [Darin Chadwick] actually was her [Sandra Rosales] boss at one point in time. Stein Dep., 62:18-25. | |
| 3. HOST did not have a zero tolerance policy for any incident of sexual harassment. In fact, normal progressive discipline practices were normally applied. | 3. See for example Defendants Memorandum of Points and Authorities in Support of Summary Judgment, page 3, lines 5-8. There the defense alleges that Darryl Murray was counseled and educated in response to sexual harassment complaints as opposed to terminated. See also Pltf s [*sic*] Dep., Ex. 7. | 3. This fact is immaterial. HOST does not terminate employees when its investigations conclude that there is no evidence of sexual harassment. |

| | | |
|---|---|---|
| 4. Darryl Murray was performing his job in a satisfactory manner at the time of his termination. | 4. Darryl Murray s [*sic*] direct supervisor described Darryl Murray s [*sic*] job performance as strong performer and said that his performance appraisals were good. Lutz Dep., 14:8-10. HOST CEO, Elie Maalouf, described doing a walk-through of Darryl Murray s operation where he described the findings as [i]t wasn t [*sic*] a remarkable performance in either direction, but, you know, room for improvement. Maalouf Dep. 12:22-24. | 4. Denied. HOST, does not dispute that Mr. Murray was performing his job satisfactorily <u>prior to the incident where he decided to inappropriately kiss a subordinate employee</u> and Mr. Lutz's deposition testimony only speaks to this fact. After the undisputed kiss occurred, Mr. Murray was no longer performing his job duties satisfactorily because his behavior violated HOST's Policy Against Sexual Harassment. *See* UF nos. 9-11. |

DATED: September 15, 2008

BAILEY LAW GROUP, PC
SERAFINA RASKIN

BY:
s/Serafina Raskin
____________________________
SERAFINA RASKIN

Attorney for Defendant
HOST INTERNATIONAL, INC.